UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>BF LABS, INC., d/b/a BUTTERFLY LABS, a Wyoming corporation; DARLA DRAKE, an individual; NASSER GHOSEIRI, an individual; and SONNY VLEISIDES, an individual,<br><br>    Defendants. | CASE NO. 4:14-00815-CV-W-BCW |

**CERTIFICATION AND DECLARATION OF HELEN P. WONG IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION TO TEMPORARILY SEAL CASE FILE AND PLAINTIFF'S *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER WITH AN ASSET FREEZE, APPOINTMENT OF A RECEIVER, <u>AND OTHER EQUITABLE RELIEF</u>**

I, Helen P. Wong, hereby declare as follows:

1. I am over eighteen years of age and am a citizen of the United States. I am one of the attorneys representing the Federal Trade Commission in this action.

2. I am licensed to practice law in the District of Columbia. My business address is 600 Pennsylvania Ave, NW, CC-10232, Washington, DC 20580. Unless indicated otherwise, I have personal knowledge of the facts stated herein and, if called as a witness, would competently testify thereto.

3. I submit this certification pursuant to Fed. R. Civ. P. 65(b)(1) and 28 U.S.C. § 1746 in support of the FTC's *Ex Parte* Motion for a Temporary Restraining Order ("TRO

Motion") and in support of the FTC's request that the Temporary Restraining Order ("TRO") be issued without notice to Defendants. I also submit this certification in support of the FTC's *Ex Parte* Motion to Temporarily Seal the Case File.

4. Pursuant to Rule 65(b)(1), this Court may issue a TRO without notice to Defendants if counsel "certifies in writing an efforts made to give notice and the reasons why it should not be required." For the reasons stated below, the FTC has not provided Defendants with notice of the filing of this action or the TRO Motion. The interests of justice require that these filings be heard *ex parte*. Absent the requested *ex parte* relief and seal order, there is good cause to believe that Defendants will destroy documents and dissipate or hide assets, thus putting at risk the Court's ability to render effective ultimate relief to the consumer victims.

## DEFENDANTS' DECEPTIVE AND UNFAIR PRACTICES

5. The evidence set forth in the TRO Motion and supporting exhibits demonstrates that Defendants have engaged in a concerted course of deceptive practices in connection with the selling of Bitcoin mining machines and services.

6. Since at least mid-2012, Defendants have sold products and services that purportedly allow consumers to generate Bitcoins, a form of virtual currency that can be worth hundreds of dollars per unit. They claim that their Bitcoin mining machines and services use the latest technology, and by using them, consumers will be able to generate a profitable or substantial amount of Bitcoins.

7. By making representations to consumers regarding the cutting-edge nature and profit-making ability of their products, along with claims of timely delivery of these products, Defendants induced consumers into parting with a total of approximately $20 million and up to $50 million for their Bitcoin mining machines and services.

8. In reality, Defendants often failed to deliver machines or provide services at all. In other instances, Defendants took many months or even a year to deliver the machines, which arrived damaged or had depreciated so significantly that consumers could not generate a substantial or profitable amount of Bitcoins. Even though Defendants failed to fulfill previous orders, they began marketing and selling new lines of Bitcoin mining machines and services.

9. These practices violate the prohibition against unfair and deceptive practices in Section 5 of the FTC Act, 15 U.S.C. § 45(a).

## THE PROPOSED TRO

10. The proposed TRO's key provisions would (1) freeze Defendants' assets to preserve them for potential restitution to victims; (2) appoint a temporary receiver over the corporate Defendant; (3) grant the FTC and temporary receiver immediate access to Defendants' business premises and records, and (4) allow for limited expedited discovery.

## REASONS FOR FILING *EX PARTE* AND UNDER SEAL

11. As set forth below, there is ample evidence that Defendants have the motivation and opportunity to conceal and dissipate assets and destroy important documents.

12. This evidence includes proof of the systematic deception on which Defendants' operation depends, as this operation has affected thousands of consumers and caused millions of dollars in consumer injury.

13. Records indicate that once consumer funds enter into Defendants' bank accounts, they are quickly dissipated. In recent months, despite receiving large sums of money each time consumers place orders, Defendants generally leave no more than approximately $2.5 million in the operating bank account. Instead, funds are depleted shortly after they enter into the bank accounts after consumers place their orders.

14. There is substantial evidence that corporate funds are being diverted for seemingly personal use: department stores, day care services, massages, and home improvement (such as architectural services and saunas). Defendants' corporate credit cards also reflected numerous non-business expenses, including: department stores (including Nordstroms, Bed, Bath, & Beyond, Restoration Hardware, and Hobby Lobby), auto maintenance, gun stores, and hunting stores.

15. Defendant Nasser Ghoseiri, the company president, resides in France and has access to foreign bank accounts. Were he to direct transfers of corporate funds to those accounts, the FTC would have difficulty reaching those assets, and likely would be left to depend on his willingness to repatriate assets.

16. There is also evidence of past concealment of evidence and/or past disregard for court orders. Specifically, this Court has already adjudged Defendant Sonny Vleisides, an owner of Butterfly Labs, to be in violation of the conditions of his supervised release, imposed due to his mail fraud conviction stemming from a lottery fraud scheme that cost victims millions of dollars. The terms of his supervised release require him to seek approval from his probation officer before applying for a loan or extension of credit. Because he received a loan of $65,977.19 from Butterfly Labs and did not seek approval from his probation officer, this Court extended his period of supervised release for another two years. Further, his involvement in this scheme, which, among other things, has taken up-front payments from consumers, failed to fulfill orders, and refused refunds, likely violates the terms of his supervised release as well. Indeed, at his probation hearing, the Court stated, "Now there is a stench coming from Butterfly Labs. It's a strong smell."

