## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
## KANSAS CITY DIVISION

| | | |
|---|---|---|
| KYLE ALEXANDER, and DYLAN SYMINGTON, on behalf of themselves and all those similarly situated, | ) ) ) ) | **COMPLAINT – CLASS ACTION** |
| | ) | Case No. _____ |
| Plaintiffs, | ) ) | |
| v. | ) ) | JURY TRIAL DEMANDED |
| BF LABS INC., a Wyoming corporation, doing business as BUTTERFLY LABS, | ) ) ) | |
| Defendant. | ) ) | |

### COMPLAINT – CLASS ACTION

COME NOW, Plaintiffs Kyle Alexander and Dylan Symington (collectively "Plaintiffs") on behalf of themselves and all those similarly situated, and for their claims against Defendant BF Labs Inc. ("Defendant" or "BFL") allege, state, and aver to the Court as follows:

### Introduction

1.     This lawsuit challenges Defendant's deceptive and unconscionable business practices, including: collecting pre-payments for non-existent Bitcoin mining equipment, failing to ship Bitcoin mining equipment orders for which consumers have pre-paid, misrepresenting the date such equipment is to ship to customers, and profiting from Bitcoin mining for Defendant's own benefit using customers' equipment without permission or authorization from customers.

### Parties

2.     Plaintiff Kyle Alexander is a natural person and a citizen of the State of Tennessee.

**EXHIBIT**

**1**

3.    Plaintiff Dylan Symington is a natural person and a citizen of the State of Maryland.

4.    Defendant BF Labs, Inc. is a Wyoming corporation with its principal place of business at 10770 El Monte St., #101, Leawood, Johnson County, Kansas.

5.    Defendant is registered to do business in the State of Kansas and maintains a registered agent at 112 SW 7th Street, Suite 3C, Topeka, Kansas.

## Jurisdiction and Venue

6.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d) because the number of members of the proposed class is not less than 100, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and at least one member of the class is a citizen of a different state than Defendant.

7.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant resides in, is found, has an agent, or transact affairs in this judicial district and because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## General Allegations

### Bitcoin and Bitcoin Mining

8.    Defendant advertises itself to the public as a manufacturer of specialized computer equipment and processors for the task of mining bitcoins.

9.    Bitcoin is a peer-to-peer payment system and digital currency created in 2009. Unlike traditional currency, bitcoins are not issued by a government or central banking authority.[1]

10.    Bitcoin is considered a "cryptocurrency" because cryptography is used to

---

[1]    For clarity, Plaintiff uses "Bitcoin" to refer to the digital currency, protocol, or specification; and "bitcoin" to refer to the individual denomination or unit of the currency.

control the creation and transfer of the currency, creating a distributed, decentralized, and secure medium of exchange.

11.    Bitcoins are regularly used to pay debts, purchase goods and services, and are exchanged for other currencies such as the U.S. dollar, U.K. pound sterling, or euro. For example on March 19, 2014, one bitcoin could be exchanged for an average of $613.12.

12.    Bitcoins are created by "mining", a process where "miners" receive transaction fees and newly minted bitcoins in return for verifying and recording payments into a public ledger.

13.    By design, mining is a computationally intensive process that becomes more difficult over time.

14.    As the difficulty of Bitcoin mining has increased over time, the computer hardware required to profitably mine has advanced from general purpose CPUs (found in common desktop computers), high-end GPUs (often found in gaming computers), FPGAs (field-programmable gate arrays), and ultimately to ASICs (application-specific integrated circuits) purpose built for performing the calculations necessary for Bitcoin mining.

**The Butterfly Labs Scheme**

15.    Defendant BF Labs, Inc. was formed July 2011. The majority of stock in Defendant was and continues to be held or controlled by Mr. Sonny Vleisides.

16.     At the time of the formation of Defendant through the present, Mr. Vleisides was serving a term of supervised release for a felony conviction for Mail Fraud, in violation of 18 U.S.C. § 1341, in the United States District Court for the Central

District of California.[2]

17.    Defendant using the name "Butterfly Labs" advertised for sale via the Internet a variety of ASIC based Bitcoin mining hardware, stating "Butterfly Labs manufactures a line of high speed encryption processors for use in bitcoin mining, research, telecommunication and security applications".

