# STATEMENT OF THE COMMISSION

Withdrawal of the Commission's Policy Statement on
Monetary Equitable Remedies in Competition Cases
July 31, 2012

In 2003, the Federal Trade Commission issued the Policy Statement on Monetary Remedies in Competition Cases ("Policy Statement"),[1] which outlined an analytical framework to guide Commission determination of appropriate circumstances for the use of monetary equitable remedies in federal court. Although intended to clarify past Commission views on this topic, the practical effect of the Policy Statement was to create an overly restrictive view of the Commission's options for equitable remedies.[2] Accordingly, the Commission withdraws the Policy Statement and will rely instead upon existing law, which provides sufficient guidance on the use of monetary equitable remedies.

As past cases demonstrate, disgorgement and restitution can be effective remedies in competition matters, both to deprive wrongdoers of unjust enrichment and to restore their victims to the positions they would have occupied but for the illegal behavior. Because the ordinary purpose and effect of anticompetitive conduct is to enrich wrongdoers at the expense of consumers, competition cases may often be appropriate candidates for monetary equitable relief. Although our decisions and orders generally focus on structural or behavioral remedies intended to curb future competitive harm, the agency's mission to protect consumers and competition also includes, where appropriate, taking action to remedy the actual, realized effects of antitrust violations. The policy of depriving wrongdoers of the fruits of their misconduct is evident in the Commission's consumer protection work, where the Commission regularly seeks and attains monetary remedies. Accordingly, while disgorgement and restitution are not appropriate in all cases, we do not believe they should apply only in "exceptional cases," as previously set out in the Policy Statement.[3]

The Policy Statement provided three factors for the Commission to consider in potential disgorgement (or, to some extent, restitution) cases: (1) whether the underlying violation is "clear";[4] (2) whether there is a reasonable basis to calculate the remedial payment; and (3) whether remedies in other civil or criminal litigation are likely to accomplish fully the purposes of the antitrust laws. While the second factor does no more than restate existing legal

---

[1] Fed. Trade Comm'n, Policy Statement on Monetary Equitable Remedies in Competition Cases, 68 Fed. Reg. 45,820 (Aug. 4, 2003) [hereinafter "Policy Statement"].

[2] Although footnote 4 of the Policy Statement notes that "[i]t does not create any right or obligation, impose any element of proof, or adjust the burden of proof or production of evidence on any particular issue, as those standards have been established by the courts," we are concerned that parties could mistakenly argue that the factors laid out in the Policy Statement are binding on the Commission, thus creating an unnecessary side issue in litigation. *Id.* at n.4.

[3] *Id.* at 45,821 ("In general, we will continue to rely primarily on more familiar, prospective remedies, and seek disgorgement and restitution in exceptional cases.").

[4] This factor did not apply to restitution.



standards, the other two factors may impose constraints on the Commission beyond the requirements of the law.

As to the first factor, rarity or clarity of the violation is not an element considered by the courts in disgorgement requests.[5] Indeed, some have erroneously interpreted the clarity factor to mean that disgorgement should not be sought in cases of first impression. Whether conduct is common or novel, clearly a violation or never before considered, has little to do with whether the conduct is anticompetitive; some novel conduct can violate the antitrust laws and can be even more egregious than "clear" violations. Moreover, a notice requirement may be understood to suggest that disgorgement is a punitive tool akin to fines or imprisonment. It is not. Rather, it is designed, when used in conjunction with other forms of equitable relief, to return the market to the condition that existed before the violation occurred, and to ensure that the party that engaged in the anticompetitive conduct does not retain the profits derived from that conduct. We therefore do not see a basis for creating a heightened standard for disgorgement in cases brought under the federal antitrust statutes.[6]

The third factor also may place an undue burden on the Commission. Specifically, the Policy Statement provides that the Commission will consider whether "other remedies are likely to fail to accomplish fully the purposes of the antitrust laws[.]"[7] That language may be read to require that the Commission demonstrate the insufficiency of other actions to secure monetary equitable remedies. If misinterpreted in that manner, such a burden is inappropriate. The question of whether there are alternative plaintiffs that may seek or are seeking monetary relief is relevant in this context, but it is not dispositive. It is only one of several questions that might usefully be asked in deciding whether a Commission imposed monetary remedy is appropriate and necessary.

It has been our experience that the Policy Statement has chilled the pursuit of monetary remedies in the years since the statement's issuance. At a time when Supreme Court jurisprudence has increased burdens on plaintiffs, and legal thinking has begun to encourage greater seeking of disgorgement,[8] the FTC has sought monetary equitable remedies in only two competition cases since we issued the Policy Statement in 2003.[9] Although many of the issues

---

[5] *See, e.g.*, *United States v. KeySpan Corp.*, 763 F. Supp. 2d 633, 638-42 (S.D.N.Y. 2011) (supporting the Department of Justice's settlement of Sherman Act claims with disgorgement); *Fed. Trade Comm'n v. Mylan Laboratories*, 62 F. Supp. 2d 25, 36-37 (D.D.C. 1999) (upholding the FTC's ability to require disgorgement in a competition case). We note that the Department of Justice is not subject to the heightened standards articulated by the Commission in the Policy Statement.

[6] In addition to violating the federal antitrust statutes, anticompetitive conduct generally – and novel conduct in particular – may at times constitute a stand-alone violation of Section 5 of the FTC Act. The scope of the Commission's Section 5 enforcement authority is inherently broader than the antitrust laws, in keeping with Congressional intent to create an agency that would couple expansive jurisdiction with more limited and, typically, forward-looking remedies. We do not intend to use monetary equitable remedies in stand-alone Section 5 matters.

[7] Policy Statement, 68 Fed. Reg. at 45,822.

[8] *See, e.g.,* Einer Elhauge, *Disgorgement as an Antitrust Remedy*, 76 ANTITRUST L.J. 79 (2009).

[9] *Fed. Trade Comm'n v. Perrigo Co.*, No. 1:04CV1397 (D.D.C. Aug. 12, 2004); *Fed. Trade Comm'n v. Lundbeck, Inc.*, No. 08-6379, 2010 WL 3810015 (D. Minn. Aug. 31, 2010).

explored in the Policy Statement will continue to inform our future consideration of the use of monetary equitable remedies, we withdraw the Policy Statement to clarify that the Commission will assess the use of those remedies on the basis of relevant law. Existing case law suffices to guide our use of disgorgement and restitution remedies, and we will evaluate the unique circumstances of each case through that framework.

As always, the Commission will exercise responsibly its prosecutorial discretion in determining which cases are appropriate for disgorgement. The Commission regards disgorgement as one of many remedial solutions at its disposal in competition cases, and will employ it accordingly to protect consumers and promote competition.