IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

FEDERAL TRADE COMMISSION, )
Plaintiff, ) Case No.
vs. ) 14-CV-00815-BCW
BF LABS, INC., et al., )
Defendant. )

TRANSCRIPT OF TELECONFERENCE HEARING

On Friday, October 3, 2014, the above-entitled cause came on before the Honorable Brian C. Wimes, United States District Judge, sitting in Kansas City, Missouri.

APPEARANCES

For the Plaintiff: MS. LEAH FRAZIER
MS. HELEN WONG
Federal Trade Commission
600 Pennsylvania Avenue, NW
Mail Stop CC-10232
Washington, DC 20580

For the Defendants: MR. JAMES M. HUMPHREY
MR. MICHAEL S. FOSTER
Polsinelli PC - KCMO
900 W. 48th Place
Kansas City, Missouri 64112

MR. BRADEN M. PERRY
Kennyhertz Perry LLC
7301 Mission Road, Ste. 107
Prairie Village, Kansas 66208

APPEARANCES

(continued)

For the Intervenor: MR. NOAH K. WOOD
MR. ARISTOTLE N. RODOPOULOS
Wood Law Firm LLC
1100 Main Street, Ste. 1800
Kansas City, Missouri 64105

For the Receiver: MR. ERIC JOHNSON (present in chambers)
MS. KERSTEN HOLZHUETER
MR. BRYANT T. LAMER
Spencer, Fane, Britt & Browne LLP
1000 Walnut Street, Ste. 1400
Kansas City, Missouri 64106-2140

Gayle M. Wambolt, RMR, CRR
U.S. Court Reporter, Room 7552
Charles Evans Whittaker Courthouse
400 East Ninth Street
Kansas City, MO 64106 (816) 512-5641

FRIDAY, OCTOBER 3, 2014

(The following proceedings were had in chambers by teleconference:)

THE COURT: Good morning, Counsel. I'm going to go through -- I know we have Ms. Frazier, Ms. Wong for FTC; Mr. Lamer and Ms. Holzhueter for the receiver. Also we have Mr. Johnson here. Then we have Mr. Perry -- Mr. Humphrey, Mr. Foster, Mr. Perry, and also Mr. Wood. Is that correct? Did I cover everyone?

MR. WOOD: Judge, I also have Mr. Rodopoulos from my office.

THE COURT: I apologize. Also Mr. Rodopoulos. Morning, everyone.

Let me -- instead of maybe letting you all argue it, I've had an opportunity to review your briefs. Maybe I'll just get to the meat and potatoes of this. Let me start with you, Mr. Wood.

Why is it do you think you should intervene at this time? And I know because generally your concern is, hey, the FTC is not going to represent the rights of my clients like we are. Maybe that's probably short circuiting it too much, but in the end you want to be involved because you believe that you have interests to protect.

MR. WOOD: I think that's right, Judge, and I think the reason that we're asking for it right now, and I, first of

all, would like to thank the court for giving expedited consideration to our motion and letting the class appear at the hearing by telephone. I think the reason that we're doing it right now and it's so important, just one thing off the top of my head that stands out is the interim order that was stipulated to by the parties and filed last night and signed by the court --

THE COURT: Uh-huh.

MR. WOOD: -- I think it's just one little fact that demonstrates that. I flipped through that order for the first time last night because it was the first time I'd seen it. This order was negotiated in secret between the FTC and between the defendants without any input from the class. First time I saw it was --

THE COURT: Hold on a second. Don't characterize it. It's not in secret. Who's it in secret from? They're the parties to this action. They're negotiating. It's not secret so let's not characterize it -- the fact that you weren't there --

MR. WOOD: Well, Judge --

THE COURT: Hold on, hold on. Now, the fact that you weren't there doesn't make it not secret. You're not a party to this action at this point. So, you know, it is --

MR. WOOD: I guess I should say without input from the class and without informing the class --

THE PHONE OPERATOR: A specialist will be with you momentarily. To cancel this request, press star zero.

MR. WOOD: -- it looks like it's being done in secret. I know the court has input into it, I know the FTC has input into it, I know the defendants have input into it, but from the perspective of the customers out there who are watching this and don't have any view of the proceedings other than what they're seeing pop up on ECF, it looks like it's being done in secret to them.

