UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>　　Plaintiff,<br><br>　　v.<br><br>BF LABS, INC., et al.<br><br>　　Defendants. | **CASE NO.** 4:14-cv-00815-BCW<br><br>**PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

Plaintiff, the Federal Trade Commission ("FTC"), hereby submits its opposition to Defendants' Motion to Dismiss.[1] The FTC's complaint sets forth in extensive detail how Defendants misrepresented the delivery dates and profitability of their Bitcoin mining machines, and how those misrepresentations violate Section 5 of the FTC Act, 15 U.S.C. § 45. Defendants do not argue that these well-pled factual allegations fail to state a claim upon which relief can be granted. Instead, Defendants rely on statements outside of the complaint (which the Court need not consider in ruling on a motion to dismiss) that they analyze using a legal standard applicable solely in Securities Exchange Act cases.[2] These outside statements, however, when viewed under the applicable standard – the FTC Act – actually serve to *contribute* to the deception alleged here. Accordingly, the Court should deny Defendants' motion to dismiss.

---

[1] Collectively, Defendants include BF Labs, Sonny Vleisides, Darla Jo Drake, and Nasser Ghoseiri.

[2] A large portion of Defendants' brief also argues that it was improper for the FTC to seek, and the Court to grant, an *ex parte* temporary restraining order. As the Eighth Circuit has recognized, however, Section 13(b) of the FTC Act authorizes the FTC to seek, and the Court to issue, temporary, preliminary, and permanent injunctions. *FTC v. Sec. Rare Coin & Bullion Corp.*, 931 F.2d 1312, 1314-15 (8th Cir. 1991). Indeed, numerous other courts in this Circuit have ordered similar *ex parte* relief. *See, e.g.*, *FTC v. CWB Services, LLC*, Case No. 4:14-cv-783-DW (W.D. Mo. Sept. 9, 2014) (*ex parte* TRO with appointment of receiver and asset freeze); *FTC v. Business Card Experts, Inc.*, Case No. 0:06-CV-04671-PJS (D. Minn. Nov. 29, 2006) (*ex parte* TRO with appointment of receiver, asset freeze, and expedited discovery, including financial reporting); *FTC v. Kruchten*, Case No. 01-523- ADM/RLE (D. Minn. May 10, 2001) (*ex parte* TRO with appointment of receiver and asset freeze); *FTC v. Neiswonger*, Case No. 4:96-CV-2225-SNL (E.D. Mo July 17, 2006) (*ex parte* TRO with appointment of receiver, asset freeze, and expedited discovery). In addition, Congress has observed with approval the use of *ex parte* relief under the FTC Act: "Section 13 of the FTC Act authorizes the FTC to file suit to enjoin any violation of the FTC [Act]. The FTC can go into court *ex parte* to obtain an order freezing assets, and is also able to obtain consumer redress." S. Rep. No. 130, 103rd Cong., 2d Sess. 15-16, *reprinted in* 1994 U.S. Code Cong. & Admin. News 1776, 1790-91.

1

**I.      FACTUAL BACKGROUND**

The FTC filed the instant lawsuit against Defendants in September 2014 seeking a permanent injunction and other equitable relief based on violations of Section 5(a) of the FTC Act.[3] The FTC sought a temporary restraining order ("TRO") that included an asset freeze and the appointment of a receiver. (TRO, DE # 9). The Court granted the TRO and, subsequently, granted the parties' stipulated interim order that included several of the same provisions. (Stipulated Interim Order, DE # 54).

