IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14-CV-0815-W-BCW |
| | ) | |
| BF LABS INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY SUGGESTIONS IN SUPPORT OF DEFENDANTS BF LABS INC.,
SONNY VLEISIDES, AND DARLA JO DRAKE'S COUNSEL'S
APPLICATION FOR APPROVAL OF PAYMENT OF PROFESSIONAL
FEES AND EXPENSES INCURRED BEFORE RECEIVERSHIP**

Plaintiff Federal Trade Commission takes no issue with the reasonableness of Polsinelli PC's requested fees and expenses. The FTC also does not object to Polsinelli "ultimately being compensated for the legal services it has provided Defendants." (Doc. # 112). In fact, the FTC's only basis for objection is that compensating Polsinelli now would utilize frozen assets. But allowing the FTC's position to prevail would effectually grant it the unbridled authority to secure, *ex parte* no less, an asset freeze that would deprive the defendants of their ability to secure legal representation. This lawsuit and the FTC's media campaign and *ex parte* representation that Butterfly Labs is bogus, is an instructive example of why access to a lawyer can be absolutely critical. Although Polsinelli has been able to continue its representation at least for now, other defendants in other contexts may not be so fortunate.

Remarkably even today, the FTC told the Court that Butterfly Labs has "deceived[,]" "defrauded[,]" and "victimized" consumers. (Doc. # 112, at pp. 1, 3). Denying Polsinelli's fee application on the mere basis of the FTC's unproven allegations would set a dangerous precedent. *See, e.g., Federal Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 565 (5th Cir. 1987)

(Court finding that it "cannot assume the wrongdoing before judgment."); *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996) ("under the Due Process Clause, a [defendant] may not be punished prior to an adjudication of guilt"). It would also be inconsistent with the Court-approved Temporary Receiver's interim budget, which involves further operations and manufacturing efforts. Rather than support the FTC's allegations, the budget[1] required the Temporary Receiver to determine in good faith that Butterfly Labs could be "lawfully operated." (*See* Doc. # 54 at p. 15, Section X.N.). Regardless, Defendants should be provided an opportunity to be heard on the merits before being effectively deprived of access to legal counsel. *See Dixon*, 835 F.2d at 865 ("[t]he basis of our adversary system is threatened when one party gains control of the other party's defense as appears to have happened here.").

In presently seeking only fees and expenses incurred before this action was instituted, Polsinelli is attempting to take a reasonable approach to compensation and continued legal representation. Certainly Polsinelli could have sought the entire amount of fees and expenses due and owing, and under legal precedent would have been warranted in doing so. *See, e.g., FTC v. QT, Inc.*, 467 F. Supp. 2d 863, 866 (N.D. Ill. 2006) (Courts have consistently recognized that the decision to permit attorneys' fees to be paid from receivership assets in an asset-freeze is well within the court's discretion); *FTC v. World Travel Vacation Brokers, Inc.,* 861 F.2d 1020, 1022 (7th Cir.1988) (the Court modified the temporary restraining order before the preliminary

---

[1] Defendants BF Labs, Vleisides, and Drake have previously addressed concerns about the FTC's *ex parte* approach in a sealed filing. (*See* Doc. # 98, p. 2, n.1 (filed under seal)). Defendants will not address those concerns here but, suffice it to say, the entire basis for the frozen assets relied on by the FTC to support its opposition to the payment of Polsinelli's fees is subject to criticism and should be subjected to further judicial scrutiny. While not necessarily dispositive, this is one additional factor the Court should consider in evaluating the FTC's attempt to deny Polsinelli the requested portion of its fees and expenses.

injunction hearing to allow $125,000 of frozen assets to pay for attorneys' fees and $50,000 for litigation expenses). Polsinelli has not done so.

Ironically, the FTC points out that Butterfly Labs has admitted to at least $4 million in refunds requested but not yet paid, (Doc. # 112, p. 3)[2], yet did not mention that Butterfly Labs instituted that very refund policy for customers and had already provided more than $11 million in refunds. The FTC's *ex parte* actions have in fact halted refunds sought by some consumers and have deprived scores of other consumers of equipment and services ordered. And the FTC has opposed further manufacturing without attempting to gauge potential consumer demand for Butterfly Labs products, thus causing consumers who still want Butterfly Labs products to have to continue to wait.

