IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

FEDERAL TRADE COMMISSION, )
)
Plaintiff, ) No.  14-CV-00815-BCW
) April October 12, 2014
v. ) Kansas City, Missouri
) CIVIL
BF LABS, INC., et al., )
)
Defendant. )


TRANSCRIPT OF TELEPHONE CONFERENCE
BEFORE THE HONORABLE BRIAN C. WIMES
UNITED STATES DISTRICT JUDGE

Proceedings recorded by electronic voice writing
Transcript produced by computer

APPEARANCES

For Plaintiff:       MS. HELEN WONG
                     MS. LEAH FRAZIER
                     MS. TERESA KOSMIDIS
                     MR. GREG ASHE
                     MR. CHARLES THOMAS
                     Federal Trade Commission
                     600 Pennsylvania Avenue, NW
                     Mail Stop CC-10232
                     Washington, DC  20580

For Defendants:      MR. JAMES HUMPHREY
                     MR. MICHAEL FOSTER
                     Polsinelli PC - KCMO
                     900 W. 48th Place
                     Kansas City, Missouri  64112

                     MR. BRADEN M. PERRY
                     Kennyhertz Perry LLC
                     7301 Mission Road, Ste. 107
                     Prairie Village, Kansas  66208

Denise Catherine Halasey CCR #1257
US Court Reporter for The Honorable Brian C. Wimes

```
 1                        APPEARANCES

 2                        (continued)

 3   For the Defendant, Ghoseiri:  MS. LISA BOLLIGER
                                   Scharnhorst Ast Kennard Griffin
 4                                 1100 Walnut Street - Suite 1950
                                   Kansas City, Missouri  64106
 5

 6

 7   For the Receiver:             MR. ERIC JOHNSON (present)
                                   MR. BRYANT LAMER (present)
 8                                 Spencer, Fane, Britt & Browne
                                   1000 Walnut Street, Ste 1400
 9                                 Kansas City, Missouri  64106

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
                                    2
```

1

2     (Proceedings began at 12:27 PM)

3          THE COURT:  Hello, counsel.  My understanding and I

4     know we went through, we have quite a few attorneys on.  I

5     will ask though when one of you get ready to speak, if you

6     could just identify yourself for the record so we can keep it

7     clear.  I know certainly probably Mr. Humphrey and Ms. Wong

8     will probably talk on behalf of BF Labs, FTC, or if others,

9     just let the Court know.

10          Let me start off with this, I think the first topic

11    for discussion, there are a few things I have would be the

12    receiver's motion to approve budget, the interim budget that

13    reflects the essential employees in critical operations.  The

14    Court has received the objections.  I certainly understand BF

15    Labs position.

16          I think also, Ms. Wong, that you had submitted or at

17    least the FTC had submitted their objections maybe prior to

18    the letter, which I know you both have or I believe all

19    parties should have, the letter to you all that maybe was

20    addressing some of your concerns.

21          So let me start with the FTC.  You have stated or at

22    least you filed a motion of objections, and then have you had

23    the opportunity to review the letter that was sent to you by

24    the receiver?

25          MS. WONG:  Yes, we have, Your Honor.

```
 1              THE COURT:  Okay.

 2              MS. WONG:  And I want to start off by thanking the

 3    receiver's efforts in putting forth such a detailed letter and

 4    taking so many of our concerns into consideration.  However,

 5    we still have a few objections that we would like to raise

 6    with this Court.

 7              THE COURT:  Sure.

 8              MS. WONG:  Your Honor, again, I want to commend the

 9    receiver's efforts, but the FTC's main concern in the large

10    amount of money that is budgeted for only 50 days.  We are

11    concerned that if $1.1 million dollars is used for a five week

12    period, then there is not enough money to set aside for a

13    refund liability.  I understand we are not discussing the

14    merits of this case, therefore, temporarily setting aside the

15    FTC's contention that we believe refund liabilities is in the

16    tens of millions, the defendant's themselves admitted in a

17    preliminary report that there is at least $4 million dollars

18    in customer refunds that have been requested, but not yet

19    provided.  If $1.1 million is needed to operate for just over

20    a month, and this budget does not include additional funds

21    that will be needed to compensate the receiver for his

22    excellent work and any other money that we might stipulate to

23    or discuss for attorney's fees, our contention is there is no

24    way this operation can continue and still have any money left

25    to refund consumers.
```
4

