```
 1            IN THE UNITED STATES DISTRICT COURT
                 WESTERN DISTRICT OF MISSOURI
 2                      WESTERN DIVISION

 3   FEDERAL TRADE COMMISSION,          )

 4                      Plaintiff,      )Case No.

 5           vs.                        )14-CV-00815-BCW

 6   BF LABS, INC., et al.,             )

 7                      Defendants.     )

 8


 9       TRANSCRIPT OF PRELIMINARY INJUNCTION HEARING

10


11            On Monday, September 29, 2014, the above-entitled

12   cause came on before the Honorable Brian C. Wimes, United

13   States District Judge, sitting in Kansas City, Missouri.

14

15                         APPEARANCES

16   For the Plaintiff:      MS. LEAH FRAZIER
                             MS. HELEN WONG
17                           MS. TERESA N. KOSMIDIS
                             Federal Trade Commission
18                           600 Pennsylvania Avenue, NW
                             Mail Stop CC-10232
19                           Washington, DC 20580

20                           MR. CHARLES M. THOMAS
                             United States Attorney's Office
21                           Western District of Missouri
                             400 East 9th Street, Room 5510
22                           Kansas City, Missouri 64106

23
     For the Defendants:     MR. JAMES M. HUMPHREY
24                           Polsinelli PC - KCMO
                             900 W. 48th Place
25                           Kansas City, Missouri 64112
                                    1
```

```
 1                        APPEARANCES

 2                        (continued)

 3                              MR. BRADEN M. PERRY
                                Kennyhertz Perry LLC
 4                              7301 Mission Road, Ste. 107
                                Prairie Village, Kansas 66208
 5
     For the Intervenor:        MR. NOAH K. WOOD
 6                              MR. ARISTOTLE N. RODOPOULOS
                                Wood Law Firm LLC
 7                              1100 Main Street, Ste. 1800
                                Kansas City, Missouri 64105
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
                                 2
```

MONDAY, SEPTEMBER 29, 2014

THE COURT: Morning. Let the court call the case. This is Federal Trade Commission, Plaintiff v. BF Labs, Inc. et al., Defendants, Case No. 14-CV-00815.

Could I have parties enter their appearance for the record?

MS. WONG: Your Honor, on behalf of the Federal Trade Commission, we have Helen Wong, Teresa Kosmidis, Leah Frazier, and Charles Thomas for the U.S. Attorney's Office.

THE COURT: Good morning.

MR. HUMPHREY: Good morning, Your Honor. James Humphrey, Braden Perry on behalf of defendants BF Labs, Butterfly Labs, individual defendants Jody Drake and Sonny Vleisides. Here with me at the table is Bruce Bonne.

THE COURT: Thank you.

Good morning.

MR. PERRY: Good morning.

THE COURT: Why don't we start with the first order of business. Filed this weekend, and I'm going to assume the parties have received and I'm not sure, emergency motion to intervene. Let me ask are the parties here on that matter?

MR. WOOD: Yes, we are, Your Honor. I'm Noah Wood. This is my associate Ari Rodopoulos. We are here on behalf of Kyle Alexander and Dylan Symington, class representatives.

THE COURT: Let me ask the government or the FTC,

3

Ms. Wong, have you received a copy?

MS. WONG: Yes, I have, Your Honor, and we're working on an opposition.

THE COURT: You're working on what?

MS. WONG: An opposition to the motion to intervene.

THE COURT: Your opposition.

What about counsel for the defendant?

MR. HUMPHREY: Your Honor, we have consented to the filing of the motion to intervene, and we've had a chance to read it. And what Mr. Wood is trying to do is let the consumer be heard, and we're in favor of that. We'd like to have the consumers' voice heard in this matter. We're not opposed in any way to him having his ability to have his day in court as well.

THE COURT: Okay. Well, let me tell you where the court is on that that was filed. Let me ask you this first, Mr. Wood, did you want to argue to the court? It would seem to me with the government opposing it at this time, the court has had the opportunity to review it but not thoroughly to be quite honest, that we give the government the opportunity and defense, although I know what your position is with respect to that, to respond and the court can maybe have a hearing.

When do you, Government, when do you think you'll have a response?

