IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14-CV-0815-W-BCW |
| | ) | |
| BF LABS INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS BF LABS INC., SONNY VLEISIDES,
DARLA JO DRAKE, AND NASSER GHOSEIRI'S
REPLY SUGGESTIONS IN SUPPORT OF RULE 12(b)(6)
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

| | | | |
|---|---|---|---|
| James M. Humphrey | MO #50200 | James D. Griffin | MO # 33370 |
| Michael S. Foster | MO # 61205 | Lisa M. Bolliger | MO # 65496 |
| Miriam E. Bailey | MO # 60366 | Scharnhorst Ast Kennard Griffin, PC | |
| Polsinelli PC | | 1100 Walnut, Suite 1950 | |
| 900 W. 48th Place, Suite 900 | | Kansas City, MO 64106 | |
| Kansas City, Missouri 64112-1895 | | Telephone: (816) 268-9400 | |
| Telephone: (816) 753-1000 | | Fax: (816) 268-9409 | |
| Facsimile: (816) 753-1536 | | jgriffin@sakg.com | |
| jhumphrey@polsinelli.com | | lbolliger@sakg.com | |
| mfoster@polsinelli.com | | | |
| mbailey@polsinelli.com | | Attorneys for Defendant Nasser Ghoseiri | |

Braden M. Perry            MO # 53865
Kennyhertz Perry LLC
420 Nichols Road, Suite 207
Kansas City, MO 64112
Direct: 816-527-9445
Fax: 855-844-2914
braden@kennyhertzperry.com

Attorneys for Defendants BF Labs, Inc.
Sonny Vleisides, and Darla Drake

Plaintiff's opposition demonstrates that Plaintiff is attempting to do here what the FTC has apparently never before tried: to hold a company and its employees liable for good-faith business projections and regular status updates—that is, normal business activities that are (or as a matter of sound business and public policy, should be) simply unactionable. And the FTC's arsenal is stocked with presumptions in its favor that Plaintiff seems to think can be triggered by mere invocation, regardless of the facts.

The FTC's reliance on presumptions is especially disconcerting considering that the FTC orchestrated a media campaign designed to establish BF Labs as bogus. Ultimately, there are limits to the "presumption" cases on which Plaintiff relies, and the interests of justice require that they be enforced. For these reasons, set forth more fully herein and in Defendants' initial suggestions, Plaintiff's Complaint should be dismissed in its entirety.[1]

## I. Motion to Dismiss Standard – Additional Authorities.

The well-established principle that a plaintiff "cannot defeat a motion to dismiss by choosing not to attach the full statements to the complaint" (*Silver v. H&R Block, Inc.*, 105 F.3d 394, 397 (8th Cir. 1997)), has added significance where, as here, complaint allegations are contradicted by documents submitted by a plaintiff in support of a related TRO application. *See Appling v. Wachovia Mortg., FSB*, 745 F. Supp. 2d 961, 974 (N.D. Cal. 2010) (dismissing complaint that was contradicted by document attached to plaintiff's TRO application).

---

[1] Defendants do not, as Plaintiff asserts (*see* Doc. 113, p. 1 n.2), argue that the FTC lacked authority to seek, or that this Court lacks authority to grant, *ex parte* relief. What Defendants have argued and will continue to argue, rather, is that Plaintiff omitted material information from its *ex parte* application to the Court, and that Defendants have been prejudiced as a result. Defendants therefore object in principle to any action adverse to it that the Court might take other than to dismiss Plaintiff's Complaint in its entirety and to award Defendants such other and further relief as the Court deems just and appropriate.

Each of the documents attached to Defendants' suggestions in support of their motion to dismiss was attached to Plaintiff's TRO application. Plaintiff does not dispute the documents' authenticity and even bases its claims on those documents, particularly to the extent that Plaintiff claims that the "net impression" of Defendants' representations was misleading. Each of the documents is therefore vital to the Court's consideration of this motion. *See Pension Benefits Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document"); *SEC v. Siebel Sys., Inc.*, 384 F. Supp. 2d 694, 700 (S.D.N.Y. 2005) (noting, where materiality of representations or omissions was at issue, that review of "the entire public statement at issue is particularly appropriate").

