## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 14-CV-0815-W-BCW |
| | ) |
| BF LABS INC., et al., | ) |
| | ) |
| **Defendants.** | ) |

### DEFENDANTS BF LABS INC., SONNY VLEISIDES, AND DARLA DRAKE'S SUGGESTIONS IN OPPOSITION TO THE FIRST APPLICATION BY ERIC JOHNSON, TEMPORARY RECEIVER, FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES FOR THE PERIOD SEPTEMBER 18, 2014 THROUGH <u>OCTOBER 31, 2014</u>

Defendants BF Labs Inc., Sonny Vleisides, and Darla Drake (collectively "Defendants")

oppose the First Application by Eric Johnson, Temporary Receiver, For Allowance of

Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses for

the Period September 18, 2014 through October 31, 2014 ("Application") because:

(1) the professional fees and expenses are excessive;

(2) the Temporary Receiver failed to provide to BF Labs—the entity from whose assets

the Temporary Receiver seeks to satisfy his (and his counsel and consultants') bills—the

receivership professionals' billing statements and an affidavit explaining why the fees and

expenses are moderate and reasonable;

(3) discovery and a hearing are needed to determine the reasonableness of the fees and

expenses sought in the Temporary Receiver's Application; and

1

(4) the FTC should pay for any receivership professional fees and expenses because its *ex parte* action was unnecessary and resulted in significant fees and expenses that could have otherwise been spent providing refunds to any consumers who want them.

For these reasons, set forth more fully below, Defendants oppose the Temporary Receiver's Application and respectfully request either (1) that the FTC be required to pay the Temporary Receiver's fees and expenses, or (2)(a) that BF Labs be permitted to review and, as necessary, oppose unredacted billing statements from the Temporary Receiver and his counsel and consultants before the Court rules on the Application, (b) that the Court grant discovery and a hearing concerning the reasonableness of the Temporary Receiver's Application before the Court rules on the Application, and (c) that the Court find that the amount billed was excessive during the period from September 18, 2014 through October 31, 2014 and deny the Temporary Receiver's Application to that extent, and for such other and further relief that the Court deems just and equitable.

1.      **The Temporary Receiver and His Attorneys, Accountants, and Consultants' Claims for Fees and Expenses Covering September 18, 2014 through October 31, 2014 Are Excessive.**

Fees or compensation allowed for the services of counsel for a receiver must be moderate and reasonable. *Fed. Oil Mktg. Corp. v. Cravens*, 46 F.2d 938, 943 (8th Cir. 1931); *Lincoln Printing Co. v. Middle W. Utils. Co.*, 17 F. Supp. 799, 801 (N.D. Ill. 1936); *Lewis v. Gramil Corp.*, 94 So. 2d 174, 178 (Fla. 1957) (cited by the Temporary Receiver in Application, Doc. 173, p. 5). While the amount of the allowance lies in the sound discretion of the court, any allowance should be reasonable according to the circumstances of the case. *Stuart v. Boulware*, 133 U.S. 78, 81, 10 S. Ct. 242, 33 L. Ed. 568 (1890). Receivers bear the burden of proof to show an entitlement to payment of fees in amounts claimed. *K-Partners III, Ltd. v. WLM Hospitality Corp.*, 883 P.2d 604, 606 (Colo. App. 1994); *see also In re Blackwood Assoc., L.P.*, 165 B.R.

2

108, 111 (Bankr. E.D.N.Y.1994) (receiver must make a "prima facie case in support of the requested award").

Receivers and all professionals retained by the receiver must exercise proper billing judgment in seeking fees from the receivership estate, and should limit their work to that which is reasonable and necessary. *See, e.g., FTC v. Peoples Credit First, LLC*, 2005 WL 3981599, at *4 (M.D. Fla. Apr. 19, 2014). After all, "[n]o receivership is intended to generously reward court-appointed officers." *S.E.C. v. W.L. Moody & Co*., 374 F. Supp. 465, 483 (S.D.Tex.1974), *aff'd*, 519 F.2d 1087 (5th Cir.1975)).