17. A district court may issue an *ex parte* temporary restraining order where the movant can show that "advance notice to defendants is likely 'to serve only to render fruitless further prosecution of the action.'" *Wallace Berrie & Co. v. Custom Styled Toys, Inc.*, 219 U.S.P.Q. 61, 1982 WL 1288 at *1 (E.D.N.Y. 1982) (quoting *In re Vuitton et Fils S.A.*, 606 F.2d 1, 4-5 (2d Cir. 1979)).

18. To support a request for an *ex parte* temporary restraining order, an applicant may cite to past incidents of defendants or persons similar to defendants disposing of evidence or violating court orders. *In re Vuitton et Fils S.A.*, 606 F.2d at 4-5; *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 222 (7th Cir. 1984) (noting that, in *Vuitton,* the Second Circuit found *ex parte* relief warranted in light of the petitioner's showing of "its experience in other similar cases in which the actions became futile").

19. It has been the FTC's experience that defendants involved in deceptive acts and practices who receive notice of the filing of an action by the FTC, or of the FTC's intent to file an action, often attempt to undermine the FTC's efforts to preserve the *status quo* by immediately dissipating or concealing assets or destroying documents.

20. The following additional examples of evidence spoliation and asset dissipation in recent years, provided on information and belief, further illustrate the FTC's concerns:

   a. In *FTC v. Dayton Family Productions, Inc.*, No. 97-00750 (D. Nev. 2013), the FTC obtained an *ex parte* TRO granting the FTC immediate access to defendants' business premises. The FTC served the TRO on defendants' employees at the defendants' primary office and discovered the existence of an additional office location. Upon arriving at the second location, the FTC learned that an employee

5

who had been served with the TRO that morning had already accessed a computer at the second location and erased its hard drive. The data was never recovered.

b. In *FTC v. Asset & Capital Management Group*, No. 8:13-cv-01107-DSF-JC (C.D. Cal. 2013), the FTC moved for an *ex parte* TRO with asset freeze, immediate access, and receivership against defendants. When the receiver entered one of defendants' offices, he discovered that computers, servers, and the contents of multiple filing cabinets appeared to have been removed.

c. In *FTC v. Pinnacle Payment Services, LLC*, No. 1:13-CV-3455 (N.D. Ga. 2013), the FTC moved for an ex parte TRO with asset freeze, immediate access, and receivership against defendants. Shortly after the receiver had taken possession of four of the defendants' offices, they appeared to have removed documents, computers, and other equipment from a fifth location.

d. In *FTC v. A to Z Marketing*, No. 8:13-cv-00919-DOC-RNB (C.D. Cal. 2013), the court granted the FTC's *ex parte* TRO. After learning of the FTC's action, one of the corporate defendant's employees gained access to the business premises and was caught on a surveillance camera deleting files from the server.

e. In *FTC v. E.M.A. Nationwide, Inc.*, No. 1:12-cv-02394 (N.D. Ohio 2012), the court required the FTC to give notice to defendants and denied the FTC's request for an asset freeze. Days after receiving notice of the FTC's action, individual defendants withdrew more than $150,000 from corporate bank accounts.

f. In *FTC v. Fereidoun "Fred" Khalilian*, No. 10-21788 (S.D. Fla. 2010), the court issued an *ex parte* TRO with an asset freeze. Before the banks were able to process the asset freeze, one of the defendant's employees withdrew large sums

from the corporate bank accounts, some of which were never recovered. An individual defendant also attempted to remove assets located in his personal residence. He was stopped only because the receiver observed individuals removing items from the defendant's residence at night.

    g. In *FTC v. Transcontinental Warranty, Inc. et al.*, No. 09C 2927 (N.D. Ill. 2009), the court granted the FTC's motion for a TRO with an asset freeze and appointment of a receiver. When the receiver and counsel for the FTC arrived at the business premises, hundreds of folders for defendants' most recent transactions were found empty. In addition, five computers, including that of the corporate defendant's CFO, were allegedly stolen the night before.

21. For all the above reasons, as contemplated by Fed. R. Civ. P. 65(b), there is good cause to believe that immediate and irreparable damage will result to consumers from the dissipation of assets, and from the concealment, transfer or destruction of Defendants' records, if Defendants receive advance notice of the FTC's Complaint and TRO Motion. Thus, it is in the interests of justice that this Court grant the FTC's *ex parte* TRO Motion and Motion to Temporarily Seal Case File.

22. The FTC has not made a previous application for similar relief in this matter.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 15, 2014                        Respectfully submitted,

                                                                     /s/ Helen Wong_____
                                                    Helen P. Wong, DC Bar # 997800
                                                   Federal Trade Commission
                                                   600 Pennsylvania Ave., N.W.
                                                   Mail Stop CC-10232

Washington, D.C. 20580
Telephone: 202-326-3565
Facsimile: 202-326-3768
hwong@ftc.gov

Attorney for Plaintiff
FEDERAL TRADE COMMISSION