18.    Defendant required consumers to pre-pay by PayPal, bitcoins, or bank wire transfer the entire amount of an order at the time the order was placed.

19.    The Bitcoin mining products advertised by Defendant ranged in price from $75 to over $20,000.

20.    Defendant represented that inventory of its Bitcoin mining products "was available".

21.    Defendant represented its Bitcoin mining products were "in production" and "real".

22.    Defendant represented its Bitcoin mining products were "expected to begin shipping soon", "shipping [had already] begun", or products would be "shipping by the end of the week".

23.     Defendant represented that customers would most likely receive their equipment within "two months" after ordering, or such equipment "would be shipped in two months", or sooner.

---

[2]    As a condition of Mr. Vleisides' supervised release he was prohibited from engaging "as whole or partial owner, employee or otherwise, in any business involving loan programs, gambling or gaming activities, telemarketing activities, investment programs or any other business involving the solicitation of funds or cold-calls to customers without the express approval of the Probation Officer prior to engagement in such employment." *See* Judgment and Commitment Order, Case No. 2:07-CR-00134-DDP (C.D.Ca. November 15, 2010).

Alexander, et al. v. BF Labs Inc.
*Class Action Complaint*

4

24.     Defendant represented customers could receive a refund simply by asking for one, that "it's not a problem" for a customer to receive a refund, and Defendant could refund all prepayments "without a problem".

25.     Defendant represented orders would be "shipped according to placement in the order queue" and for particular products the "first batch of chips" would be "more than enough for all pre-orders".

26.     Defendant represented that it did not itself mine Bitcoins.

27.     Defendant's representations were false, deceptive, and misleading.

28.     Defendant's representations concealed or omitted a material fact.

29.     Defendant's products did not exist at the time Defendant accepted pre-payments.

30.     Defendant knew or had reason to know that the products would not ship on the dates represented to customers.

31.     In or about 2012, Defendant purchased a business known as "Eclipse Mining Consortium", which operates as a Bitcoin mining pool, an organization which permits the combination of Bitcoin mining efforts to offer participants faster, yet smaller, bitcoin distributions than would be achievable if the participants conducted mining operations on their own.

32.     Instead of shipping completed Bitcoin mining hardware to customers after customers have already paid for the equipment, Defendant has utilized completed Bitcoin mining hardware to earn mining income for itself under the guise of "testing" such hardware.

33.     This "testing" serves to enrich Defendant at the detriment of its customers by both denying the customers' use and benefit of equipment they have already paid for,

Alexander, et al. v. BF Labs Inc.
*Class Action Complaint*
5
Case 4:14-cv-00815-BCW   Document 44-1   Filed 09/28/14   Page 5 of 21

as well as increasing the overall mining difficulty required to generate future bitcoins.

34.   Defendant has collected millions of dollars from customers for pre-orders of Bitcoin mining hardware.

35.   Prior to discontinuing Defendant's ability to accept payments through the service, Paypal alone had processed over $11 million dollars in pre-payments for Defendant's hardware.

36.   Defendant's representatives admit Defendant has collected over $25 million in customer pre-payments.

37.   Defendant has utilized the funds from customer's pre-payments for:

(a)   the paid in full, unfinanced purchase of a residence in Leawood, Kansas for Mr. Sonny Vleisides;

(b)   an automobile for Mr. Sonny Vleisides; and

(c)   hundreds of thousands dollars in loans to shareholders of Defendant.

**The Representative Plaintiffs' Orders**

*Kyle Alexander*

38.   In June of 2013, Plaintiff Kyle Alexander ordered a Bitcoin mining machine from Defendant.

39.   Plaintiff Kyle Alexander paid $308.00 to Defendant via PayPal for this equipment.

40.   At the time Plaintiff Kyle Alexander ordered and paid for mining equipment, Defendant represented to Plaintiff Kyle Alexander and other potential customers that its inventory "was available", "in production", available for "shipping soon", and/or that "shipping [had already] begun", and that customers would most

*Alexander, et al. v. BF Labs Inc.*
*Class Action Complaint*
6
Case 4:14-cv-00815-BCW   Document 44-1   Filed 09/28/14   Page 6 of 21

likely receive their equipment within "two months" after ordering.