And in that order there was just one particular line that happened to jump out at me, and that was a line that --

THE COURT: Hello? Hello? Did I lose everyone?

(Conference call temporarily terminated. Conference call reconnected with proceedings as follows:)

MR. WOOD: It's not really that we're complaining that we're not going to get the money, but we're losing out on our chose in action, you know, the personal property of the right to bring that case.

And the second part -- and this is really probably the more important part because it deals with what we're doing right now. You know, the action -- the chose in action, the monetary damages, that's going to come back -- come in later when the FTC litigates their case.

Right now what we're talking about, and I think this is demonstrated by the order the court entered yesterday, is

that equitable remedies, the constructive trust the class was asking for over in Kansas. That was asking for the Kansas court to take control of the personal property that the defendants had that belonged to the class member, and what that is are the Bitcoins. And Bitcoin is personal property the class members had paid to the defendants, the mining machines that the customers had already paid for. We took the position from the District of Kansas action that the machines that were sitting over there on the defendant's premises in fact belonged to the members of the class because they had already paid for them.

THE COURT: Hold on one second. One second.

Okay. And this action wouldn't address that?

MR. WOOD: Okay. It goes into the second thing. Does the FTC equitably protect our interest --

THE COURT: Listen, listen, listen --

MR. WOOD: -- what the interests really are that we're trying to protect.

THE COURT: Listen, Mr. Wood, let me just be -- I don't know how to be more clear than this. There is -- if you read the complaint of the FTC and if you sat in for any bit of my -- on Monday, which you did, it is clearly what the court's purpose is with respect to this as in respect to monies that were paid, monies that were paid for different machines, mining that went on, that could be consumers' personal

property.

My point is this: We don't even have our hands around this until at some point later. The receiver's trying to wrap its hands around all of this. So --

MR. WOOD: I agree with you, Judge, and in fact I talked to the receiver's attorney on Monday, and one of the things I pointed out to him, I said, Hey, by trying to intervene, I'm not looking to parachute into this action and all of a sudden start litigating my class action. You know, I think --

THE COURT: You could though. Hold it. You could though.

MR. WOOD: -- when we intervene is for the court to keep the stay, you know. The court if we intervene can still stay the class action and just say, Look, Wood, you know, you're in, you have a voice now, sit there and be quiet while the receiver figures out what's going on. I think that's actually the appropriate thing to do.

THE COURT: I could say that but you wouldn't have to.

MR. WOOD: Right, right. My objective, Judge, I want the class to have a voice. I'm not looking to come in and litigate the class action.

THE COURT: Hold on, Mr. Wood. If I told you to sit in there and be quiet and then I did something you didn't

like, you shouldn't be quiet. Then you wouldn't be quiet. So I mean I don't think that's the answer because you don't have to be quiet if I intervene.

MR. WOOD: Well, Judge, when I say "be quiet," I mean I'm not looking to start pounding the defendants with discovery and saying where's my discovery I was supposed to get in the District of Kansas action, you know, set my class action case for trial.

But what I'd like to do is when the court is going to enter orders like the one the court did yesterday that contains provisions that might be concerning to the class, I'd like to be able to stand up and say, Judge, I've gotten telephone calls from customers and they're concerned about this provision. They're worried that some of them want Bitcoins back and not necessarily cash and the receiver might be able under this order to just sell the personal property for cash, which isn't what they're looking for. And really I think that's the type of input the court wants to hear.

THE COURT: Well, hold on, hold on. Don't start speaking for me. Don't start speaking for me on what I want to hear.

Here's what I want to hear, I want to hear the receivers come back to me and say, Judge, okay, we think we have a handle on everything, and here's what we're doing, here's the position we're in. And then the parties could get

together, the FTC, and then we could also have BF Labs get together. And then at that point when the court's wrapped around, then we say, Hey, Mr. Wood, here's what they're proposing, why don't you file a motion to intervene and the court will consider at this time because this is where we're at.

Right now I have no idea. I have no idea where we're at. I don't know what Bitcoins we have. I don't know what machines. I don't know what consumers are owed what, who wants what, but that's part of this process.

MR. WOOD: I think that's exactly right, Judge, but I don't think just having us on the docket where, you know, we're at least there and trying to hear what's going on would interfere with that process.

THE COURT: What?