**II.      LEGAL STANDARD**

A Rule 12(b)(6) motion questions whether a complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007)). In making this assessment, courts must accept all of the plaintiff's factual allegations as true and construe all reasonable inferences in favor of the plaintiff. *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768 (8th Cir. 2012). Courts "generally must ignore materials outside the pleadings" and limit review to the allegations on the face of the complaint. *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 932 (8th Cir. 2012); *see also Talkington v. American Colloid Co.*, 767 F.Supp. 1495, 1496 (D.S.D. 1991) ("The purpose of a motion to dismiss under Rule 12(b)(6) . . . is to assess the legal

---

[3] The FTC's filing in this district is appropriate. Under the FTC Act, venue is proper in any district where a defendant "transacts business" or wherever venue is proper under section 1391 of title 28. 15 U.S.C. § 53(b). Venue is proper under 28 U.S.C. § 1391(b)(2) where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). As noted in the FTC's Memorandum in Support of a TRO, until May 2013, Defendants' principal place of business was in Kansas City, Missouri. Further, through their websites, Defendants transact business throughout the United States, including in the Western District of Missouri. *See GTE New Media Services, Inc. v. Ameritech Corp.*, 21 F. Supp. 2d 27, 38-40 (D. D.C. 1998) (noting venue proper where non-resident defendant conducts direct commercial transaction over the internet with users in the forum); *Gary Scott Int'l v. Baroudi*, 981 F. Supp. 714, 718 (D. Mass. 1997) (same).

feasibility of the complaint, not to weigh the evidence which Plaintiff offers or intends to offer."). Courts may—but need not—consider materials outside the pleadings if those materials are "part of the public record or do not contradict the complaint," or if they "are necessarily embraced by the pleadings." *Miller*, 688 F.3d at 932.

## III. THE COMPLAINT STATES A CLAIM FOR VIOLATIONS OF THE FTC ACT

To state a claim for relief under Section 5(a) of the FTC Act, the FTC must allege that: (1) a representation, omission, or other practice occurred, (2) the representation, omission, or practice is likely to mislead consumers acting reasonably under the circumstances, and (3) the representation, omission, or other practice is material. *See FTC v. Real Wealth, Inc.*, 2011 WL 1930401 at *3 (W.D. Mo. May 2011). The complaint alleges each of these elements of deception.

### A. The Complaint Alleges that Defendants Made Representations about Profitability and Delivery Dates

As the complaint alleges, Defendants have represented that consumers would be able to use Defendants' Bitcoin mining machines to generate Bitcoins, or generate a profitable or substantial number of Bitcoins. (FTC Complaint at ¶¶ 20-30, DE #2). Defendants made these representations on their website, their social networking pages, and in the press. *Id*. For example, Defendants provided a calculator that purportedly enabled consumers to calculate the return on investment for their Bitcoin mining machines. *Id*. at ¶¶ 22-23. By entering the information about Defendants' machines (such as the delivery date and processing power) from Defendants' website, consumers could view "net hourly, daily, weekly, monthly, and annual profit, and the date by when the consumer could expect to break even on the machine and its operating costs." *Id.* As the complaint alleges, Defendants also made express promises about when they would deliver the machines. *Id*. at ¶¶ 26 - 31. For example, the complaint alleges

3

that Defendants stated they would deliver the BitForce in October 2012, and the Monarch in December 2013. *Id.* at ¶¶ 27, 31. Thus, the complaint states that they made express representations regarding delivery date.

### B. The Complaint Alleges that Defendants' Representations Were Likely to Mislead Consumers Acting Reasonably

The complaint alleges that these representations were false; thus, they were likely to mislead consumers acting reasonably under the circumstances. *In re Thompson Med. Co.*, 104 F.T.C. 648, 788 (1984), *aff'd*, *Thompson Med. Co. v. FTC*, 791 F.2d 189 (D.C. Cir. 1986), *cert. denied*, 479 U.S. 1086 (1987) (explaining that false claims are inherently "likely to mislead"); *see also Five-Star Auto Club*, 97 F. Supp. 2d at 528.

Despite Defendants' promises that they would deliver their machines by specific dates, Defendants repeatedly failed to deliver the machines on time. (FTC Complaint at ¶¶ 24 - 31, DE #2). For example, the complaint alleges that although in June 2012 they represented that they would deliver the BitForce machines in October 2012, they still had not delivered a single BitForce machine six months later, *id.* at ¶ 27, and by almost a year later – September 2013 – they had failed to deliver machines to more than 20,000 consumers who had paid for the equipment in full, *id.* at ¶ 28.