Finally, the FTC claims that, "[s]hould [it] prevail," (Doc. #112, p. 3), refunds could exceed $54 million. (*Id*.).[3] But that figure assumes that virtually every customer who has ever purchased Butterfly Labs equipment – including those who received timely delivery of equipment, and even others who did not but who were satisfied by the product once received – should receive a refund. Surely that cannot be the result. In order to refund approximately the

---

[2] A number of the amounts identified in the FTC's Suggestions in Opposition were part of the interim budget process submitted to the Court under seal. To Defendants' knowledge, those amounts were intended to be kept under seal, but have now been released in a public filing. This case unfortunately involves another instance of FTC disclosure involving Josh Zerlan of Butterfly Labs. Mr. Zerlan has been the subject of death threats, and the FTC disclosed his social security number and other personal information, which has been further disseminated in internet forums.

[3] The Court should note that this representation in its Opposition relies on the FTC's own *ex parte* TRO papers, which also represented to the Court that Butterfly Labs induced consumers to part with the $50 million through the sale of bogus equipment. Evidence of repeat customer purchase statistics and customer demand for Butterfly Labs products is noticeably absent from the FTC's papers. And on the same page of the same Opposition filing, the FTC represents that Butterfly Labs has sold two generations of miners. In fact, Butterfly Labs has sold four.

entire amount paid by consumers to Butterfly Labs, the Court would have to rescind or unwind every sale as if procured through fraud. *See Feeney v. AT&E*, 472 F.3d 560, 564 (8th Cir. 2006) (holding rescission is an appropriate equitable remedy when it restores the status quo by returning the parties to the positions they occupied before the contract and the party seeking rescission must return to the other party the substance of any consideration received); *see also* 17B C.J.S. Contracts § 651 ("rescission generally requires restoration of the parties to the status quo as it existed prior to the execution of the contract. The party seeking rescission is required to return or restore the opposing party to the position he or she occupied prior to entering into the contract…).

If the FTC is still relying on this assertion, it does so at its own peril. The facts are that the customer complaints relied on by the FTC overwhelmingly involve delayed delivery, not that the products did not perform as advertised. In fact, it is anticipated that the evidence will bear out that completed sales involve less than a 2% return rate. The FTC should not be permitted to rely on unprovable scenarios to attempt to deprive Defendants of access to legal representation.[4]

---

[4] Regarding amounts ultimately available for consumer redress, Polsinelli successfully defeated a plaintiff's effort at a default judgment in excess of $5,000,000 involving a sale of two miners totaling approximately $63,000. *See Meissner v. BF Labs Inc.*, No. 13-CV-2617-RDR-KGS (Doc. Nos. 5-13). Had Polsinelli not been successful in defeating the default judgment, the $10 million frozen funds amount would have been reduced by 50%.

4

Respectfully submitted,

/s/ James M. Humphrey
| | |
|---|---|
| James M. Humphrey | MO # 50200 |
| Michael S. Foster | MO # 61205 |
| Miriam E. Bailey | MO # 60366 |

Polsinelli PC
900 W. 48th Place, Suite 900
Kansas City, Missouri 64112-1895
Telephone: (816) 753-1000
Facsimile: (816) 753-1536
jhumphrey@polsinelli.com
mfoster@polsinelli.com
mbailey@polsinelli.com

Attorneys for Defendants BF Labs Inc.,
Sonny Vleisides, and Darla Drake.

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 27, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

    Helen Wong
    Teresa N. Kosmidis
    Leah Frazier
    Gregory Ashe
    Federal Trade Commission
    600 Pennsylvania Ave., N.W.
    Mail Stop CC-10232
    Washington DC  20580
    hwong@ftc.gov
    tkosmidis@ftc.gov
    lfrazier@ftc.gov
    gashe@ftc.gov

    Charles M. Thomas
    Assistant United States Attorney
    Charles Evans Whittaker Courthouse
    400 East Ninth Street, Room 5510
    Kansas City, MO  64106
    charles.thomas@usdoj.gov

    Attorneys for Plaintiff

    Bryant T. Lamer
    Kersten L. Holzhueter
    Andrea M. Chase
    Katie Jo Wheeler
    Lucinda Luetkemeyer
    Spencer Fane Britt & Browne LLP
    1000 Walnut Street, Suite 1400
    Kansas City MO  64106
    blamer@spencerfane.com
    kholzheuter@spencerfane.com
    achase@spencerfane.com
    kwheeler@spencerfane.com
    lluetkemeyer@spencerfane.com

    Attorneys for Receiver Eric L. Johnson

James D. Griffin
Lisa M. Bolliger
SCHARNHORST AST KENNARD GRIFFIN, PC
1100 Walnut, Suite 1950
Kansas City, Missouri 64106
Tel: (816) 268-9400
Fax: (816) 268-9409
jgriffin@sakg.com
lbolliger@sakg.com

Attorneys for Defendant Nasser Ghoseiri


  /s/ James M. Humphrey
Attorney for Defendants

8