Case 4:14-cv-00815-BCW   Document 118   Filed 10/28/14   Page 4 of 23

1    THE COURT:  Well, let me ask you one second, Ms.

2   Wong, and, you know, correct if I'm wrong.  If what you said

3   there is $4 million out there at least request for a refund,

4   and I know there is expenses that will be associated with

5   this.  I thought that the different bitcoins close to $10

6   million dollars.  Am I right or wrong?

7        MS. WONG:  I am unsure about the correct exchange

8   rate, but, yes, probably in that ballpark.

9        THE COURT:  Okay.  Yeah, in that ballpark figure.

10  So and I understand what you're saying over arching.  I just

11  wanted to make that clear.  Go ahead, I'll let you finish.

12       MS. WONG:  Okay.  And also as the receiver noted in

13  his first report all this money that we are using is consumer

14  money that was taken from a preorder, some preorders under a

15  purported old business model, a business model that resulted

16  in numerous lawsuits and the current action that we are in.

17       Your Honor, we are just seeking a more measured

18  approached rather than a budget that will ramp up full scale

19  operations before a viable business plan is even presented.

20  For example, in the receiver's first report, he stated that

21  Butterfly Lab employed about 30 to 40 employees.  This current

22  budget will require a ramp up of even previous operations.

23  Your Honor, we are not trying to shut the company down, and we

24  understand that a budget is needed so that they can operate

25  during this interim period.  However, a ceiling of over $1

5

million for such a short period when we still do not understand a refund liability of whether or not this company can even operate without a business plan that does not require misrepresentation for preorders does not fully take into account the concerns for consumer refunds.

Your Honor, as the receivers themselves noted, defendants prior business plan was at best, and our contention is that it was much worse required interest-free loan from consumers. Every dollar we use now is money that was taken from consumers, and money that may not return to consumer.

The interim period is supposed to be of limited scope so we can determine the extent of refund liability, and whether a viable business plan can be made that doesn't use this old preorder model.

We are not against the receiver, and we understand his efforts to remain neutral, and we are only asking the Court to limit the budget and trim unnecessary expenses for this very short period.

THE COURT: Right. Do you -- and I know in part of your motion you said these line items things. Do you have a suggestion or something to the Court what exactly you're referring to?

MS. WONG: Sure. So a good point to start we think would be to trim the budget in terms of the number of employees that are required, and the amount of money that is

6

used to create the 1,500 new Monarch, which is their second

generation of bitcoin mining. We think to put this money in

the budget right now is premature. We think first we need to

figure out a fair way to determine if there is in fact

consumer demand for these products. These machines that they

were operating and advertising and were supposed to be

delivered in December of 2013, would have mined 8.6 bitcoins

in 30 days. However, as defendants have conceded, because the

coin mining gets harder over time, using a possibility

calculator, the same machine will now generate only .25

bitcoins in 30 days.

       Our position is that we needed, we need an equitable

way to figure out what consumers want, and after we figure

that out, then we ramp up operations. And to the extent that

more money is needed, I can guarantee that every member of the

team will be available to stipulate to additional money. We

just think right now the ceiling is too high when there is so

much uncertainty.

       THE COURT: Well, isn't there always a bit of

uncertainty to some extent?

       MS. WONG: Yes.

       THE COURT: I mean, like me, you couldn't -- when we

are talking about the fluctuating markets. What bitcoins, $9

million, $11 million, ball figure. Won't we always be in a

ball figure?