MS. WONG: We can have the response as early as

4

1  tomorrow or even today if it will be more helpful.
2          THE COURT: I think tomorrow will be fine. I don't
3  think at this point it's dispositive of what we're doing here
4  today. The court would rather rule sooner than later,
5  Mr. Wood, on that, so I suspect what I will do is to get
6  parties on the line and maybe have a hearing with respect to
7  that motion.
8          How does that sound? Do you have another idea,
9  Mr. Wood?
10         MR. WOOD: Judge, I think that would be fine. I
11 think certainly the government should have an opportunity to
12 take some time to respond. I know they've been very busy.
13 The only thing I would ask of the court, I believe the class
14 members may have an interest in the terms of any preliminary
15 injunction the court might issue today.
16         THE COURT: Right. And that was my -- that was
17 ultimately kind of my question and when I was thinking about
18 this, that it could have an effect on --
19         MR. WOOD: My concern would be that -- I would just
20 ask that if the parties are going to argue the terms of a
21 preliminary injunction, that the class members maybe perhaps
22 without necessarily granting the entire motion to intervene,
23 at least give them an opportunity to be heard as to if there's
24 any terms of a preliminary injunction that people are
25 advocating here today that might affect the class. I think

5

there's only a few small elements of that, but they are very important. I think the class needs to go ahead and address those before the court might enter that injunction and consider it.

   THE COURT: Mr. Humphrey.

   MR. HUMPHREY: Your Honor, so we're clear, Mr. Wood and I understand the dynamic here, if we're successful on this side of the courtroom in convincing you that no preliminary injunction should issue, I believe Mr. Wood's issue is moot.

   MR. WOOD: I think that would be true, Judge, yes.

   THE COURT: Okay. We'll have to see how that plays out. Okay.

   Well, let me tell you this: The second point I'm going to bring up today or the issue before we get started, the government filed a motion to extend the TRO until final ruling on the preliminary injunction.

   Mr. Humphrey, let me --

   MR. HUMPHREY: Your Honor, we did see the motion, and I think it merely extends it till noon if I'm not mistaken.

   THE COURT: I think till 11:59.

   MS. WONG: P.m.

   MR. HUMPHREY: Is it 11:59 p.m.?

   MS. WONG: It's just for the duration of the hearing.

6

1       THE COURT:  Or -- it says "or at such time that the
2    court rules on the preliminary injunction."  There's the "or,"
3    and I'm focusing on the or and not the 11:59.
4       MR. HUMPHREY:  We appreciate that, Your Honor, and
5    we have no objection.  We want to be heard, and after we're
6    heard, we would request that the court --
7       THE COURT:  Okay.  At this time the court will --
8    the temporary restraining order will stay in effect until
9    October the 3rd, 2014, at nine o'clock.  That will be Friday.
10      MR. HUMPHREY:  Well, okay.  Now, I take it, Your
11   Honor, that that's to allow you to consider the matter and
12   rule?
13      THE COURT:  Yeah, correct.
14      MR. HUMPHREY:  Okay, Your Honor.
15      THE COURT:  Listen, let me just be clear so we're
16   all -- yes, it is.  Arguably Rule 65 allows the court until
17   Friday, actually 14 days to be heard, so what I thought that
18   would be an appropriate time for maybe the court to rule.  I
19   can rule before then, but I don't want to extend it nor do I
20   want to make a hasty decision with respect to evidence and
21   argument that I hear today.
22      So arguably under the rule, the court didn't have to
23   have this hearing until Friday at that time, so what I'm doing
24   is extending it only to a time in which the rule allows the
25   court to do.

7

1          MR. HUMPHREY:  We understand.  We want you to
2    consider it and do what you need to do to hear the evidence.
3          THE COURT:  That's why I said October 3rd, 2014, at
4    nine o'clock will be the extension of the TRO.
5          MR. HUMPHREY:  Okay.  Understood, Your Honor.
6          THE COURT:  All right.  Thank you.
7          Now, I have a few questions before we get started.
8    Maybe this will frame how we're going to move forward.
9          Let me ask the FTC this:  What is your goal with
10   asking the court for a preliminary injunction?
11         MS. WONG:  Your Honor, our major goal is to preserve
12   assets for consumer redress.  It is our contention that
13   defendants' business is fraudulent, so any consumer that
14   requests refund, we request that the assets be frozen so that
15   there will be enough money for consumer redress.
16         THE COURT:  Okay.  Let me ask you this:  Is there a
17   way in your mind -- other than this preliminary injunction, is
18   there another way in your mind that we can accomplish this
19   without the constraints of the TRO, the order that is
20   currently in place?  Because really what you're arguing to the
21   court or at least how I understand it, and please correct me
22   if I'm wrong, is that you want them to stop acting what you
23   believe to be unlawfully with the misrepresentations
24   particularly as it relates to deceptive representation about
25   delivery, profitability, and what the machines will do.