## II.     Plaintiff's Complaint Fails to State a Claim on Which Relief Can Be Granted.

Plaintiff complains that Defendants' motion to dismiss does not rely on FTC-case opinions. Indeed it does not. But this is not because FTC-case opinions are unfavorable to Defendants' motion. Rather, it is apparent from the cases cited by the FTC that no FTC-case opinions are even close to factually analogous. The absence of *applicable* FTC-case authority demonstrates that the FTC has—appropriately—never before attempted to pursue a company for the sort of allegations it has raised here.

The FTC is thus forced to rely on strained and ultimately unsupportable readings of FTC-case authority to attempt to trigger presumptions where its evidence does not otherwise meet the mark. Because the FTC is granted a *presumption* of materiality where a company has made "express" representations, for example, the FTC has simply labeled BF Labs' representations "express." But not a single case cited by the FTC supports application of that label to BF Labs' representations. And because "false" representations are *presumptively* misleading, the FTC has baldly alleged that BF Labs' representations were "false." In so doing, however, the FTC relied

2

on cases in which representations were inaccurate *when made*, and has failed to cite a single case that held a future-tense projection (such as a representation that shipping dates are "scheduled" for a particular future month, which in hindsight turns out to be optimistic) to be "false" in the same sense.

This case began as an *ex parte* proceeding in which Defendants had no opportunity to provide the Court with material information that Plaintiff omitted from evidence and argument. Thus from the outset, despite no wrongdoing being proved, Defendants have been at a disadvantage. Defendants should not now be further subjected to having to defend against *presumptions* that BF Labs' representations were "material" and "misleading" when the case law in no way supports the application of those presumptions.

Defendants have generally refrained from citing FTC-case opinions for the same reason that the FTC-case opinions cited by the FTC here are inapposite: BF Labs and the other Defendants have done nothing that even approaches facts that have historically given rise to the FTC's *appropriate* intervention, or that warrants the FTC's intervention now. Because Plaintiff's Complaint utterly fails to state a claim under either FTC-case opinions or other authorities, the Complaint should be dismissed in its entirety.

### A. BF Labs' shipping-date and product-development representations were not "material" or "misleading" as a matter of law.

Plaintiff attempts to distinguish the *Borow* and *Number Nine* cases on which Defendants rely by stating that both of "those cases involved alleged violations that required *scienter*," and that the FTC does not need to allege intent to defraud or deceive to establish a Section 5(a) violation. Doc. 113, p. 6. Plaintiff is correct in both instances, but misses the point. The *Borow* and *Number Nine* cases, the most factually analogous cases that Defendants have yet been able to find, also applied a "materially misleading" standard—separate and apart from any irrelevant

*scienter* analysis, and virtually indistinguishable from the standard applied in Section 5(a) cases—and held that optimistic shipping-date and product-development projections were immaterial and not misleading as a matter of law. *See Borow v. nVIEW Corp.*, 829 F. Supp. 828, 834-35 (E.D. Va. 1993); *In re Number Nine Visual Tech. Corp. Secs. Litig.*, 51 F. Supp. 2d 1, 28-29 (D. Mass. 1999). Those cases are, therefore, not so readily dispatched.