While sufficient fees should be paid to induce competent persons to serve as receiver or to render other essential service, receiverships should be administered as economically as reasonably possible. *Gramil Corp*., 94 So. 2d at 177. Allowances for services performed by court officers must therefore be just, but nevertheless moderate rather than generous. *Id*. And allowances for attorneys' fees and expenses should be made only if it is clear that those seeking fees and expenses have by their efforts actually benefited the estate involved. *Smith v. Hill*, 237 Cal. App. 2d 374, 383 (4th Dist. 1965).

Considerations for evaluating the reasonableness of receiver and attorneys' fees include:

1.    the time and labor required (not necessarily that actually expended), in the proper performance of duties; *Hawaii Ventures, LLC v. Otaka, Inc*., 164 P.3d 696, 748 (Haw. 2007);

2.    the fair value of time, labor, and skill measured by conservative business standards; *id*.; *see also U.S. v. Larchwood Gardens, Inc*., 404 F.2d 1108, 1110 (3d Cir. 1968);

3.    the degree of activity, integrity, and dispatch with which the work is conducted; *id*.;

4.    the difficulty of receivership tasks or the extent of responsibility assumed; *Jacobs v. Ringling Brothers-Barnum & Bailey Combined Shows, Inc*., 103 A.2d 805, 809 (Conn. 1954);

3

5. the amount of money or value of property within the receivership estate; *id*., and

6. the results obtained. *Larchwood Gardens,* 404 F.2d at 1110.

For those placed in a position of trust in dealing with the property of others, such as receivers, "the punctilio of an honor most sensitive" is required. *Meinhard v. Salmon*, 164 N.E. 545, 546 (N.Y. Ct. App. 1928) (Cardozo, J.). Additionally, the activities and compensation of receivers are a matter of public policy import and of "grave[] concern[]." *Gramil Corp.*, 94 So.2d at 177. A receiver is in a position of trust, an officer of the court and held to commensurate standards.

Defendants do not deny that the Temporary Receiver is entitled to reasonable compensation. But the Temporary Receiver and his attorneys and consultants seek much more than that: $662,799.18 in professional fees, and expenses in the amount of $12,900.32 for the period from September 18, 2014 to October 31, 2014—an average of $15,713.94 per day. If this average billing rate was maintained from November 1, 2014 through the date of the preliminary injunction hearing, more than $1 million was incurred, an amount equivalent to 60% of BF Labs' entire payroll for 2013. Draft Tr. 191:4-12.

The Temporary Receiver argues in support of the bills that Spencer Fane and RubinBrown voluntarily reduced their professional fees, saving Defendants "a total of $220,858.57." Doc. 173, p. 5. The Temporary Receiver's extravagant fees, however, are not rendered moderate or reasonable simply because they could have been *more* extravagant.

**2.    Defendants Are Entitled to Review the Temporary Receiver's and His Counsel's and Consultants' Billing Statements to Determine the Reasonableness of the Fees.**

Because the burden is on the Temporary Receiver to show entitlement to the fees claimed, he must make a prima facie case in support of the requested award. *See K-Partners III,*

4

*Ltd.*., 883 P.2d at 606; *see also In re Blackwood Assoc., L.P*., 165 B.R. 108, 111 (Bankr. E.D.N.Y.1994) (receiver must make a "prima facie case in support of the requested award"). Both the amount *and the basis* for receivership fees and expenses sought must be fully disclosed—not only to the Court, but to the party from whose assets the fees and expenses are sought to be satisfied—because interested parties must be afforded the opportunity to rebut any proof offered by a receiver for fees charged in carrying out receivership duties. *See Gramil Corp*., 94 So. 2d at 177.

Itemized bills and affidavits are therefore routinely, if not always, attached to receivers' fee application in FTC actions. *See, e.g., FTC, et al., v. Affiliate Strategies, Inc., et al.,* Case No. 5:09-cv-04104-RDR-KGS (Doc 89-2), attached as Exhibit A (Lathrop & Gage LLP's Kansas City's office's unredacted billing statement for work as Receiver's counsel); *FTC v. The Green Savers, LLC*, Case No. 6:12-cv-1588-ORL-26-DAB (Doc. 53-2), attached as Exhibit B; *FTC v. Peoples Credit First LLC, et al*., Case No. 8:03-cv-2353-TBM (Doc. 52), attached as Exhibit C; *FTC v. Money Now Funding, LLC*, Case No. 2:13-cv-1583-ROS (Doc. 133-2), attached as Exhibit D.