41.     In July of 2013, Plaintiff Kyle Alexander contacted Defendant to inquire about his order and was informed by Defendant that "shipping had begun."

42.     Over the next several months, Plaintiff Kyle Alexander continued to inquire about his order and was repeatedly informed by Defendant that "shipping had begun."

43.     In March of 2014, Plaintiff Kyle Alexander again inquired about his order and Defendant advised him of the "good news" that his order had been changed to Defendant's "Mining by the GH" product, which is described on Defendant's website as a "product which is not yet live", which Defendant "expect[s] to launch in April, 2014."[3]

44.     Plaintiff Kyle Alexander never changed or modified his order and never gave Defendant permission to use the equipment he ordered to mine bitcoins for itself or for anyone else.

45.     To date, Plaintiff Kyle Alexander has not received any mining equipment from Defendant.

46.     Since Plaintiff Kyle Alexander pre-paid for his order of mining equipment from Defendant in June of 2013, numerous bitcoins have been mined by others, and the difficulty of mining new bitcoins has substantially increased over such time.

### Dylan Symington

47.     On April 3, 2013, Plaintiff Dylan Symington ordered a Bitcoin mining machine from Defendant.

48.     Plaintiff Dylan Symington paid $1,333.00 to Defendant via PayPal for this

---

[3]     *See* Bitcoin Mining Hardware Bitcoin Mining by the GH (https://products.butterflylabs.com/homepage-new-products/1-gh-cloud-hosted-bitcoin-hashing-power.html) retrieved March 31, 2014.

Alexander, et al. v. BF Labs Inc.                                                                                    7
*Class Action Complaint*

equipment.

49.     At the time Plaintiff Dylan Symington ordered and paid for mining equipment, Defendant represented to Plaintiff Dylan Symington and other potential customers that its inventory "was available", "in production", available for "shipping soon", and/or that "shipping [had already] begun", and that customers would most likely receive their equipment within "two months" after ordering.

50.     In September of 2013, Plaintiff Dylan Symington contacted Defendant to inquire about his order and why he had not yet received any mining equipment from Defendant.

51.     Nearly seven months after receiving payment, on November 1, 2013, Defendant shipped mining equipment to Plaintiff Dylan Symington.

52.     Plaintiff Dylan Symington never gave Defendant permission to use the equipment he ordered to mine bitcoins for itself or for anyone else.

53.     Between the time Plaintiff Dylan Symington pre-paid for his order of mining equipment from Defendant in April of 2013 and the time he received mining equipment from Defendant in November of 2013, numerous bitcoins had been mined by others, and the difficulty of mining new bitcoins had substantially increased over such time.

## **Class Action Allegations**

54.     Plaintiffs bring this action on their own behalf and on behalf of a class of all persons similarly situated, pursuant to Rule 23(a) and Rule 23(b)(3).  The Plaintiff Class consists of all persons who pre-paid Defendant for Bitcoin mining equipment.

55.     The Plaintiff Class satisfies all of the prerequisites stated in Rule 23(a):

(a)     The class is so numerous that joinder of all members would be

*Alexander, et al. v. BF Labs Inc.*                                                                                    8
*Class Action Complaint*
Case 4:14-cv-00815-BCW   Document 44-1   Filed 09/28/14   Page 8 of 21

impractical.  Upon information and belief, members of the class number in the thousands. The number of class members can be identified from Defendant's records.

(b)    There are questions of law or fact common to the class, such as:

(i)    whether or not Defendant accepted pre-paid orders for Bitcoin mining equipment;

(ii)    whether or not such equipment existed at the time Defendant solicited pre-payments for Bitcoin mining equipment;

(iii)    whether or not Defendant made representations regarding the time Bitcoin mining equipment would ship to customers;

(iv)    whether or not Defendant represented consumers could receive a refund of their pre-payments;

(v)    whether such representations by Defendant were truthful or misleading;

(vi)    whether or not Defendant shipped Bitcoin mining equipment to customers;

(vii)    whether or not Defendant shipped Bitcoin mining equipment to customers within the time promised;