MR. WOOD: As a matter of fact, I think it might help. I get all kinds of class members calling me every day, and, you know, I don't think it helps to have them calling the FTC. I don't think it helps having them call the receiver. You know, I think it would actually help the court to have somebody talking to these customers, letting them know what's going on because right now honestly they're calling me up and saying, Hey, what do I do? I say, Well, you know -- they call the FTC and the FTC says, Well, yeah, we're going to try to get everybody's refunds but, you know, we're not your lawyer,

we can't give you legal advice. BFL certainly doesn't represent them. It's not the receiver's job to deal with them. He's charged with marshaling and managing the assets of the class.

I think there's a purpose to be served here by the class representatives. I mean, that's the reason they exist is to give the court one place to look when it needs input as to what the customers think. And right now nobody's giving that viewpoint.

THE COURT: Ms. Frazier or Ms. Wong.

MS. FRAZIER: It's Ms. Frazier. And just a few things. First of all, the FTC is adequately representing the consumers in this action, and as a matter of law, the class representatives have not demonstrated or met -- have not demonstrated why that wouldn't be the case.

Just to answer a few of the points that Mr. Wood raised, first of all, he claims that there is some type of rate that would be credited if the FTC is able to go along with this action, and in support of that, he says that as a matter of Kansas law, that class members would be precluded from pursuing other remedies if the FTC could continue.

And he cites one case in support of this, the Lehigh case, and that case doesn't say that at all. It just says that -- really all it says is that at some point a party might be called upon to elect a remedy, not that anyone would be

precluded later on from seeking different contractual remedies if they see fit later on. So he has really failed to establish that the class would be in any way prejudiced if they were not allowed to intervene in this action.

I mean, what this all boils down to is the notion that the class wants to have a greater voice in terms of what share of the defendants' assets they can get as opposed to the broader pool of victims, which is the voice that the FTC seeks to represent here.

Second, he also mentions that the class members have a property interest in Bitcoin, but it's far from established that Bitcoins are viewed as personal property. It's correct that he raises -- as he raised in the reply papers that the IRS has determined that Bitcoins are to be treated as personal property for tax purposes, but that is not well settled. At least one other court has considered this issue.

It's -- the case is United States v. Ulbricht, and it was out of the Southern District of New York. The issue there was whether money laundering statutes would apply to transactions conducted in Bitcoin. The argument there was that it shouldn't because they're personal property as opposed to -- as opposed to funds, and the court there said that the Bitcoins would be viewed as funds for purposes of the statute despite the IRS' treatment of them as personal property. So it's established that selling Bitcoins on the open market

results in a violation of the class' property rights.

But, nonetheless, I mean, they've really -- they failed to meet the -- their burden of proof as to why they should be able to intervene in this matter. First of all, the harms they cite are definitely contingent upon future events. They're not colorable at this moment. The FTC really isn't seeking to void any consumer contract. If anything, we -- we're seeking monetary redress for consumers and have no desire to preclude anyone from seeking remedies in the future, and also it's really this court's decision as to what remedy is ultimately granted in this case.

And then, finally, the last contingency is this fear that consumers would not be able to opt out of any type of final relief that the FTC obtains, but there is no support -- there's really no support for this fear. The only -- the only case that the class members cite is Equinox, and we've discussed that thoroughly in our briefing papers. And it bears mentioning that one of the reasons that consumers were not allowed to opt out of the final relief in that case is because they were allowed to intervene. So it actually stands for the exact opposite proposition that the class members are citing it for.

And, furthermore, there is no -- there's no evidence that the FTC would not adequately represent the consumers or the class' interest here because, you know, even the class

members have gone so far as to state that the FTC case is a copycat lawsuit. So in that way they admit that we're all seeking the same goal.

The only issue is whether or not the class members' interest would be prioritized above the interest of the broader pool of defendants' victims.

THE COURT: Thank you, Ms. Frazier.

Mr. Wood, you have about a minute to reply if you like.

MR. WOOD: Judge, I don't know where to start, but I'll just hit the highlights.

THE COURT: Why don't we start with this one. Hold it. I'll help guide you where to start because this is what I want you to address. You do mention within your brief that the FTC simply copycats what you did in the District of Kansas, and so I think what Ms. Frazier's point is we're all looking at the very same thing. So why is it that you seek to intervene?