As the complaint alleges, delivery delays between six months and a year would significantly decrease the number of Bitcoins mined by any mining machine. *Id.* at ¶ 24. Thus, when consumers received the machines well past the time Defendants had represented, they mined far fewer Bitcoins than they would have had they shipped on the promised shipment dates. *Id.* at ¶¶ 32 – 33. In other instances, consumers were not able to mine for Bitcoins at all using Defendants' machines. *Id.* For example, the complaint states that many consumers never received the machines, or that they received damaged machines. *Id.* It was reasonable for

4

consumers to rely on Defendants' representations regarding profitability and delivery, particularly in this highly technical market. As the Eighth Circuit explained in *FTC v. Sec. Rare Coin,* it was "reasonable for consumers entering this specialized and technical market to rely on the representations of an apparently reputable firm." 931 F.2d 1312, 1316 (8th Cir. 1991).

In addition, the FTC has alleged that Defendants' misrepresentations actually deceived many consumers. Specifically, the complaint alleges consumers have complained or requested refunds from Butterfly Labs because they failed to receive the BitForce or failed to receive it in a timely manner based on Defendants' representations. *Id.* at ¶¶ 29, 35 – 36. Such proof that consumers were actually deceived is not required, but is "highly probative" to show that a practice is likely to mislead consumers acting reasonably under the circumstances. *See FTC v. Cyberspace.com*, 453 F.3d 1196, 1201 (9th Cir. 2006).

Further, to be considered reasonable, an interpretation or reaction does not have to be the only one. FTC Deception Policy Statement, 103 F.T.C. 110, 1984 WL 565319 at 47, (1984). When a seller's representation conveys more than one meaning to reasonable consumers, one of which is false, the seller is liable for the misleading interpretation. *Id*. Thus, to prevail on their argument that the FTC failed to allege that the promised shipping dates were likely to mislead reasonable consumers, Defendants would have to show that, taking the complaint's allegations as true, no consumer, including the thousands that have complained, could reasonably believe that when Defendants said they were shipping machines in a particular month, they meant what they said. For example, Defendants would have to show that no consumer could reasonably interpret the claim that the machines were scheduled for delivery in October 2012 to mean that Defendants would deliver the machines in October 2012.

Defendants do not meet this burden. Instead, without citing to a single case involving the FTC Act, Defendants insist that representations about shipping delays are not misleading as a matter of law. Defendants cite cases interpreting the Securities Exchange Act and SEC Rule 10b-5, which do not apply here. *Borow v. nVIEW Corp.*, 829 F. Supp. 828, 834-35 (E.D. Va. 1993); *In re Number Nine Visual Tech. Corp. Secs. Litig.*, 51 F.Supp.2d 1 (D. Mass. 1999) (hereinafter, *Number Nine*). Unlike here, both those cases involved alleged violations that required *scienter*, which the courts found plaintiffs had failed to allege. *Id*. The FTC, however, need not allege intent to defraud or deceive to establish a violation of the FTC Act. *See*, *e.g.*, *Removatron Int'l v. FTC*, 884 F.2d 1489, 1495 (1st Cir. 1989); *FTC v. World Travel Vacation Brokers*, 861 F.2d 1020, 1029 (7th Cir. 1988); *FTC v. Five-Star Auto Club*, 97 F. Supp. 2d 202, 526 (S.D.N.Y. 2000). Rather, as the Eighth Circuit explained in *FTC v. Sec. Rare Coin & Bullion Corp.*, 931 F.2d 1312, 1316 (8th Cir. 1991), "the FTC need merely show that the misrepresentations or omissions were of a kind usually relied upon by reasonable and prudent persons, that they were widely disseminated, and that the injured consumers actually purchased the defendants' products." *See also Real Wealth Inc.*, 2011 WL 1930401, at *3.