7

```
 1              MS. WONG:  Yes.

 2              THE COURT:  I mean, can we really -- and secondly --

 3    now, and this kind of leads me to another point that we will

 4    talk about a little more later.  You know, we're talking about

 5    these days, and I understand, but you guys got to be ready to

 6    go for the 24th for the preliminary hearing.  And we'll have

 7    the business plan before this Court, but we still have that

 8    aspect of it.  This is not -- and I understand what you're

 9    saying for this limited time period we are looking at this.

10    Or at least what you believe.  And I certainly understand what

11    your position is with respect to that.  But my balance, I

12    believe, my balance as the Court I have to balance if you're

13    wrong.  If at some point down the road the Court finds that

14    you are wrong, and you shouldn't be granted this.  You know,

15    that's my balance, would you disagree that is kind of where me

16    and the receiver are between?

17              MS. WONG:  I do not disagree, Your Honor.

18              THE COURT:  Okay.  And I understand what you're

19    saying.  I do.  And I'm just trying to balance this out.

20              Why don't we do this, let me hear from I believe Mr.

21    Humphrey.  Are you going to talk on behalf of -- or at least

22    what you object to.  And I think I understand what you're

23    saying, but I'll let you make your record.

24              MR. HUMPHREY:  Okay.  Sure, Your Honor.  I

25    appreciate that.  And yes, I'll be speaking.  And so
```

8

1    essentially the core of it is, Your Honor, that we do approve

2    of the interim budget and the efforts that went into it need

3    to be acknowledge.  I do want to make the record, Your Honor,

4    and I appreciate the opportunity.  That ultimately we believe

5    that the receiver should not be in place, that this action

6    should not have been brought as an ex parte proceeding.  And

7    Ms. Wong has stated that she's not trying to shut the company

8    down, but that is exactly what the FTC has done in this

9    action.  So we object overall to the structure of the lawsuit,

10   the approach that the FTC has taken, and where we are at

11   today.

12          Having said that, we submitted a proposed budget.

13   And failing release in the form of relieving the receiver of

14   his duty, which we do not expect this Court should do at this

15   present time, we would argue that the Court should adopt the

16   budget that was presented by defendants, Butterfly Lab,

17   Vleisides, and Drake.

18          And assuming that the Court is not inclined to do

19   that, again, we come back to the interim budget.  And to that

20   I say, again, we approve of it, the effort that went into it.

21   There is one aspect that was pointed out in our briefing.

22          THE COURT:  Right.

23          MR. HUMPHREY:  And I don't want to make a bigger

24   deal of that than it is.  But I will say, you know, that there

25   is an overall amount due that is close to the neighborhood of

                                  9

1   $300,000.  What we're really trying to do is find some

        2   compromise, and where I'm struggling with, Your Honor -- now,

        3   as to the receiver, there is an amount allocated.  But

        4   ultimately, we're having trouble on our end understanding why

        5   the amount that was billed before the receivership went in to

        6   place.  So we're looking at September 19th, why that would

        7   have been paid out under this budget and approach.  But,

        8   again, I don't want to retract from the core issues, Your

        9   Honor.  We would really like to get back into operation.  And

       10   the focus is as you will see in the receiver's letter to the

       11   FTC, what we would really like to do is get these 41 employees

       12   back to receiving a paycheck, and not idled on the sidelines

       13   and the company not be put out of business.  And that is our

       14   focus right now.  Thank you, Your Honor.

       15          THE COURT:  Okay.  Thank you.  Let me ask you

       16   Mr. Humphrey, what was that date?  And this may have to be

       17   addressed separate and apart from the interim budget, but the

       18   date, was it September 19th?

       19          MR. HUMPHREY:  Your Honor, if I am correct, I

       20   believe September 19th was the date that the temporary

       21   receiver appeared on the premises.

       22          THE COURT:  Right.  Okay.  Ms. Wong, let me do this

       23   before the Court moves on.  Do you have any final comments you

       24   want to make before I move on to a couple other issues?