1        MS. WONG:  Correct.
2        THE COURT:  That's what the TRO is about?
3        MS. WONG:  Correct.
4        THE COURT:  And you want to stop them from
5   conducting in that manner?
6        MS. WONG:  Correct.
7        THE COURT:  And you -- what you're telling this
8   court is anything short of what this current TRO is, we
9   couldn't accomplish that goal?  What if we can accomplish that
10  goal acting lawfully in a manner that still preserves these
11  things?
12       MS. WONG:  Your Honor, it is our contention that if
13  defendants have another business that does not rely upon those
14  misrepresentations, then we can work something out.
15       THE COURT:  What do you mean "another business"?  I
16  don't understand.
17       MS. WONG:  It's our contention that defendants'
18  entire business model is based on this preorder business where
19  they take consumers' money and use the money themselves, and
20  we can get into that later with the argument.  They use the
21  money themselves to benefit, and then up to one year later
22  they then deliver products that are now outdated and in other
23  instances defective or don't deliver them at all.  And at the
24  end of that -- now they're claiming they're offering refunds,
25  but we think that the harm to consumers have already been

9

done. At best defendants have taken a ten-month interest free loan from consumers and have used that money in the interim. And our preliminary injunction is to stop that practice, first and foremost, and, secondly, to ensure that there is enough assets for consumers that haven't -- that have fallen for this scheme so they can get their money back.

THE COURT: What if we have a plan that suggests -- can accomplish that, a business plan, assets, and what we do is freeze any assets that consumers are owed because my understanding there's some consumers who may still want this; is that correct?

MS. WONG: There are consumers who --

THE COURT: Why can't we figure out a manner in which to reimburse those consumers for any costs out plus also for those machines for those who may still want them and do that and have that kind of reimbursement plan but yet operate a business?

MS. WONG: Your Honor, if -- obviously we have to argue about what that exact refund figure is, but, yes, if there's a plan that can allow us to do that and they're no longer using the preorder model and misrepresenting to consumers what they're doing, if there's a way to do that, that is certainly open.

THE COURT: Thank you, Counsel.

Let me talk about it to the defense. Why is it you

10

Gayle M. Wambolt, CCR No. 462
Registered Merit Reporter

Case 4:14-cv-00815-BCW   Document 121   Filed 10/29/14   Page 10 of 16

1 suggest there should be nothing in place with respect to this
2 TRO?  We have this preorder arguably from the report, and I
3 just want to let all parties know I think the receiver did an
4 excellent job with regard to the report.  I think they did an
5 excellent job, and I'll give you guys an opportunity to
6 comment with respect to that.  I think they're right down --
7 right in the wheelhouse of this court with respect to that.
8 But I'll let you all argue that.
9      Now, Mr. Humphrey, why is it?
10      MR. HUMPHREY:  Well, Your Honor, first let me say
11 that is an amazing team over there.  They've done an amazing
12 job, I agree with you.
13      The point that I draw from this is that what I heard
14 over there is that the goal is to preserve assets for consumer
15 redress, and this amazing team has done that.  And we believe
16 we've helped them do that.  There's no risk of a loss of
17 assets.
18      THE COURT:  That's now.  At the end of the day
19 you're asking the court -- what you're asking the court to do
20 is to not grant the preliminary injunction so that wonderful
21 team in which we've been talking about is no longer there.
22      MR. HUMPHREY:  I understand.  We actually, Your
23 Honor, that is what we would hope for today, that's what we
24 believe the evidence shows, but I will tell you we've come to
25 them with a proposal --

11

```
 1              THE COURT:  You believe the evidence shows what?
 2              MR. HUMPHREY:  I'm sorry?
 3              THE COURT:  You believe the evidence will show what?
 4              MR. HUMPHREY:  That there's no basis for a
 5   preliminary -- the evidence will not support a preliminary
 6   injunction or a TRO.
 7              THE COURT:  Okay.
 8              MR. HUMPHREY:  That's what we believe the evidence
 9   will show.
10              But even if you look past that, we have offered --
11   we've discussed with the receiver a method that would allow
12   them further involvement.  We've voluntarily --
13              THE COURT:  Why don't we do that with the FTC?  Why
14   wouldn't you talk to them about some means in which we can
15   still operate but yet these -- and still have the receivership
16   involved?  Why are we -- why is there a plan or agreement with
17   the receiver?
18              MR. HUMPHREY:  The reason, Your Honor --
19              THE COURT:  They can't settle this with you.
20   They're representing the court.
21              MR. HUMPHREY:  I understand.
22              THE COURT:  I can't get involved in that type.  Why
23   wouldn't you talk to the FTC about a manner in which we can
24   resolve this, one, to allay the fears with respect to those
25   who want reimbursements, those machines.  Why wouldn't we talk
```