Those cases are particularly helpful here because the FTC cases relied on by Plaintiff provide no guidance concerning whether representations similar to those made by BF Labs were either "express," or material or misleading. In the *In re Thompson Medical Center* case, for example, the defendant pharmaceutical company claimed that the product Aspercreme contained aspirin (it didn't), that Aspercreme was recently discovered or developed (it wasn't), and that valid studies had scientifically proven Aspercreme to be more effective than aspirin for relieving certain arthritis and rheumatic conditions (they hadn't). *See* 104 F.T.C. 648, at 65-69 (1984). While Plaintiff correctly cited *Thompson* for the unremarkable holdings that these claims were express and that false claims are inherently likely to mislead (Doc. 113, p. 4), the representations of past or present fact made by the *Thompson* defendant provide no guidance as to materiality or falsity here, where representations concerning projected future events are at issue.

Similarly, in *Stouffer Foods Corp.*, the defendant was held liable for misrepresentations concerning the relative level of sodium in its Lean Cuisine meals; more specifically, the defendant advertised in large print that Lean Cuisine meals contained less than 1 gram of sodium. 118 F.T.C. 746, 797-99 (1994). The "less than 1 gram" representation was technically true, but because sodium is traditionally measured in milligrams, and 1 gram equals 1000 milligrams, the relative sodium level advertised was held materially misleading. *Id*. There too,

4

though, the representations concerned present-tense facts that were "express" and either true or not when made, and *Stouffer* is thus of no utility to the projection-based materiality analysis here.

The *SlimAmerica, Inc.* (concerning diet formulas that were "absolutely guaranteed to blast up to 49 pounds off you in only 29 days"), *Sterling Drug*, *AMG Services, Inc.*, and *Grant Connect* cases similarly provide no guidance for analyzing the forward-looking nature of the shipping-date and product-development representations made by BF Labs. In the absence of any apposite FTC-case authority to provide guidance concerning the materiality of BF Labs' shipping-date and product-development projections, Plaintiff has provided no reason why factually analogous cases that applied a virtually identical "materially misleading" standard should not be treated as authoritative here. Under *Borow* and *Number Nine*, BF Labs' shipping-date and product-development representations are immaterial as a matter of law.

To determine whether any such representations are misleading, however, the *Sterling Drug*, *AMG Services, Inc.*, and *Grant Connect* cases usefully hold that the context of alleged representations must be considered together in a "net impression" analysis. *See* Doc. 113, p. 7 (citing cases). Plaintiff gives lip service to this point, but states that the Court should not consider in its 12(b)(6) analysis the representations attached to Defendants' initial suggestions in support. Doc. 113, pp. 2-3. Plaintiff then separately implies that BF Labs' blog and FAQ-section website representations should not be considered because those statements were "buried" somewhere off of the order-placement page of BF Labs' website, and thus out of customers' view. *Id*. at p. 7.

But Defendants only cited to BF Labs' blog and FAQ-section website representations because those were the representations on which *Plaintiff* purportedly based its TRO application's "net impression" argument. *See generally* Doc. 8, pp. 16-32 and exhibits cited. Plaintiff cannot have it both ways. That is, Plaintiff cannot be permitted to argue that the net

5

impression created by BF Labs' product pages, blog posts, and FAQ section information was material and misleading, but then argue that the Court should not consider the "additional disclosures or qualifications" that BF Labs made on those pages. *See* Doc. 113, p. 7.

And Plaintiff is simply incorrect that the FAQ page or other disclaimers were "buried" in small print or otherwise outside of customers' view. Consider, for example, the very first shipping-date representation referenced in Plaintiff's Complaint. Plaintiff cited BF Labs' June 2012 representation that "the BitForce mining machine 'is now in final state development'" and that "[i]nitial product delivery is scheduled for October 2012." Doc. 2, ¶ 27; *see also* Doc. 103-1. Immediately following those sentences, in the very same font, BF Labs prompted consumers to "[s]ee the SC FAQ for more information." Doc. 103-1. A virtually identical reference to the FAQ page (cited in Defendants' initial suggestions in support) appeared in either the same **or bolded** font immediately following the "scheduled for . . ." sentence on other cited product pages (*see* Docs. 103-1, 103-2, 103-3, 103-6, 103-7, 103-13), or the link to the FAQ page was featured in the page's prominent top toolbar. *See* Doc. 103-14, 103-17, 103-25 at p. 6, 103-26.