This common practice reflects a fundamental principle of due process—parties in receivership cannot be deprived of their assets without notice and an opportunity to challenge the basis for the deprivation. *See, e.g.*, *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 315 (1950).[1] Thus, when the Temporary Receiver's unredacted bills were not provided to the parties here, Defendants' counsel requested copies of them from the Temporary Receiver's

---

[1] Defendants had similar due process concerns when the Temporary Receiver filed a motion days before the preliminary injunction hearing, seeking an indefinite extension for "a reasonable time" of his deadline to submit his fee application.

5

counsel. Without access to the unredacted bills, Defendants have no opportunity to review and potentially object to specific line items.

Curiously, the Temporary Receiver, through his counsel, refused to provide the statements to Defendants. Not only is the Temporary Receiver's nondisclosure position highly unusual (*see* Exhibits A through D), but it raises additional concerns about the statements' contents.

This level of concern only grows when the Temporary Receiver's offered justification is considered. Counsel for the Temporary Receiver responded only that counsel for BF Labs submitted its billing statements to the Court *in camera* when seeking the payment of fees incurred *before* this lawsuit was filed. *See* Email Chain, attached as Exhibit E. Beyond the obvious difference that the party being asked to pay those fees actually had an opportunity to review those statements, there is no reasonable basis for comparison. Counsel for BF Labs submitted statements that raise significant attorney-client privilege and attorney work product issues. The Temporary Receiver can make no such claim. Moreover, any purported reliance on privilege by this temporary receiver would run counter to every other receivership located by Defendants, where unredacted statements were properly submitted and not withheld on privilege grounds.

Further, Defendants have reason to believe that the Temporary Receiver's fees and expenses include unnecessary and duplicative expenditures. According to the *Ex Parte* Order, the second duty of the Temporary Receiver was to "[t]ake exclusive custody, control, and possession of all assets…." Doc. 9, p. 12. BF Labs voluntarily surrendered its bitcoin wallet valued at almost $11 million dollars on the first day of the receivership. Draft Tr. 200:3-7. At that time, this amount was well over 90% of BF Labs' liquid assets. Further, every single request that the

6

Temporary Receiver asked of BF Labs related to securing assets was met. It is therefore not at all clear that the number of hours ostensibly reflected in the Fee Application were necessary to accomplish the required tasks.

Even without the content of the bills to review, however, certain matters appear unnecessary or duplicative, or both. For instance, work performed by UnitedLex and BKD Forensics, both dealing with the transfer of BF Labs' storage wallet to the Court-controlled bitcoin wallet, appears duplicative. Not only that, but BF Labs actually transferred the bitcoin wallet, not United Lex or BKD Forensics.[2] UnitedLex also appears to have unnecessarily duplicated ESI preservation work already performed by Modus. Along the same lines, the Application states that RubinBrown (the Temporary Receiver's accountants) coordinated with MarksNelson (BF Labs' accountants) "to provide review of BFL's assets, liabilities and proposed business plan." Doc. 173, pp. 2-3. In light of MarksNelson's significant background with BF Labs, these RubinBrown expenses also appear unnecessary. The Temporary Receiver also claimed to manage "all employees, consultants and independent contractors," but Defendants are unable to determine who the Temporary Receiver is referring to in these assertions.

Finally, the Fee Application amounts appear excessive even if one assumes that all the tasks that were required of the Temporary Receiver under the *Ex Parte* Order or the Stipulated Interim Order were completed. But the Temporary Receiver did not address during the billing

---

[2] Admittedly, UnitedLex and BKD Forensics were present and worked on a transfer protocol, but BF Labs actually performed the transfer.

period (or since) whether BF Labs can be operated lawfully and profitably, a determination required under the *Ex Parte* Order.[3] *See* Doc. 9, pp. 15-16.

In light of these considerations, which are representative but not exhaustive of Defendants' concerns (Defendants can only exhaustively catalog their concerns after they are provided the unredacted billing statements), and in light of due process's requirements of notice and an opportunity to be heard, Defendants request that they be provided unredacted billing statements for review.