(viii)    whether or not Defendant profited or benefited from using customer's Bitcoin mining equipment after such equipment had been paid for by customers;

(ix)    whether or not Defendant's use of customer's equipment was permitted or authorized by customers;

Alexander, et al. v. BF Labs Inc.
*Class Action Complaint*                                                                                              9
Case 4:14-cv-00815-BCW   Document 44-1   Filed 09/28/14   Page 9 of 21

(x)  whether or not the actions of Defendant violate the Kansas Consumer Protection Act;

(xi)  whether or not Defendant was unjustly enriched by Defendant's conduct;

(xii)  whether or not Defendant is liable to customers for conversion related to the use of the Bitcoin mining equipment; and

(xiii)  whether or not Defendant is liable to customers for negligent misrepresentation related to the sales and advertising of the Bitcoin mining equipment.

(c)  The claims of the representative plaintiffs are typical of the claims of the Plaintiff Class.

(d)  The representative plaintiffs and their counsel will fairly and adequately protect the interests of the class.  The representative plaintiffs and their counsel have no conflicts of interest with other class members and have no interests antagonistic to the class.  The representative plaintiffs and their counsel will prosecute the action vigorously on behalf of the class.  The representative plaintiffs' counsel is experienced in litigating consumer class action cases.

56.  Further, the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class, which would establish incompatible standards of conduct for the party opposing the class.

57.  The questions of law or fact common to the members of the class

predominate over any questions affecting only individual members, and the class action is superior to other available methods for the fair and efficient adjudication of this controversy, in that:

(a)     It is believed that Defendant's computer, personal, financial, and business records will enable Plaintiffs to readily identify class members and establish liability and damages;

(b)     Liability and damages can be established for Plaintiffs and the class with the same or similar common proofs;

(c)     Damages for each class member can be calculated in the same or similar manner;

(d)     A class action will result in an orderly and expeditious administration of claims and will foster economies of time, effort, and expense;

(e)     A class action will contribute to uniformity of decisions concerning Defendant's practices; and

(f)     As a practical matter, the claims of the class are likely to go unaddressed absent class certification.

## **Count I: Violation of the Kansas Consumer Protection Act, K.S.A. §§ 50-626, 50-27, and 50-634**

58.     Plaintiffs re-allege and incorporate by reference all other Paragraphs of this Complaint as if fully set forth herein.

59.     In pertinent part, the Kansas Consumer Protection Act, K.S.A. § 50-626 provides:

No supplier shall engage in any deceptive act or practice in connection with a consumer transaction[.]

Alexander, et al. v. BF Labs Inc.                                                    11
*Class Action Complaint*
Case 4:14-cv-00815-BCW   Document 44-1   Filed 09/28/14   Page 11 of 21

60.     In pertinent part, the Kansas Consumer Protection Act, K.S.A. § 50-627 provides:

> No supplier shall engage in any unconscionable act or practice in connection with a consumer transaction.

61.     Defendant is a manufacturer, distributor, dealer, seller, lessor, assignor, or other person who, in the ordinary course of business solicits, engages in or enforces consumer transactions, and is therefore a "supplier" as defined in K.S.A. § 50-624(l).

62.     Plaintiffs, and the proposed class, are individuals, husbands and wives, sole proprietors, or family partnerships who seek or acquire property or services for personal, family, household, or business purposes, and are therefore "consumers" as defined in K.S.A. §50-624(b).

63.     The purchase of Bitcoin mining equipment from Defendant constitutes a "consumer transaction" pursuant to the definition provided in K.S.A. § 50-624(c).

64.     The Kansas Consumer Protection Act, K.S.A. § 50-634 provides for a private right of action for "a consumer who is aggrieved by a violation of this act."