And another thing I hear, Ms. Frazier, you're seeking to intervene on behalf of your limited class and what the FTC is looking kind of in this broader sense across this country those. So basically you want to intervene and, hold on, address this too, if I let you in, in theory everyone could start being let in as an intervenor and I would have no right to shut them off. For the same reasons I'm not allowing

you to -- or allowing you to intervene, they could intervene for those very same reasons, and then we have a litigation that could be running crazy. We have to address it. The court would have to address any issues or motions filed. It would affect our ability to do a lot of things. So answer those three.

MR. WOOD: Judge, I think those are great questions. First of all, I point out that when I say it's a copycat, I'm talking about the factual allegations, not necessarily that we're seeking the same relief. I just wanted to make that clear.

Second, the class in the District of Kansas case is defined as everyone who prepaid defendants for Bitcoin mining equipment. That subsumes all of the customers. If the court were to let the class members intervene in this action, it would have the class members speaking for all the customers that prepaid defendants for Bitcoin mining equipment, which should subsume everybody in the customer class, and the court would have no obligation to let everybody out there intervene in the case.

And I think in terms of efficiency, it would be much better to have a single group representing and speaking for that interest and --

THE COURT: Now, has this class been certified?

MR. WOOD: It has not, Judge. And that was one of

the things we were prepared to brief, but we didn't because the FTC didn't bring it up.

THE COURT: But it's -- hold it. Hold on. But it hasn't been certified at this point in time is the point.

MR. WOOD: That's exactly right. But certification only goes to how the court conducts the action and how it conducts the trial. For purposes of protecting the class interest and speaking out for the class and acting for the class, the class representatives already have a fiduciary duty as soon as they file the complaint.

THE COURT: Well, we don't know what the class would end up.

MR. WOOD: No, Judge. But as a putative class, we take the definition that was in the complaint and operate on that up until it would be changed at a later time by the court. Obviously that's not going to happen because of the stay.

So right now the class representatives have a fiduciary duty to speak on behalf of that class as it's defined in the petition, and that's exactly what they're trying to do.

THE COURT: Okay.

MS. FRAZIER: Your Honor, if I may.

THE COURT: Yes.

MS. FRAZIER: I mean, the fact that the class -- the

fact that Mr. Wood is saying that the class would be all of the victims demonstrates why intervention wouldn't be necessary at this point, and also there really is no support for this idea that they wouldn't be able to seek additional remedies above and beyond what the FTC obtains on behalf of consumers after the litigation continues should we prevail.

MR. WOOD: Judge, can I go back and answer the rest of your questions that you asked about the -- whether or not the FTC was going to adequately protect the customers?

THE COURT: Yes.

MR. WOOD: I think that was the second part of your question.

You know, the FTC's duty here, they talk about trying to get refunds for the class. The FTC is not an attorney that is representing the class or the client. Their duty is, as they said, the general public interest. They're a civil enforcement agency, and they tried to say that because we represent the general public -- frankly, the FTC represents you and I just as much as they represent a customer of Butterfly Labs.

You know, they represent the general public interest, and the cases say that the FTC only gets that presumption that they'll represent everybody's interest when you're talking about the public interest. But here we're talking about the specific property of these people that

turned over their property to Butterfly Labs. One example of this is kind of the PR talk that the FTC had where they issued these big press releases about shutting down Butterfly Labs and closing the doors and all this.

You know, I was talking to a class member, and he was a lot more cynical than I was. He said, Oh, you know, the FTC is just politics, all they want is some headlines, and then they're going to leave us. I said, No, no, no. Really the FTC, that's them serving who they have a duty to. Their duty is to the general public interest, and part of that is as a deterrent to future people that do this type of action. That's why they do these big press releases.

MS. FRAZIER: Your --

MR. WOOD: In similar situations people will look at it and go, yeah, I don't want to get in that because the FTC is going to come after me.

That's just a little thing that shows the difference between representing the general public interest and versus representing the people that actually own those mining machines that are sitting over there at Butterfly Labs.

MS. FRAZIER: Your Honor, Mr. Wood is misinterpreting what the FTC's obligation is. We don't have a separate obligation to think of everyone in the entire country while we are pursuing this action. Generally the public interest of the FTC and any of its enforcement actions is to

ensure or to try to ensure that consumers are redressed. So our public interest is equal with -- in this case is equal with getting consumers redress as best as possible.