Defendants' motion to dismiss attaches as exhibits many pages of information outside the scope of the complaint, including purported disclaimers and qualifying language in blog posts, FAQ sections, and other portions of Defendants' website. (Def. Amended Mot. to Dismiss at 11 - 15, DE #103). As noted *supra*, this Court need not consider Defendants' extraneous submissions on a Rule 12(b)(6) motion to dismiss. Even if this Court does consider Defendants' submissions, however, they do not undermine the complaint's well-pled allegations that Defendants' misrepresentations were likely to mislead reasonable consumers. Rather, the extra information and statements from Defendants' blog and forums posts contributed to the

6

deception, and in no way detracted from it. *See* FTC Deception Policy Statement, 103 F.T.C. 110, 1984 WL 565319, (1984); *Stouffer Foods Corp*., 118 F.T.C. 746, 798-99 (1994); *FTC v. Sterling Drug, Inc*., 317 F.2d 669, 674 (2d Cir. 1963) ("The entire mosaic should be viewed rather than each tile separately. The buying public does not ordinarily carefully study or weigh each word in an advertisement. . . ." (internal quotation marks omitted)); *see also see also FTC v. AMG Servs., Inc.*, Case No. 2:12-cv-00536-GMN-VCF, 2014 U.S. Dist. LEXIS 12524, at 36 (D. Nev. Jan. 28, 2014) (finding net impression misleading because of "vague," "uncertain," and "contradictory" provisions); *FTC v. Grant Connect*, 827 F. Supp. 2d 1199, 1214 (D. Nev. 2011) (stating that fine print disclosures may not overcome an ad's deceptive net impression).

In fact, the FTC actually cited to much of this extra information and other statements by Defendants in its Memorandum in Support of a TRO.[4] Using just one example, the FTC presented evidence that Defendants stated, on webpages consumers viewed immediately before purchasing the machines, that the "BitForce SC Chip is now in final stage development" and "Initial product delivery is scheduled for October, 2012."[5] Defendants now argue that because they buried (often contradicting) qualifying statements on their *blog and FAQ Page*, they are somehow not responsible for the representations they were making on the "Products" section of their webpage. Worse, while Defendants may have posting these additional disclosures on their blog, they did not post these additional disclosures or shipment date qualifications on the "Product" section of the website – where consumers actually place orders.

---

[4] *See* TRO Brief, PX 1(DE # 8).

[5] *See* TRO Brief, PX 1, Att. M (DE # 8).

7

Defendants also argue that their representations about profitability are not misleading. They cite to one sentence in *In re Marion Merrell Dow Inc., Secs. Litig. II*, No. 93-0251-CV-W-6, 1994 WL 396187, at *6 (W.D. Mo. July 18, 1994) about whether currency can fluctuate to support their argument. From the FTC's complaint, however, it is clear that the Commission is alleging that consumers were unable to generate a substantial *number* of Bitcoins. (FTC Complaint at ¶ 24 (explaining that delivery delays would significantly decrease the number of Bitcoins mined by a mining machine), DE #2). The complaint does not allege that any Bitcoins a consumer was able to generate dropped in value, nor does it otherwise allege that Defendants are liable for market fluctuations. Rather, it alleges that Defendants are liable because they made representations that were false and material, and therefore violated the FTC Act.

### C. The Complaint Alleges that Defendants' Misrepresentations about Profitability and Delivery Dates Are Material

Finally, the complaint alleges that Defendants' misrepresentations are material. (FTC Complaint at ¶¶ 20 - 34, DE #2). A claim is material if it is likely to affect a consumer's conduct or choices regarding a product or service. *See, e.g., Sec. Rare Coin*, 931 F.2d at 1316; *Real Wealth Inc.*, 2011 WL 1930401, at *2. Further, express claims, like those at issue here, are presumed material. *FTC v. SlimAmerica,* 77 F. Supp. 2d 1263, 1272 (S.D. Fla. 1999); *In re Thompson Medical Co.*, 104 F.T.C. 648, 788-89 (1984), *aff'd*, 791 F.2d 189 (D.C. Cir. 1986).