       25          MS. WONG:  Yes, Your Honor.  Just one final point.
                                      10

```
 1              THE COURT:  Okay.

 2              MS. WONG:  We think the issue is whether the company

 3    will be unable to operate after the interim period if expenses

 4    are not approved.  So to your point where if the FTC does not

 5    prevail, the company still needs to operate.  And we just

 6    believe that the budget could be trimmed and still allow for

 7    the company to operate during this period.

 8              THE COURT:  Okay.  Yeah.  And I see what you're

 9    saying.  I appreciate it.  And that's how I understood it, but

10    maybe I didn't articulate it quite as well.  You know, the

11    Court does believe that is your position whether I -- that you

12    believe it could be trimmed, and still operate if the FTC is

13    not successful.  So thank you.

14              Now, let's take up -- someone just brought up a

15    point, my law clerk.  I know the motions were filed to have

16    this filed under seal.  And the Court is inclined to grant

17    said motions as it relates to the budget, and I think also the

18    letter; is that correct?

19              MR. HUMPHREY:  That's correct.

20              THE COURT:  And so I don't know if you all have any

21    comment about that.  But it is the Court's intent to grant the

22    motions that these be filed under seal.

23              MR. HUMPHREY:  Your Honor, for defendant Butterfly

24    Labs, Vleisides, and Drake, we wholeheartedly agree.

25              THE COURT:  Okay.
```
                                  11

MS. WONG:  For the FTC that is also fine with us,
Your Honor.
          THE COURT:  And here's where -- I've had this
conversation with other parties on other matters.  There's
always this issue that the Court finds itself in where -- and
I get it.  You know, folks are filing motions to leave to add
excess pages or to do one thing or the other.  But the problem
the Court has is they're doing it the day of or the day before
you're asked whether that motion is due.  And what it does --
then what parties will do is still file without the Court
ruling on that.  And it just puts me in a position where I
don't even know what to say.  I have called parties because I
don't know what you all want me to do other than deny it.  How
would you handle it?  How do you expect me to handle these
situations?  In this particular, the FTC done it early, and I
think the defendants have done it late.  I'm just not -- I am
perplexed at that.  When we file something out of time and
then we do what we are asking the Court to allow you to do,
and then I don't know what to do.  So some guidance would be
helpful.  I mean, I denied it obviously, but is there any
suggestion on how you want me to handle this in the future,
either side?
          MS. WONG:  Your Honor, I apologize.  I know that
our -- we did it with the response to -- in support of our PI
and that was under a time crunch of the 10 days that we have

                              12

1   to respond. But I think your suggestion in your order is

2   perfectly clear. We will do it at least three days before if

3   we need additional pages so that the Court has a chance to

4   review, and I apologize.

5          THE COURT: And I appreciate it. I wasn't looking

6   for an apology, but it does put me in a bind. I just don't

7   know what you all expect me to do. Here's is my point too, do

8   it three days. If you can't do it within three, call the

9   Court and get me on the phone. That's all I ask. In the end,

10   that's all I ask. And I understand circumstances happen. We

11   are all on time crunches. I understand that. But when we

12   just file it kind of sua sponte, on your own, without the

13   Court, and it's late. I just don't know what to do other than

14   deny it and get you guys on the phone.

15          With that said, Mr. Humphrey, now, we have something

16   that you filed that is denied. And I don't know what the

17   position of the FTC. How would you like me to handle that?

18   Because I don't necessarily want to preclude you all from

19   filing your motion to dismiss, but how would you suggest I

20   proceed from here?

21          MR. HUMPHREY: Your Honor, I would say, again, let

22   me start off by pointing out we will comply with your order.