1    with the FTC about that?
2                MR. HUMPHREY:  Your Honor, the reason is simple.
3    It's because the FTC has called the company scammers and
4    bogus, and there's nothing to talk about if that's their
5    position.  If it's not their position, if they're willing to
6    talk about a method to help the consumer, we're willing to
7    talk about that.
8                The problem that we have, Your Honor, is that their
9    actions have harmed the consumer.  We were making refunds.  We
10   were shipping product.  We're left to wonder what is it
11   they're trying to accomplish.  If they really are interested
12   in the consumer and they want us to ship product and issue
13   refunds, we are all ears, and we will go into a room and we'll
14   talk with them until we're blue in the face, and we have them
15   involved to help us accomplish that.
16               Let me just say one more thing, Your Honor.  What I
17   heard over there is the basis for a preliminary injunction or
18   further relief is that what they're saying is our preorder
19   model, preorder model, that's what I'm hearing, Your Honor.
20               The evidence today will reflect that we no longer
21   utilize a preorder model.
22               THE COURT:  Since when?
23               MR. HUMPHREY:  Since July 17th of 2014.
24               THE COURT:  July 17th of 2014.  A lot of these
25   actions occurred before that arguably.
                                   13

Gayle M. Wambolt, CCR No. 462
Registered Merit Reporter

Case 4:14-cv-00815-BCW   Document 121   Filed 10/29/14   Page 13 of 16

1           MR. HUMPHREY:  That's correct, Your Honor.  If you
2  are looking at the future, whether it needs to be enjoined,
3  the preorder model is no longer in use.  That's their primary
4  basis for relief.  It does not exist anymore.
5           THE COURT:  All right.
6           MS. WONG:  Your Honor, first and foremost,
7  Mr. Humphrey has never reached out to the FTC regarding
8  formulating a plan.  All we've heard is from the receiver, and
9  I think clear to the receiver to -- counsel has to reach out
10 to us.  We are certainly open.  We work out agreements with
11 defendants all the time.
12          And, secondly, we think Mr. Humphrey keeps
13 referencing this future business plan, and if you look at the
14 receiver's report and the third party accounting report, no
15 one has seen this future business plan.  And it is our
16 contention that they cannot use consumer funds that were ill
17 gotten to fund this future business plan.  That is our primary
18 reason for being here today, and that is why we contend the
19 funds they're using has to go to consumers first.
20          THE COURT:  All right.  Well, I don't want to argue
21 now.  I just wanted to let you know where the court is coming
22 from with respect to your position and with respect to your
23 position and how much the court appreciates what the receiver
24 did with respect to a plan how we move forward.
25          Now, you can interpret that any way you like, but

14

Gayle M. Wambolt, CCR No. 462
Registered Merit Reporter

Case 4:14-cv-00815-BCW   Document 121   Filed 10/29/14   Page 14 of 16

1  I'll hear evidence and if the parties won't -- or choose not
2  to discuss a way to maybe resolve this through agreement, then
3  the court will rule accordingly.
4           With that said --
5           MR. HUMPHREY:  Your Honor, I looked over here to see
6  if there's any indication.  We are -- we have no qualms with
7  taking a brief recess if the court would allow it to discuss
8  the issues that you just raised.
9           THE COURT:  You know, I think that will be good.
10 Then I'll hear all evidence with respect to this, and, you
11 know, I think in the end, and, again, I spoke but I believe --
12 I really think with the report that was submitted to this
13 court would at least as a start to get at what we're
14 ultimately trying to get to.  I think you're in and maybe
15 you're in.  The court will be more than happy to take some
16 sort of -- I'll take a recess as long as you all want to give
17 you the opportunity to speak.  You just let my courtroom
18 deputy, Ms. Baldwin, know when you want me to come back out.
19 I think we can -- we'll proceed from there.
20          MR. HUMPHREY:  Thank you, Your Honor.
21          (A recess was taken.)
22               *  *  *  *  *  *  *  *  *  *
23
24
25
                              15

```
 1                    REPORTER'S CERTIFICATE
 2
 3           I certify that the foregoing pages are a correct
 4    transcript from the record of proceedings in the
 5    above-entitled matter.
 6
 7    _____        _____
 8       Date         Registered Merit Reporter
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

16

Gayle M. Wambolt, CCR No. 462
Registered Merit Reporter