These facts stand in stark contrast to the "net impression" cases that Plaintiff cites. In *Grant Connect, LLC*, for example, the "net impression" of each of defendants' various websites was misleading where each website required program purchasers to navigate through a series of webpages, click a box indicating that the purchaser had read policies set forth in three separate hyperlinked pages that were not grouped together on the website, and navigate through additional "negative option" upsell choices *before* being permitted to view pages providing information about the negative-option upsells. 827 F. Supp. 2d 1199, 1206-10 (D. Nev. 2011).

Simlarly, in *AMG Services, Inc.*, the "net impression" of a payday-loan company's loan note was misleading where its mandatory (and regular-sized) disclosures were materially altered

6

by fine print, where borrowers were in practice required to decline renewal (if at all) by completing a complicated email-and-hyperlink procedure even though the loan note stated in fine print that another, simpler means could be used, and where provisions regarding payment were "circular and contradictory." No. 2:12-cv-00536-GMN-VCF, at *16-20 (D. Nev. Jan. 28, 2014).

None of the cases Plaintiff cited address the type of shipping-date and product-development projections at issue here, which are indistinguishable from projections held immaterial as a matter of law in *Borow* and *Number Nine*. Yet without analogous precedent, Plaintiff seeks to hold BF Labs liable for its good-faith projections and its regular and appropriate status updates. Plaintiff's approach, if permitted here, creates new policy (bad policy) with frightening implications for technology companies nationwide. More than that, Plaintiff's novel—indeed unprecedented—and unsupported shipping-date and product-development allegations simply fail to state a claim and should be dismissed.

### B. Plaintiff's Profitability Allegations Also Fail as a Matter of Law.

Plaintiff cites *FTC v. Business Card Experts*, for the proposition that "misrepresentations about expected profits from a business or returns from an investment violate Section 5(a)." Doc. 113, p. 9. The *Business Card Experts* case presents markedly different facts than those at issue here, and demonstrates that, even under FTC-case authority, Plaintiff has not stated a claim.

In *Business Card Experts*, a preliminary injunction was granted under Section 5(a) where the defendant company represented that people could "earn $150,000" their first year selling business cards (even though no one had ever earned that much in any year), stated that "there's no way in the world you could even lose a dime on this" (even though only approximately 3 percent of business-card dealers had ever recouped their investment), and purported to offer a "money-back guarantee" (even though the company did not, in fact, offer such a guarantee). No. 06-cv-4671, 2007 WL 1266636, * 1-2 (D. Minn. Apr. 27, 2007).

7

Plaintiff here has alleged nothing like the express "$150,000," "no way [to] lose a dime," "money-back guarantee" claims made in *Business Card Experts*. Plaintiff instead alleges that BF Labs represented that "[c]onsumers will be able to use the machines or services to generate Bitcoins, or to generate a profitable or substantial amount of Bitcoins." Doc. 1-1, ¶¶ 12, 39(a).

As an initial matter, despite BF Labs' more-than-400- million (yes, 400 million) ad impressions through Google, Plaintiff was not able to attach a *single ad* to its Complaint or TRO papers that contains *any* representation that a profitable or certain amount of Bitcoins could be mined using BF Labs' equipment. Plaintiff cannot refer to any such ads because none exist—BF Labs at all relevant times had and has a policy forbidding profitability representations. For the same reason, Plaintiff was unable to even allege that BF Labs ever made "express" profitability representations that consumers would, for example, be able to generate a particular number of bitcoins, or a particular dollar value in bitcoins, using BF Labs equipment. *Cf. Bus. Cards Experts*, 2007 WL 1266636, * 1-2.