### 3. Discovery and a Hearing Are Needed to Determine the Reasonableness of the Temporary Receiver's Claims for Fees and Expenses.

A trial court abuses its discretion if it awards receivership fees and expenses, "over the objection of an interested party, without a hearing, without any representation that they were reasonable and necessary, and without evidence through sworn testimony or verified documents that the services were performed and that the charges and expenses are reasonable." *K-Partners III, Ltd.*, 883 P.2d at 606 (citations omitted)). As already described, Defendants have significant concerns as to the reasonableness of the Temporary Receiver's claims for fees and expenses, and oppose the Temporary Receiver's Application as excessive. Defendants therefore respectfully suggest that discovery and a hearing are necessary to determine the reasonableness of that Application, and request that the Court permit discovery and a hearing.

---

[3] At the Preliminary Injunction hearing, the Court expressed concern that the acting CFO for BF Labs had testified that the company was unable to ship during the interim period. *See* Draft Tr. 202:13-203:10. While the Stipulated Interim Order permitted BF Labs to ship during the interim period (Doc. 54, p. 16), the Temporary Receiver never allowed shipments to occur. The Temporary Receiver demanded that, before BF Labs could ship any products, BF Labs reconfirm with customers that they wanted shipment. BF Labs therefore proposed a Customer Communications plan, but the Temporary Receiver did not approve it and, in the Temporary Receiver's alternate Communications Plan that was actually used, no reconfirmation method was provided. The Temporary Receiver, not the Court's order, is therefore why BF Labs was unable to ship devices to consumers.

8

**4.** **Alternatively (and Preferably) to Points 1 through 3, Because No Assets Were Being Dissipated and No Receivership Was Therefore Necessary, the FTC Should Pay the Temporary Receiver's Fees and Expenses.**

Courts have discretion to decide which party will be charged with costs of a receivership. *Bowersock Mills*, 101 F.2d at 1002-03. Thus, where the appointment of a receiver is later determined to have been unwarranted or inequitable, the party at whose instance the receiver was appointed, not the receivership estate, is liable for receivership expenses. *Id.*; *see also Wipf v. Hutterville Hutterian Brethren, Inc.*, 834 N.W.2d 324, 333 (S.D. 2013) ("[g]enerally, when a party requests the appointment of a receiver, and thereafter the appointment is deemed without legal authority, it is the requesting party and not the receivership funds that are liable for the expenses of the receivership." (citations omitted)).

BF Labs was issuing refunds and shipping units to consumers when the FTC sought a receivership *ex parte*, but the FTC did not inform the Court of these critical facts. *See* Doc. 155-1, ¶¶ 15-17, 22-25. Further, the FTC was incorrect to suggest that assets were being dissipated and that a risk of further dissipation existed. While the FTC had BF Labs' bank account records, it did not disclose to the Court that the funds regularly transferred out of BF Labs' checking account were merely moved to BF Labs' savings account, a standard corporate finance practice. Doc. 155-3, ¶ 21. As MarksNelson, BF Labs' accounting firm, has declared, it is "not aware of any factual basis to support any such representation [concerning dissipation risks] to the Court." Doc. 155-12, ¶ 19. Further, though the FTC was aware of the Johnson County District Attorney's investigation of BF Labs, and though the District Attorney would have shared information about its investigation with the FTC to the extent allowable by law, the FTC did not request documents or information. Doc. 155-2, ¶ 21.

The *ex parte* representations the FTC made to the Court were not the only concerning statements the FTC has made in this litigation, and additional statements are relevant to the

9

Court's equitable determination of who should pay receivership fees. The FTC has since represented to the Court, for example, that Defendants violated the Stipulated Interim Order. *See* FTC's Proposed Findings of Fact and Conclusions of Law, p. 20, ¶ 21. But the FTC has presented no evidence that ESI was deleted. In fact, all evidence has been preserved consistent with the Stipulated Interim Order. The so-called "deleted" forum post that the FTC referenced was an offensive post. The moderator of the web forum (a non-BF-Labs employee) shielded that post from public view, but the post was not deleted; it still exists and has been preserved. The FTC's assertion (apparently without investigation) that the post was deleted is akin to the FTC stating that the Temporary Receiver, by modifying BF Labs' website (the content of which has been preserved) to display a Receivership Notice and Receivership contact information, violated the Stipulated Interim Order. The FTC's assertion is not supportable.