65.     Defendant violated K.S.A. § 50-626 by engaging in deceptive acts and practices in connection with a consumer transaction, including:

> (a)     knowingly or with reason to know, representing the status of Defendant's Bitcoin mining equipment inventory as being available, in production, available for shipping soon, and/or that shipping has already begun when, in reality, the status of Defendant BFL's mining equipment inventory was not available, not in production, not available for shipping soon, and/or not already shipping;

> (b)     willfully using an exaggeration, falsehood, innuendo, or ambiguity as to a material fact, specifically regarding when shipment of

mining equipment would occur and/or that mining equipment most likely would be shipped within two months or sooner;

(c)    willfully failing to state a material fact, specifically that shipment of mining equipment would likely not occur for over six months, would never occur, and/or that Defendant BFL intended to keep and use the mining equipment itself;

(d)    offering mining equipment without the intent to sell or ship the mining equipment; and

(e)    offering mining equipment without the intent to supply the reasonable, expectable public demand and without truthfully disclosing the limitations.

70.    Defendant violated K.S.A. § 50-627 by engaging in unconscionable acts and practices in connection with a consumer transaction, including:

(a)    taking advantage of the inability of the consumer reasonably to protect the consumer's interests;

(b)    ensuring the consumer was unable to receive a material benefit from the transaction, specifically that the consumer would pay for but never receive the mining equipment or that the equipment would be essentially worthless by the time the consumer actually received the mining equipment; and

(c)    making a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment, specifically that mining equipment would most likely be shipped in two months or soon thereafter and/or that shipping had begun.

71.   To their detriment, Plaintiffs relied on the above statements and omissions by Defendant when deciding to purchase mining equipment and did in fact purchase mining equipment from Defendant.

72.   As a direct and proximate result of Defendant's deceptive and unconscionable acts and practices, Plaintiffs were aggrieved and have suffered an ascertainable loss, including, but not limited to: the purchase price and interest thereon (if paid in money), the value of the bitcoins paid to Defendant and loss of the use thereof (if paid in Bitcoin), the loss of use of equipment that Plaintiffs did not receive or did not receive in a timely manner, the loss of bitcoins which were mined by Defendant using Plaintiffs' equipment, the diminution in value of the Bitcoin mining equipment as a result of Defendant's conduct, and costs of suit, and attorney's fees.

73.   Plaintiffs are entitled to an award of punitive damages because Defendant willfully and intentionally violated K.S.A. §§ 50-626 and 50-627.

74.   Plaintiffs are entitled to an award of attorney's fees pursuant to K.S.A. § 50-634.

## **Count II: Unjust Enrichment**

75.   Plaintiffs re-allege and incorporate by reference all other Paragraphs of this Complaint as if fully set forth herein.

76.   A benefit was conferred on Defendant in that Plaintiffs paid money and/or bitcoins to Defendant.

77.   A benefit was conferred on Defendant in that Defendant used Plaintiffs' mining equipment to mine bitcoins for itself.

78.   Defendant accepted and appreciated the money and/or bitcoin payments from Plaintiffs and had knowledge of such facts.

Alexander, et al. v. BF Labs Inc.
*Class Action Complaint*                                                                          14
Case 4:14-cv-00815-BCW   Document 44-1   Filed 09/28/14   Page 14 of 21

79. Defendant accepted and appreciated the use of Plaintiffs' mining equipment and the bitcoins it mined for itself using Plaintiffs' mining equipment and had knowledge of such facts.

80. To date, Defendant has retained such benefits in that Defendant has retained the money and/or bitcoin payments without paying for their value or increased value over time.

81. To date, Defendant has retained such benefits in that Defendant has retained the bitcoins it mined for itself using Plaintiffs' mining equipment without paying for the use of Plaintiffs' mining equipment or the value or increased value of bitcoins mined therefrom over time.

82. Under the circumstances, Defendant's acceptance and retention of the money and/or bitcoin payments, and use of Plaintiffs' mining equipment and retention of bitcoins mined therefrom, without paying for its value, is inequitable because:

(a) Defendant has either not provided the mining equipment it promised to ship to Plaintiffs in exchange for the money and/or bitcoin payments or provided the mining equipment several months after-the-fact;

(b) even if Defendant immediately provided the mining equipment to Plaintiffs, the equipment is now essentially worthless;

(c) the money and/or bitcoin payments retained by Defendant have increased in value over time;

(d) Plaintiffs never gave Defendant permission to use their mining equipment to mine bitcoins for itself or for anyone else;

(e) Defendant has benefitted from the increase in value in money and/or bitcoin payments over time and has used these payments and the

increased value of such payments to purchase houses and cars, to make loans, and/or to manufacture additional mining equipment for its own use and benefit;