So I mean Mr. Wood shouldn't be allowed to sit here and say exactly what the FTC's public interest is when the papers have made clear that this is our ultimate goal.

THE COURT: Well, he can say it. You can just disagree with him, and I may agree with you too. But if he wants to say it, he can say it.

MR. HUMPHREY: Your Honor, it's Jim Humphrey. Will there be an opportunity for us to be heard on this matter?

THE COURT: You can be heard now, Mr. Humphrey.

MR. HUMPHREY: I appreciate it, Your Honor. I just want to say a few words here.

I think Mr. Wood hit on a nerve and -- when he talks about the public interest. You know, look, this is a legal morass you've been presented with, Your Honor. We're trying to help you find a way out of it. As far as I can see, the FTC is not helping matters.

THE COURT: Hold on, hold on. Let's stop because you guys say these words, and I'm not as smart as you so I want to understand. Help the court out of what exactly? I'm not sure.

MR. HUMPHREY: Well --

THE COURT: What are we helping the court with?

MR. HUMPHREY: Well, I think from my standpoint, Your Honor, the --

THE COURT: I think from the standpoint of me trying to get you all together was trying to help you in a way because otherwise I'll hear the evidence and I'll make a determination and I'll issue an order. And I don't know if that would necessarily serve as opposed to people getting together. So I'm not quite sure what you're suggesting is going to help the court out. What is going to help the court out? The court has its role.

MR. HUMPHREY: I understand. I'm about to give you what is going to help the court out. I would encourage you and Mrs. Teeter to sit down and read these specific points and study them because I think it will help the court. I think one thing I'm encouraged about this is this dialogue. You're right, Your Honor, I think this dialogue has moved things forward. It's helped frame the issues, and I think the court can get to the heart of this. My point is simply it's funny how Mr. Wood in his briefs is pointing out that his interest is in personal property. It's in equipment and Bitcoins. Now, that's something to keep in mind. He's not just talking about Bitcoins. He's talking about the equipment.

His customers, they want -- his clients. And it's a putative class action so his two named plaintiffs. And then those potential class members are talking about how they might

want equipment, the same equipment that the FTC has so far told the court is a fraud and a scam, okay. So they want the equipment. The equipment works.

Another thing then to try to hone in on this, I'd encourage the court to look to Footnote 6 in the FTC's suggestions in opposition to the intervention attempt because they say there that the FTC is -- it says there the FTC's preventing BF Labs from refunding customers and halting BF Labs from producing and shipping mining equipment. Then they say this is false. It's amazing to me that they would say that.

They are in fact stopping us from issuing refunds. That's exactly what we were doing in the company, and they are -- to be completely accurate, Your Honor, they are stopping us from producing mining equipment. Now, we are going to be able to ship some equipment that's already been manufactured, but to the extent that they want to tell the court that that's false, I want you -- I encourage the court to subject that to scrutiny.

Now, here's the other issue. Mr. Wood talks about how we've converted -- that's his case. We converted personal property. The FTC is making an argument planning on this, Your Honor, about how the IRS has categorized it, and that's going to be the heart of our case, Your Honor, is that -- to the point. Mr. Wood says it's a property interest. I am

mightily struggling with that under governing case law. Every case that I've seen, every angle we've looked at this, they don't have a property interest in the equipment, and they don't have a property interest in the Bitcoins that they pay for the equipment.

I think the law will be clear on that, and I encourage you and Ms. Teeter to study that issue. I think it is absolutely going to come out in our favor.

Now, here's -- so I would encourage -- if this has accelerated things, then frame the issue. I think to get to your point on why I was upset earlier is because I think it's ill conceived what the FTC has done here and the approach they've taken in the late day in which they approached this. We have this putative class proceeding nicely, and they come in and do this. Now we have you issuing an order telling Judge Vratil what to do. It's a mess. It's a total mess.

THE COURT: Mr. Humphrey, Mr. Humphrey.

MR. HUMPHREY: Yes, Your Honor.

THE COURT: Do you understand -- please don't characterize what I'm telling, who I'm telling, or who I've talked to. I understand you're trying to represent, but you need to be careful in terms of how you characterize things and how you address this court. I'm only going to say that once, sir.

MR. HUMPHREY: Your Honor, I apologize.

THE COURT: And don't tell -- it's funny how you all seem to tell me what -- how and what and who and the things that I do and you have no idea. So please watch yourself when you're talking or characterizing me when I'm on the phone.