The complaint alleges that Defendants made express representations regarding the profitability and delivery dates of their machines and services, and that consumers paid hundreds or even thousands of dollars for these machines. (FTC Complaint at ¶¶ 20 - 34, DE #2). The complaint emphasizes that for a consumer to make a profit mining for Bitcoins, obtaining the most cutting-edge technology in a timely manner is paramount. *Id.* at ¶ 19. According to the complaint, however, Defendants failed to deliver the products and services, or delivered them

8

well past the promised time frames. *Id.* at ¶¶ 32-33. Further, according to the complaint, many consumers tried unsuccessfully to cancel their orders and obtain refunds. *Id.* at ¶¶ 35-36. Thus, the complaint alleges that Defendants made express representations, which are presumptively material. And had consumers known that they would not receive the product or service for which they had paid hundreds to thousands of dollars, or would only receive it after substantial delays that would render the Bitcoin mining machine or service unprofitable, many likely would not have purchased the product or service. *FTC v. Business Card Experts*, 2007 WL 1266636, 06-cv-4671 (D. Minn. April 27, 2007) (misrepresentations about expected profits from a business or returns from an investment violate Section 5(a)); *FTC v. Mallett*, 818 F. Supp. 2d 142, 148 (D.D.C. 2011).

Thus, the FTC has alleged each element of deception, and Defendants' motion should be denied.[6]

## IV. CONCLUSION

For these reasons, the FTC respectfully requests that the Court deny Defendants' motion to dismiss.

---

[6] Defendants also argue that because they have ceased taking pre-order sales, the relief sought by the FTC is moot. Voluntary cessation of activity, however, does not obviate the need for permanent injunctive relief if there is a possibility of recurrence, since otherwise the defendant would be free to return to his old ways. *See FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1237 (9th Cir. 1999). Further, "[v]oluntary cessation of challenged conduct moots a case . . . only if it is *absolutely* clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000) (per curiam) (internal quotation marks omitted); *see also FTC v. Accusearch Inc.*, 570 F.3d 1187, 1202 (10th Cir. 2009) (injunctive relief appropriate where defendant "had the capacity to engag[e] in similar unfair acts or practices in the future") (internal quotation marks omitted).

Dated: October 27, 2014                              Respectfully submitted,


                                                     JONATHAN E. NUECHTERLEIN
                                                     General Counsel

                                                      /s/ Helen Wong
                                                     HELEN WONG, DC Bar # 997800
                                                     hwong@ftc.gov
                                                     TERESA KOSMIDIS, NY Bar # 4533824
                                                     tkosmidis@ftc.gov
                                                     LEAH FRAZIER, DC Bar # 492540
                                                     lfrazier@ftc.gov
                                                     GREGORY A. ASHE, VA Bar #39131
                                                     gashe@ftc.gov
                                                     Federal Trade Commission
                                                     600 Pennsylvania Ave., N.W., Mail Stop-CC 10232
                                                     Washington, D.C. 20580
                                                     Telephone: 202-326-3779
                                                     Telephone: 202-326-3216
                                                     Telephone:  202-326-2187
                                                     Telephone: 202-326-3719
                                                     Facsimile:  202-326-3768

                                                     TAMMY DICKINSON
                                                     United States Attorney

Dated: October 27, 2014                               /s/ Charles M. Thomas
                                                     Charles M. Thomas, MO Bar #28522
                                                     Assistant United States Attorney
                                                     Charles Evans Whittaker Courthouse
                                                     400 East Ninth Street, Room 5510
                                                     Kansas City, MO  64106
                                                     Telephone:  (816) 426-3130
                                                     E-mail:  charles.thomas@usdoj.gov

                                                     Attorneys for Plaintiff
                                                     FEDERAL TRADE COMMISSION

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 27, 2014, a true and correct copy of the foregoing was filed electronically with the United States District Court for the Western District of Missouri using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system.

                                        */s/ Helen Wong*
                                        Attorney for Plaintiff Federal Trade Commission