23   And I think we are probably more enamored with our legal

24   approach than you are, but we'll do that. I do believe that

25   as to the motion to dismiss we are timely as to the filing

13

```
 1   itself.

 2           THE COURT:  Yes, yes, you are.

 3           MR. HUMPHREY:  And we can do one of two things.  We

 4   can either, we can cut it down.  In fact, we have done that.

 5   We have taken steps to try and bring it within the page limit.

 6   And then file an amended motion to dismiss and suggestions in

 7   to court.  We can ask for a modest page increase.  But I would

 8   certainly would want to try and accommodate the Court on that

 9   and get it within the page limitations that exists under the

10   local rule.  Then I would say, you know, arguably, under the

11   standing order, the brief, the opposition is asked to, but I

12   am certainly not one to hold -- given the outcome of this, I

13   would think a reasonable amount of time for the FTC to get

14   their brief on file assuming they would have been working on

15   it and it would have been filed last Friday, I would think it

16   allowed for them to get there opposition on file and still

17   have the clock ticking would be an acceptable approach

18   hopefully from them and from our perspective.

19           THE COURT:  Okay.  Ms. Wong, any thoughts?

20           MS. WONG:  No, Your Honor, that approach is fine

21   with us with the clock continuing to tick.  I understand that

22   some oppositions and motions to dismiss is due on the 27th,

23   and that is fine with us.

24           And Your Honor, just one further question.  In

25   regards to our reply in support of the PI, how would you like
```

14

```
 1  us to do that?  Would you like us to refile it?
 2              THE COURT:  I'm sorry.  Say that again.  I lost your
 3  temporarily.
 4              MS. WONG:  So our reply in support of the PI, that
 5  was also over the page limit.  We have shortened to ensure
 6  that it complies with the local rule.  Would you like us to
 7  refile it with the exhibits?
 8              THE COURT:  Oh, within the local rule?
 9              MS. WONG:  Yes.  I think it is 10 pages now.  Before
10  it was 14 pages.
11              THE COURT:  What would you like me to do?
12              MS. WONG:  Whatever would be easiest for you.
13              THE COURT:  That doesn't answer my question.
14              MS. WONG:  I would like you to accept the previous
15  motion.
16              THE COURT:  Okay.  Why don't we do this.  And I'm
17  not trying to be cutesy with this, but I do want, you know,
18  feel free to call me.  Get me on the phone and that will get
19  me an understanding and we will just get new dates.  I really
20  mean this.  I understand how things go.
21              Now, let me start with Mr. Humphrey.  With your
22  motion, you asked for what?  Five additional pages?  Is that
23  correct?
24              MR. HUMPHREY:  That's correct, Your Honor.
25              THE COURT:  Have you trimmed it down?  Five or
                                  15
```

seven?  Seven would be two additional pages.?

MR. HUMPHREY:  If you would be gracious to allow me two additional pages.

THE COURT:  Okay.  Why don't we do that.  And when do you plan on filing that?  You may have said that in your conversation with the Court.

MR. HUMPHREY:  No.  Your Honor, we are ready to file that today.  We will make sure that we get it on file.  We will plan on, if it's acceptable to the Court, we would like to file that as an amended motion and suggestion that would certainly be deemed as filed as of the date of the regional filing, if that is acceptable?

THE COURT:  Yeah, that's fine.  Yeah, that's fine. And then that would give Ms. Wong until?

MS. WONG:  The 27th, I believe.

MR. HUMPHREY:  Your Honor, I think that is a little -- I think maybe we can seek guidance and maybe the receiver would be willing to speak to this?  Our reading of the standing order established the seven calendar days for an opposition.  I didn't see in that standing order an exception for motion to dismiss.  And I'm not trying to be difficult, I'm certainly willing to work within that time frame.

THE COURT:  I think within the standing order, that deals with the administrative aspects of this case.

MS. WONG:  That's our understanding as well, Your

16

Honor.

THE COURT: That's how I see it. It is very clear to me. Administratively within the order, that's what it applies to. Otherwise the standard time limits would apply.

MR. HUMPHREY: Okay. With that understanding, Your Honor, we are happy to work under that time frame.

THE COURT: And let me ask you, and refresh me again, Ms. Wong, I'm changing subjects. So that would give Ms. Wong until the 27th?