Plaintiff instead based its profitability allegations on a link to a Bitcoin calculator that BF Labs once posted on its social media pages in November 2012. *See* Doc. 2, ¶¶ 21-23, 39.[2] BF Labs' 2012 posting of a link to a third-party's online bitcoin calculator cannot, by any stretch of *Business Card Experts* or any other case, be considered an "express" representation about a potential consumer's profitability. And while Plaintiff attempted to paint BF Labs' link to the calculator as an attempt to "market their Bitcoin mining machines . . . for sale" (Doc. 2, ¶ 22),

---

[2] Plaintiff also purports to base its Section 5(a) claim on BF Labs' representations concerning the low-power consumption, high efficiency, and processing speed of its mining machines. *See, e.g.*, Doc. 2, ¶ 21; Doc. 8, pp. 13-16. But Plaintiff has not alleged that BF Labs' machines did not actually have the power-consumption, efficiency, and processing-speed capabilities that BF Labs represented. *See generally* Doc. 2. Rather, Plaintiff alleged that, due to delivery delays, the number of Bitcoins mined by any Bitcoin mining machine was significantly decreased. This allegation is thus nothing more than an extension of Plaintiff's shipping-date allegations, which fail as set forth in Part II.A., *supra*.

the calculator is intended only for use by people who *have already obtained* mining equipment. As Plaintiff alleged, the calculator page states "[c]alculate how much your shiny new rig *is making* you"—present tense, not future. *Id.* (emphasis added).

Past or present tense, not future tense, is the only way the calculator could work. As Plaintiff also alleged, the calculator requires a user to input the applicable Bitcoin exchange rate and the delivery date, among other variables. Even Plaintiff admits that the Bitcoin exchange rate constantly fluctuates (Doc 2, ¶ 13); this fact is key to the Bitcoin calculator's immateriality to the purported purchasing decision of any reasonable consumer.

In November 2012—the only time that BF Labs linked to the calculator—BF Labs announced that the BitForce SC was not going to ship in November 2012, and then throughout December 2012 adjusted its shipping-date projections from December 2012 to February 2013. *See* Docs. 103-10 – 103-13. If a consumer considering the purchase of a BitForce SC had wanted to use the calculator to project anticipated profits (a use that even the calculator's description makes clear was not intended), the consumer would first have had to prognosticate the correct Bitcoin exchange rate to apply, and assume (reasonably or otherwise) that the rate would stay the same for the entire future month for which BF Labs stated that shipping was "scheduled."[3]

No reasonable consumer could have relied on the output of a calculator—expressly designed to accommodate past- or present-tense knowledge—based on prognosticated variables to make a buying decision. Historical bitcoin exchange rates bear this out. The low in November

---

[3] Contrary to Plaintiff's assertion that Defendants "promise[d] that they would deliver their machines by specific dates" (Doc. 113, p. 4), each relevant attachment to Plaintiff's TRO application demonstrates that Defendants merely stated that shipments were "scheduled" for month periods, not specific dates. *See generally* Docs. 103-1 – 103-7, 103-11 – 103-14, 103-17 – 103-18, and 103-25. In any event, the calculator does not, as Plaintiff alleges, include "delivery date" as an input. The calculator has an "investment period" input, a factor ostensibly determined by reference to a delivery date, assuming that a consumer begins operating his machine on the same date it is delivered. *See* http://tpbitcalc.appspot.com/.

2012, for example, was $10.41; the high was $13.41—a nearly 30-percent swing in only one month. *See* http://www.coindesk.com/price/ (information gathered by entering Nov. 1, 2012 and Nov. 30, 2012 as the beginning and end dates). Going forward, the December 1, 2012 rate was $12.56 and, by February 28, 2013—after near-constant fluctuation—the rate had risen to $33.38. *Id*. (Dec. 1, 2012 and Feb. 28, 2013 used as beginning and end dates).