Because the FTC omitted material facts and made material misstatements when seeking and obtaining the *ex parte* Order (*see generally* Doc. 155), and because the FTC continues to make unsupported statements to attempt to secure the continuation of the receivership, the FTC should pay the Temporary Receiver's fees and expenses, and allow BF Labs to conserve its assets to continue to provide refunds to any consumers who want a refund, as it was doing on September 18, 2014.[4]

### CONCLUSION

Defendants thus oppose the Temporary Receiver's Application and respectfully request either (1) that the FTC be required to pay the Temporary Receiver's fees and expenses, or (2)(a) that BF Labs be permitted to review and, as necessary, oppose unredacted billing statements

---

[4] It also bears mentioning that, by seeking the receivership and asset freeze and halting BF Labs' operations, the FTC unquestionably caused BF Labs' refund liability to increase. *See* 155-3, ¶ 37.

10

from the Temporary Receiver and his counsel and consultants before the Court rules on the

Application, (b) that the Court grant discovery and a hearing concerning the reasonableness of

the Temporary Receiver's Application before the Court rules on the Application, and (c) that the

Court find that the amount billed was excessive during the period from September 18, 2014

through October 31, 2014 and deny the Temporary Receiver's Application to that extent, and for

such other and further relief that the Court deems just and equitable.

11

Respectfully submitted,


/s/ James M. Humphrey

| | |
|---|---|
| James M. Humphrey | MO # 50200 |
| Michael S. Foster | MO # 61205 |
| Miriam E. Bailey | MO # 60366 |

Polsinelli PC
900 W. 48th Place, Suite 900
Kansas City, Missouri  64112-1895
Telephone: (816) 753-1000
Facsimile: (816) 753-1536
jhumphrey@polsinelli.com
mfoster@polsinelli.com
mbailey@polsinelli.com

Braden M. Perry                    MO # 53865
Kennyhertz Perry, LLC
420 Nichols Road, Suite 207
Kansas City, MO 64112
Direct: 816-527-9445
Fax: 855-844-2914
braden@kennyhertzperry.com

Attorneys for Defendants BF Labs Inc.,
Sonny Vleisides, and Darla Drake

12

**CERTIFICATE OF SERVICE**

I hereby certify that on December 5, 2014, a true and correct copy of the foregoing pleading was served by the Court's ECF system on the following:

Helen Wong
Teresa N. Kosmidis
Leah Frazier
Gregory Ashe
Federal Trade Commission
600 Pennsylvania Ave., N.W.
Mail Stop CC-10232
Washington DC  20580
202-326-3779 (Wong)
202-326-3216 (Kosmidis)
202-326-2187 (Frazier)
hwong@ftc.gov
tkosmidis@ftc.gov
lfrazier@ftc.gov
gashe@ftc.gov

Bryant T. Lamer
Kersten L. Holzhueter
Andrea M. Chase
Katie Jo Wheeler
Lucinda H. Luetkemeyer
Spencer Fane Britt & Browne LLP
1000 Walnut Street, Suite 1400
Kansas City MO  64106
816-474-8100
blamer@spencerfane.com
kholzheuter@spencerfane.com
achase@spencerfane.com
kwheeler@spencerfane.com
lluetkemeyer@spencerfane.com

Attorneys for Temporary Receiver
Eric L. Johnson

Charles M. Thomas
Assistant United States Attorney
Charles Evans Whittaker
Courthouse
400 East Ninth Street, Room 5510
Kansas City, MO  64106
816-426-3130
charles.thomas@usdoj.gov

Attorneys for Plaintiff

James D. Griffin            MO # 33370
Lisa M. Bolliger           MO # 65496
Scharnhorst Ast Kennard Griffin, PC
1100 Walnut, Suite 1950
Kansas City, Missouri 64106
Tel: (816) 268-9400
Fax: (816) 268-9409
jgriffin@sakg.com
lbolliger@sakg.com

Attorneys for Defendant Nasser Ghoseiri

　/s/ James M. Humphrey
Attorney for Defendants BF Labs Inc.,
Sonny Vleisides, and Darla Drake

13