(f)     Defendant has benefitted from using Plaintiffs' mining equipment to mine bitcoins for itself and has used such bitcoins and the increased value of such bitcoins to purchase houses and cars, to make loans, and/or to manufacture additional mining equipment for its own use and benefit;

(g)     Defendant's retention of the money and/or bitcoin payments over time has resulted in additional profits from mining that could have been earned by Plaintiffs had Defendant timely shipped the mining equipment to Plaintiffs; and

(h)     Defendant's retention of the bitcoins mined using Plaintiffs' mining equipment over time has resulted in additional profits that could have been earned by Plaintiffs had Defendant timely shipped the mining equipment to Plaintiffs.

83.     As a direct and proximate result of Defendant's deceptive and unconscionable acts and practices, Plaintiffs were aggrieved and have suffered an ascertainable loss, including, but not limited to: the purchase price and interest thereon (if paid in money), the value of the bitcoins paid to Defendant and loss of the use thereof (if paid in Bitcoin), the loss of use of equipment that Plaintiffs did not receive or did not receive in a timely manner, the loss of bitcoins which were mined by Defendant using Plaintiffs' equipment, the diminution in value of the Bitcoin mining equipment as a result of Defendant's conduct, and costs of suit, and attorney's fees.

84.     The imposition of a constructive trust on the money and bitcoins paid to

Alexander, et al. v. BF Labs Inc.
*Class Action Complaint*                                                          16
Case 4:14-cv-00815-BCW   Document 44-1   Filed 09/28/14   Page 16 of 21

Defendant is warranted given Defendant's unlawful conduct described above.

## Count III: Negligent Misrepresentation

85.     Plaintiffs re-allege and incorporate by reference all other Paragraphs of this Complaint as if fully set forth herein.

86.     Defendant, in the course of its business, and in a transaction in which Defendant had a pecuniary interest, supplied false information to Plaintiffs, including but not limited to those representations referenced in paragraphs 20-26.

87.     Defendant made such representations for the guidance of others in their business transactions, specifically to encourage Plaintiffs to pay Defendant for Bitcoin mining equipment.

88.     Defendant failed to exercise reasonable care or competence in obtaining or communicating this information.

89.     A reasonable business in the same industry and in the same circumstances exercising due care would have known or should have known that such information was false as such, Defendant was thereby negligent in communicating such information.

90.     To their detriment, Plaintiffs relied on the above statements and omissions by Defendant when deciding to purchase mining equipment and did in fact pay for mining equipment from Defendant.

91.     Plaintiffs' reliance on Defendant representations was reasonable because, at the time, Plaintiffs had no reason to disbelieve Defendant's representations, were not aware of Defendant's inventory, production times, pending orders, or Defendant's use of Bitcoin mining equipment for its own benefit.

92.     Plaintiffs are within the group of persons for whose benefit the information was supplied and representations were made by Defendant, specifically to

assist Plaintiffs and other potential customers in deciding whether to pay Defendant for Bitcoin mining equipment.

93.     As a direct and proximate result of Defendant negligent misrepresentations, Plaintiffs were aggrieved and have suffered an ascertainable loss, including, but not limited to: the purchase price and interest thereon (if paid in money), the value of the bitcoins paid to Defendant and loss of the use thereof (if paid in Bitcoin), the loss of use of equipment that Plaintiffs did not receive or did not receive in a timely manner, the loss of bitcoins which were mined by Defendant using Plaintiffs' equipment, the diminution in value of the Bitcoin mining equipment as a result of Defendant's conduct, and costs of suit, and attorney's fees.

## Count IV: Conversion

94.     Plaintiffs re-allege and incorporate by reference all other Paragraphs of this Complaint as if fully set forth herein.

95.     Plaintiffs paid money and/or bitcoins to Defendant for the purposes of purchasing Bitcoin mining equipment consonant with the representations made by Defendant.

96.     Plaintiffs have an ownership interest in such money and/or bitcoins until a condition is satisfied, *i.e.*, until Defendant provides the Bitcoin mining equipment.