MR. HUMPHREY: I apologize, Your Honor. My point is simply --

THE COURT: Make your point.

MR. HUMPHREY: That the point is that the order is -- the order, that's what it does. I'll leave it at that.

THE COURT: Let me tell you something else that you all seem to assume or presume by the fact that I issued the TRO and the fact that I required you all to make this -- you're presuming that I assume the FTC with how they characterize your business and your company, that that is the court's belief. That's --

MR. HUMPHREY: I don't think that, Your Honor.

THE COURT: Well, that is their characterization of it and if I --

MR. HUMPHREY: I apologize --

THE COURT: If I truly felt that, if I truly felt that, we'd probably be posturing this case in a different position than what we're posturing it. Yes, I would have heard evidence. Yes, I would have made a ruling as relates to the preliminary injunction.

But I thought, I thought that the right approach to

this would be the approach taken by the report I received from the receiver, not presuming that you have done the things that are alleged, but a way we can get at this and move this matter forward. With respect to matters in cases filed in other jurisdictions, quite frankly, that is the court's issue and who I'm telling or another judge, what you suggest that I'm telling them what to do, you have no idea this court's conversation with other chambers.

So if you're going to make suggestions, make sure you know them and know correctly.

MR. HUMPHREY: I apologize, Your Honor.

THE COURT: I think with your adamance and your feeling about the FTC, you're letting that spill over. FTC too. The way you guys are conducting yourselves or at least have conducted yourself prior to this court on Monday hasn't been in a civil way on either side. We're mudslinging and I'm not going to be a part of that.

My part is get this matter resolved and what's fair ultimately in the end. And if that's not issuing a TRO or ultimately not issuing a preliminary injunction, so be it. That's why we get life tenure because I don't have a dog in this fight in terms of who wins or loses. What's fair and what's right.

So I don't need to be lectured by you or Mr. Wood or Ms. Frazier about that at all because in the end, and you're

representing your interests, I have one overall goal, to make sure this is done fairly and properly and according to the law. I have no dog in this fight.

So to suggest what me and Ms. Teeter need to do -- yes, we're looking at this. We're working diligently on this with different goals than you all apparently because ours is to be fair and do the right things and the right circumstances as these matters face this court, and to this end that I decided that the receiver, I like that plan, I think that's a prudent way to move forward.

Now, if there's other issues related to this motion to intervene, Mr. Humphrey, you can continue from that standpoint.

MR. HUMPHREY: Thank you, Your Honor.

Just a few more points and I'll close it down. One thing that I think is also instructive for the court in trying to be -- and I understand trying to be fair and do the right thing is a very difficult burden. I understand that.

So here's what I say is the FTC says in their brief that this involves speculative economic harm, and I think that's telling as well as how they view the overall effort here, what they're trying to do. They say that they reflect -- this reflects neutrality towards private class action, what they're doing. That couldn't be further from the truth.

The government is presumed to represent the interest

of the public. They say they're charged with protecting consumers, Your Honor. I submit to you, Your Honor, the evidence in this case to date, and I understand this is accelerated, it's created a difficult burden to try and understand where we're at. But I submit, Your Honor, that that presumption, whatever it is, should be studied carefully and disregarded by the court in this instance because I do not believe the FTC is adequately representing the interests of the public or protecting consumers.

They are interested, as Mr. Wood has pointed out, their interest is in their -- it's apparent from the way they did this. I don't mean to be overly critical of them, but they issued a press release that held a Twitter feed calling the company what they did. And that's unfortunate -- we have a company here with real people that are working these real jobs and getting a real paycheck. That's been completely devastating to date.

And I understand the court is charged with doing what's right and what's fair. I just see -- the reason I'm so adamant is I feel -- I have a conflict because you've been put in an untenable situation with this. There's no good way forward. I think from my standpoint the company should be back in business. It never should have been shut down, Your Honor.

I understand we're dealing with a receiver, and we

will continue to cooperate fully with the receiver. I know they're doing their best, and I admire them in their efforts to date same as I admire the court and the court's efforts. I'm not trying to tell the court what to look at. I'm only encouraging the court to look at the things that are important.