MS. WONG: Correct.

THE COURT: Is that right?

MS. WONG: That was our understanding as well.

THE COURT: My calculation though, Ms. Wong, oh, if I deemed it filed last week. Okay. That's what is going on. Do you think you can get it filed by the 27th?

MS. WONG: Yes, Your Honor.

THE COURT: Now, with respect to your motion, I think you asked for how many additional pages?

MS. WONG: I believe it's four, Your Honor.

THE COURT: I think with respect to that in fairness, we get that down to two over.

MS. WONG: Two over?

THE COURT: Yes.

MS. WONG: Okay.

THE COURT: And then again, I don't want to beat a

17

1    dead horse, but I am.  Just ask me next time.  Just call me

 2    up.  Trust me, I'll be good about that.

 3              Now, the last question, how are we doing just over

 4    all in terms of the process, discovery, getting this thing

 5    maybe teed up for November 24th it looks like?

 6              MR. HUMPHREY:  Well, Your Honor, this is

 7    Mr. Humphrey.

 8              THE COURT:  Uh-huh.

 9              MR. HUMPHREY:  From our perspective we are eager.

10              THE COURT:  Okay.

11              MR. HUMPHREY:  We are going to do the best we can

12    through the interim period.

13              THE COURT:  Sure.

14              MR. HUMPHREY:  And we are eager to present our

15    evidence to the Court on the 24th and argue strenuously that

16    there is not basis in law for an injunction.

17              THE COURT:  Okay.

18              MR. HUMPHREY:  And that is our belief.  We are ready

19    to get back in business, Your Honor.

20              THE COURT:  Sure.  Okay.  Ms. Wong, same thing?

21              MS. WONG:  Yes, Your Honor.

22              THE COURT:  Okay.  I'll just leave it at that for

23    now.  And what do we anticipate in terms of that?  One day,

24    two day, what do you anticipate?

25              MR. HUMPHREY:  Well, if I'm not mistaken, again,

                                  18

```
 1   this is Mr. Humphrey.  If I'm not mistaken I believe the FTC
 2   is relying on their moving papers.
 3           THE COURT:  Right.
 4           MR. HUMPHREY:  And if that's the case then it would
 5   be on us to determine how much we are going to burden the
 6   Court with evidence, but I was hopeful that we could present
 7   our case in a half of day.
 8           THE COURT:  Okay.
 9           MR. HUMPHREY:  I would certainly hope that that
10   would be the situation.  If possible, I would like to at least
11   reserve the possibility of a day.
12           THE COURT:  Right.
13           MR. HUMPHREY:  But again, we would try to stream
14   line and make it a half of day.
15           THE COURT:  Sounds good.
16           MS. WONG:  Your Honor, we will be presenting
17   additional evidence as well.
18           THE COURT:  Okay.
19           MS. WONG:  Right now, we don't anticipate more than
20   half a day, like around three hours.  But to the extent that
21   changes, we will be sure to alert the Court.
22           THE COURT:  And that's fine.  I'm just trying to get
23   a forecast of where we will be down the road as we move
24   outside of this receivership and more on to the litigation and
25   getting this presented to the Court.
```

19

```
 1              Is there anything else you all have?  And again, you
 2    guys can always get me on the phone, not necessarily with the
 3    receivership, but other aspects with this litigation.  If
 4    there are issues that come up I always like to address them
 5    sooner than later by getting me on the phone.
 6              Is there anything else you would like to address
 7    with the Court?
 8              MR. HUMPHREY:  Your Honor, Mr. Humphrey.  I don't
 9    mean to prolong this.
10              THE COURT:  No problem.
11              MR. HUMPHREY:  We would really appreciate the
12    opportunity to at least present our fees through a separate
13    submission.  And we are willing to even look at that from the
14    perspective of the amount due before the receivership was
15    instituted.  And I understand from the temporary receiver that
16    that would be something that they would require a separate
17    submission.  We would be inclined to file that as soon as
18    possible, hopefully tomorrow.  And would hope that the Court
19    would be willing to consider that issue and the briefing of it
20    on an expedited basis so that we can entertain the possibility
21    of getting our fees paid.
22              THE COURT:  I think that is fair.  And the Court
23    would be willing to look at that and address that.
24              MR. HUMPHREY:  Thank you, Your Honor.
25              THE COURT:  Well, with that said, on an expedited
                                   20
```

basis, I think that begs the question that maybe we should get
some dates now. You know what I mean?