Again, variables like "international currency exchange rate fluctuations . . . are hazards of business apparent to all serious observers and most casual ones." *In re Marion Merrell Dow Inc., Secs. Litig. II*, No. 93-0251-CV-W-6, 1994 WL 396187, at *6 (W.D. Mo. July 18, 1994). The so-called "calculator" and profitability representations are therefore immaterial as a matter of law.

Apparently acknowledging this inescapable conclusion, Plaintiff's opposition insists that "it is clear that the Commission is alleging that consumers were unable to generate a substantial *number* of Bitcoins." Doc. 113, p. 8 (emphasis in original). But Plaintiff's Complaint repeatedly references consumers' ability to generate profits and the mining conditions purportedly necessary to do so. *See* Doc. 2, ¶¶ 12, 17, 18, 19, 22, 39. Regardless of this attempted midstream change in theory, the number of Bitcoins that one mines has no significance outside of profitability. Plaintiff's "number of Bitcoin" allegations are thus not only inseparable from Plaintiff's profitability allegations, they are one and the same.

Because Plaintiff's Complaint alleges (admits) facts fatal to the profitability prong of Plaintiff's Section 5(a) claim, the Complaint fails to state a claim on which relief can be granted.

## CONCLUSION

Defendants request that the Court dismiss the Complaint in its entirety and with prejudice.

Respectfully submitted,

/s/ James M. Humphrey

| | |
|---|---|
| James M. Humphrey | MO # 50200 |
| Michael S. Foster | MO # 61205 |
| Miriam E. Bailey | MO # 60366 |

Polsinelli PC
900 W. 48th Place, Suite 900
Kansas City, Missouri 64112-1895
Telephone: (816) 753-1000
Facsimile: (816) 753-1536
jhumphrey@polsinelli.com
mfoster@polsinelli.com
mbailey@polsinelli.com

Braden M. Perry           MO # 53865
Kennyhertz Perry, LLC
420 Nichols Road, Suite 207
Kansas City, MO 64112
Direct: 816-527-9445
Fax: 855-844-2914
braden@kennyhertzperry.com

Attorneys for Defendants BF Labs Inc.,
Sonny Vleisides, and Darla Drake.


/s/ James D. Griffin

James D. Griffin          MO # 33370
Lisa M. Bolliger          MO # 65496
Scharnhorst Ast Kennard Griffin, PC
1100 Walnut, Suite 1950
Kansas City, Missouri 64106
Tel: (816) 268-9400
Fax: (816) 268-9409
jgriffin@sakg.com
lbolliger@sakg.com

Attorneys for Defendant Nasser Ghoseiri

# CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2014, a true and correct copy of the foregoing was served by the Court's ECF system on the following:

Helen Wong
Teresa N. Kosmidis
Leah Frazier
Gregory Ashe
Federal Trade Commission
600 Pennsylvania Ave., N.W.
Mail Stop CC-10232
Washington DC 20580
202-326-3779 (Wong)
202-326-3216 (Kosmidis)
202-326-2187 (Frazier)
hwong@ftc.gov
tkosmidis@ftc.gov
lfrazier@ftc.gov
gashe@ftc.gov

Charles M. Thomas
Assistant United States Attorney
Charles Evans Whittaker Courthouse
400 East Ninth Street, Room 5510
Kansas City, MO 64106
816-426-3130
charles.thomas@usdoj.gov

Attorneys for Plaintiff

Bryant T. Lamer
Kersten L. Holzhueter
Andrea M. Chase
Katie Jo Wheeler
Lucinda H. Luetkemeyer
Spencer Fane Britt & Browne LLP
1000 Walnut Street, Suite 1400
Kansas City MO 64106
816-474-8100
blamer@spencerfane.com
kholzheuter@spencerfane.com
achase@spencerfane.com
kwheeler@spencerfane.com
lluetkemeyer@spencerfane.com

Attorneys for Receiver Eric L. Johnson

/s/ James M. Humphrey
Attorney for Defendants BF Labs Inc., Sonny Vleisides, and Darla Drake.