97.     Plaintiffs never authorized Defendant to keep and use their money and/or bitcoins without providing Bitcoin mining equipment or for any purpose other than to timely manufacture and ship the Bitcoin mining equipment to Plaintiffs.

98.     Without authorization, Defendant assumed or exercised the right of ownership and possession over Plaintiffs' money and/or bitcoins by using such money and/or bitcoins for purposes other than timely manufacturing and shipping the Bitcoin

Alexander, et al. v. BF Labs Inc.
*Class Action Complaint*
18
Case 4:14-cv-00815-BCW   Document 44-1   Filed 09/28/14   Page 18 of 21

mining equipment to Plaintiffs.

99.    During Defendant's exercise of unauthorized ownership and possession over Plaintiffs' money and/or bitcoins, Plaintiffs were excluded from exercising their ownership and possession rights over the money and/or bitcoins.

100.    Further, by paying for and purchasing Bitcoin mining equipment from Defendant, Plaintiffs had an ownership interest in such Bitcoin mining equipment.

101.    After Plaintiffs' Bitcoin mining equipment was manufactured, but before shipping such Bitcoin mining equipment to Plaintiffs, Defendant used Plaintiffs' Bitcoin mining equipment to mine bitcoins for Defendant's own use, benefit, and enrichment.

102.    Plaintiffs never authorized Defendant to keep and use their Bitcoin mining equipment to develop bitcoins for Defendant's own use, benefit, and enrichment.

103.    Without authorization, Defendant assumed or exercised the right of ownership and possession over Plaintiffs' Bitcoin mining equipment by keeping and using Plaintiffs' Bitcoin mining equipment to mine bitcoins for Defendant's own use, benefit, and enrichment before shipping such equipment to Plaintiffs.

104.    During Defendant's exercise of unauthorized ownership and possession over Plaintiffs' Bitcoin mining equipment, Plaintiffs were excluded from exercising their ownership and possession rights over the Bitcoin mining equipment.

105.    As a direct and proximate result of Defendant's conversion of Plaintiffs' money, bitcoins, and Bitcoin mining equipment, Plaintiffs were aggrieved and denied their ownership rights and have suffered an ascertainable loss, including, but not limited to: the purchase price and interest thereon (if paid in money), the value of the bitcoins paid to Defendant and loss of the use thereof (if paid in Bitcoin), the loss of use of equipment that Plaintiffs did not receive or did not receive in a timely manner, the

loss of bitcoins which were mined by Defendant using Plaintiffs' equipment, the diminution in value of the Bitcoin mining equipment as a result of Defendant's conduct, and costs of suit, and attorney's fees.

**WHEREFORE** Plaintiffs, on behalf of themselves and all those similarly situated, pray this Court:

(a)    Enter an order pursuant to Rule 23(c)(1) that this action is to be maintained as a class action;

(b)    Enter an order pursuant to Rule 23(g) appointing and denominating the undersigned as class counsel;

(c)    Enter an order of restitution and disgorgement, and imposing a constructive trust as authorized by law and equity;

(d)    Enter judgment in favor of Plaintiffs and Plaintiff Class against Defendant awarding damages, interest, costs of suit, attorney's fees, punitive damages; and all other relief this Court deems just and proper.

### Demand For Trial By Jury

Plaintiffs hereby demand a trial by jury on all issues so triable.

### Designation of Place of Trial

Plaintiffs request Kansas City, Kansas as the place of trial.

Alexander, et al. v. BF Labs Inc.
*Class Action Complaint*                                                              20
Case 4:14-cv-00815-BCW   Document 44-1   Filed 09/28/14   Page 20 of 21

Respectfully submitted,

WOOD LAW FIRM, LLC


By  _/s/   Noah K. Wood_____
   Noah K. Wood, KS Bar #23238
   noah@woodlaw.com
   Ari N. Rodopoulos, USDC-KS #78455
   ari@woodlaw.com
   1100 Main Street, Suite 1800
   Kansas City, MO 64105-5171
   T: (816) 256-3582
   F: (816) 337-4243

   Attorneys for Plaintiffs

Alexander, et al. v. BF Labs Inc.                                             21
*Class Action Complaint*
Case 4:14-cv-00815-BCW   Document 44-1   Filed 09/28/14   Page 21 of 21