The last thing I'll point to, Your Honor, is I think this case boils down to the property interests, and then I'd encourage the court to look at the brief that Mr. Wood in his reply suggestions -- and in particular Exhibit 1, page 9 of 10 there's a -- this is a customer who is outlining his view of things. And if you look toward the bottom, it would be the last full paragraph on page 9, and I think he talks about what would have happened if people would have got their equipment and the price of Bitcoin would have gone up. Your Honor, I think that's what this case is about.

Unfortunately, the FTC, their view of this is misguided, and so I'm trying to make that apparent to the court. I think the approach they've taken is not consistent with consumers' interests. They want a bounty. They want to publicize it, and I think that's inconsistent with the remedy to the class.

I'd be much more -- and the -- why I've consented to Mr. Wood appearing is because I think Mr. Wood understands the issues and real relief -- real meaningful relief for his two

class members, his putative named class members in his class. I think that provides real relief and is inconsistent with what the FTC is trying to do here, Your Honor.

Thank you.

THE COURT: Anyone else?

MR. WOOD: Your Honor, this is Mr. Wood. If I could just make a final conclusion I guess in support of my motion.

I think the fact that both the Federal Trade Commission and Mr. Humphrey are both here telling the court that my interests are not property, that Bitcoin is not personal property, and that my claims are speculative and not concrete now demonstrate the fact that there's nobody here protecting the interest of the class members.

And I'd just like to point out one case from the Eighth Circuit that we quoted in our initial brief, and it said that intervention is to be construed liberally, and doubts are resolved in favor of the proposed intervenor. I think the reason the court of appeals has said that is so that courts below will have the ability to know that when they issue orders and make decisions in the cases, that they have input from everybody that has interests.

And I hope when I get a call from one of the Butterfly Labs' customers, even if we lose and the court doesn't give us something that we ask for, I can tell them this is something that Judge Wimes did after listening to your

voice. You had an opportunity to make your argument, make your position known, and he decided this way because of X, Y, Z that was put forth in his order, but at least you got your day in court.

THE COURT: But, you know --

MR. WOOD: That's all I ask, Judge.

THE COURT: I appreciate that, Mr. Wood. I think in the end and I can't -- I know you guys, you know, why the FTC is doing it. You know, I get it, but, you know, I'm not beholden to them. I'm not beholden to anyone. That's why I like this lifetime appointment. I didn't necessarily agree and I don't necessarily disagree with some heavy handedness, Mr. Humphrey, which you suggested.

But I don't entirely -- you know, what I see and why I, you know, appointed a receiver is that there are some things maybe that would be helpful to the business plan of this particular company. That way we can -- and I know the FTC and you're saying they're not protecting the consumers, but I think this court has an obligation to see what's going on in a general way and try and get to the point.

You know, if BF is working and operating up and going as a business, you know, wonderful. I think what I was trying to do is to allow that. Now, probably not in a way you suggest, but trying to allow that, not taking what the FTC says hook, line, and sinker. However, on the other end, there

is that interest to those -- you know, whether it's personal property, whether it's property, what I do know is this, there may be some customers slash consumers out there who need reimbursement of some sort, of some kind with Bitcoins. I don't know.

I just want to get my hands around this case so I can make some determination because my interest is not too different than yours. I think if there was some wrongs or there's some things that need to be -- when I say "yours," Mr. Wood I mean, so I'm saying -- trying to see this from all different angles and trying to make sure in the end that, you know, the customers who are owed reimbursement are done and we still have this company that's viable and up doing what it wants to do.

So, you know, I'm considering everything you all say. I appreciate, you know, these discussions because it helps me, and it does guide me, Mr. Humphrey. To the extent you want me to pay attention, the court will, and I hear what you're saying. I do and I hear what, you know, the FTC is saying. So I'm trying to make some sense of this and trying to do it in a reasonable, expedited manner so all parties can, especially in your case, Mr. Wood, seek the redress that they want and so we can just get a sense of what's going on so we can move forward.

So with that said, the court -- I'll rule on the

motion to intervene, I'll have something out this afternoon with respect to that.

Is there anything else?

MR. WOOD: Thank you, Judge.

MS. FRAZIER: Thank you, Your Honor.

MR. HUMPHREY: Thank you, Your Honor.

THE COURT: Thank you all. Appreciate it.

REPORTER'S CERTIFICATE

I certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter.

______________ ______________________________

Date Registered Merit Reporter