MR. HUMPHREY: I do, I absolutely do. I'll tell
you, this is not your problem, Your Honor. We are facing a
fiscal year end of October 31st. This is a pretty narrow
issue. I would hope that if it possible we would file our
brief tomorrow and potentially give the other parties three
days, three business days, and we would probably forego a
reply or at least one day for a reply. We would make that as
short as possible.

THE COURT: Ms. Wong?

MS. WONG: Your Honor, we would probably require at
least five days. We don't know the amount of fees that Mr.
Humphrey is seeking and we will need some extra time to review
everything.

THE COURT: Well, I think that's fair. Where does
that put us at? It puts us at the 27th. So that Friday --
I'll tell you that the Court is willing to look at this issue
in an expeditious way, but I do think it is fair to give the
FTC at least five days. And another thing I forgot, I am in
trial next week which kind of adds to it. I'm sure Holly will
be working on this, but my attention will be somewhat
diverted. I can do my best to get to it and maybe have a
decision. I hate to write checks I can't cash necessarily,
but it will have our attention, we can expedite the briefing.

Denise C. Halasey, CCR #1257
Certified Court Reporter

```
 1   I am in trial which is supposed to carry me throughout the
 2   week.  There's a potential it can finish earlier, but it will
 3   have our attention somewhat diverted.  It's difficult at trial
 4   as you probably understandable when we are on the bench or
 5   off, we typically have fifteen minutes, thirty minutes for
 6   lunch and then we are back on.
 7          Why don't we stick to that filing schedule.  Did you
 8   want that day for a reply?
 9          MR. HUMPHREY:  You know what?  We'll file, if they
10   can file by 5:00, we would be willing to file our reply that
11   same day on the 27th.
12          THE COURT:  Okay.
13          MS. WONG:  5:00 should be fine.
14          THE COURT:  Okay.  That's fine.  And at some point
15   I'll have some one get to the parties and let you know where
16   I'm at on it.
17          MR. HUMPHREY:  We appreciate that, Your Honor.
18          THE COURT:  And we'll let you know one way or the
19   other.  I'll do everything I can.  And things settle, you
20   never know.
21          MR. PERRY:  Your Honor?
22          THE COURT:  Yes.
23          MR. PERRY:  This is Braden Perry.  I have the same
24   issue with legal fees prior to the action.  I plan to
25   piggy-back on the same schedule.  I assume that will be okay?
```

22

```
 1              THE COURT:  Yes.  You are assuming correctly.

 2              MR. PERRY:  Thank you.

 3              THE COURT:  Yes.  Anything else?

 4              MR. HUMPHREY:  Not from the defendants, Your Honor.

 5              THE COURT:  Okay.

 6              MS. WONG:  Not on our end.

 7              THE COURT:  Okay.  Thank you all for getting on.

 8   We've covered some ground.  I've considered the motions filed

 9   with respect to the budget which is our primary purpose and I

10   will get an order out with respect to that.

11              MR. HUMPHREY:  Thank you, Your Honor.

12              MS. WONG:  Thank you, Your Honor.

13   (THEREUPON, the following proceedings were adjourned.)

14

15                        CERTIFICATE

16         I certify that the foregoing is a correct transcript

17   from the record of the proceedings in the above-entitled

18   matter.

19

20         October 24, 2014

21                              /s/ Denise C. Halasey
                                Denise C. Halasey, CCR
22                              U.S. Court Reporter

23

24

25
                                 23
```