**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| **FEDERAL TRADE COMMISSION,** | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | |
| **v.** | **)** | **Case No. 4:14-CV-00815-BCW** |
| | **)** | |
| **BF LABS INC., *et al.*,** | **)** | |
| | **)** | |
| **Defendants.** | **)** | |

**TEMPORARY RECEIVER'S REPLY IN SUPPORT OF HIS FIRST APPLICATION FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES**
**FOR THE PERIOD SEPTEMBER 18, 2014 THROUGH OCTOBER 31, 2014**

WA 6419078.8

**TABLE OF CONTENTS**

I. The Court Should Approve the Payment of Temporary Receiver's Fees and Expenses ....... 2

A. The Complexity and Difficulty Associated With the Receivership Are Highly Relevant Factors in Determining the Reasonableness of Professional Fees ....... 2

B. The Fees and Expenses are Reasonable and Necessary to Perform the Duties of the Stipulated Interim Order and Given the Complexity and Difficulties of this Case ....... 3

1. The ability and experience of the attorneys and professionals ....... 3

2. The amount involved ....... 4

3. The time necessary to accomplish legal tasks....... 4

4. The difficulty and intricacy of the legal issues involved ....... 4

5. The results attained ....... 6

6. The amount charged by attorneys of equal standing and ability. ....... 7

II. Defendants Are Not Entitled to Review Temporary Receiver's and His Counsel's and Consultants' Billing Statements to Determine the Reasonableness of the Fees ....... 7

A. In-camera review of Temporary Receiver's counsel's billing records is necessary to protect and preserve the attorney-client privilege ....... 7

B. There is no procedure requiring production of billing statements. The circumstances of this case, like those in *Petters*, do not warrant production. ....... 10

III. Defendants Misstate the Record in an Attempt to Challenge Temporary Receiver's Discharge of His Court-Ordered Duties ....... 11

IV. Discovery and A Hearing on Temporary Receiver's Fees and Expenses is Unnecessary ....... 14

WA 6419078.8

Temporary Receiver Eric Johnson submits this reply memorandum in support of his First Application for Allowance of Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses for the Period September 18, 2014 through October 31, 2014 (the "Application").

**INTRODUCTION**

Awards of attorneys' fees to court-appointed receivers are committed to the sound discretion of the Court. *See* 65 Am Jur 2d, Receivers § 224; *Crites, Inc. v. Prudential Ins. Co. of Am.*, 322 U.S. 408, 418 (1944) (a district court's decision to award compensation to a receiver is reviewed under the clear abuse of discretion standard). This Court's Stipulated Interim Order—which was negotiated by BFL, agreed to by BFL, and submitted to this Court—provides that "the Temporary Receiver and all personnel hired by the Temporary Receiver as herein authorized, including counsel to the Temporary Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order, and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by or in the possession or control of, or which may be received by, the Receivership Defendant." (Doc. 54 at XIV).

First, this Court should approve the payment of Temporary Receiver's fees and expenses outlined in his first application, as they are (1) reasonable and necessary to perform the duties required by the Stipulated Interim Order and (2) justified by the complexity and difficulties of this case. Second, this Court should deny Defendants' request for the billing records of Temporary Receiver and his counsel in order to protect and preserve the attorney-client privilege, as public disclosure of the billing records is neither practical nor necessary. Temporary Receiver has submitted his billing records to the Court for in-camera review, a reasonable and customary manner endorsed by a sister district of this Circuit, which allows the Court to evaluate the tasks performed while preserving the attorney-client privilege. Third, no additional discovery

or hearing is necessary to determine the extent of reimbursement of Temporary Receiver's fees and expenses, because Temporary Receiver's application is sufficient and proper in all respects for this Court to use its expert skill and award fees.

As more fully set forth in the supporting affidavit of Temporary Receiver and the accompanying charts, Defendants misconstrue the record in an attempt to challenge Temporary Receiver's discharge of his court-ordered duties where no basis for challenge exists. Thus, as shown below, and as demonstrated in the accompanying affidavits and exhibits, the Court should grant Temporary Receiver's first application for fees and expenses in its entirety.

## I. The Court Should Approve the Payment of Temporary Receiver's Fees and Expenses

### A. The Complexity and Difficulty Associated With the Receivership Are Highly Relevant Factors in Determining the Reasonableness of Professional Fees

Factors considered in determining reasonable compensation include the attorney's ability and experience, the amount involved, the time necessary to accomplish legal tasks, the difficulty and intricacy of the legal issues involved, the results attained, and the amount charged by attorneys of equal standing and ability. *Federal Oil Mktg. Corp. v. Cravens*, 46 F.2d 938, 940 (8th Cir. 1931).

The complexity and difficulty associated with the receivership are highly relevant factors in determining the reasonableness of professional fees. *See SEC v. Fifth Ave. Coach Lines, Inc.*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973) (awarding interim fees and expenses to law firm for role in receivership and noting that it involved wide variety of complex legal matters requiring the time, competence, and diverse resources of a law firm of high caliber). *SEC v. Funding Res. Group*, 3:98-CV-2689-M, 2003 WL 145411, *1 (N.D. Tex. Jan. 15, 2003) (finding fees and expenses were reasonable in light of difficulties receiver encountered). This receivership required multi-disciplinary counseling by attorneys practicing litigation, labor and employment,

insurance, corporate and financial services. Further, because it was not liquidation, the receivership required significant resources to maintain operations. (Affidavit of Temporary Receiver, attached hereto as Ex. 1, ¶ 9). When the receivership commands full time and prevents the professionals from accepting other engagements, the fee award should reflect it. *W.L. Moody & Co.*, 374 F. Supp. 465, 483-84, 486 (S.D. Tex. 1974), aff'd, 519 F.2d 1087 (5th Cir. 1975) (discussing as a factor in determining reasonable compensation the fact that the receiver "devoted more than full time" to the matter and was prevented "from undertaking any other full time assignment"). This receivership commanded the full time attention of Temporary Receiver and his counsel. (Ex. 1, ¶ 10,12).

**B. The Fees and Expenses are Reasonable and Necessary to Perform the Duties of the Stipulated Interim Order and Given the Complexity and Difficulties of this Case**

BFL admits that Temporary Receiver is due reasonable compensation. Doc. 194 at 4 ("Defendants do not deny that the Temporary Receiver is entitled to reasonable compensation"). Furthermore, the reasonableness of the Application is further supported by the fact that the FTC did not object to the Application, a factor to be given great weight. *F.T.C. v. Consumer Health Benefits Ass'n*, 2011 WL 5513182, at *3 (E.D.N.Y. Nov. 10, 2011) ("The court may also consider the opposition or acquiescence by the FTC to the compensation applications"), *citing SEC v.* Byers, 590 F.Supp. 2d 637, 644 (S.D.N.Y. 2008).

As explained below, Temporary Receiver's requested fees and expenses are reasonable under the Eighth Circuit's factors outlined in *Federal Oil Mktg. Corp.*, 46 F.2d at 940.

**1. The ability and experience of the attorneys and professionals**

Defendants do not challenge the ability and experience of the attorneys and professionals engaged by Temporary Receiver. Indeed, BFL noted in its business plan that Temporary Receiver had "a high degree of competence and diligence". Def. Ex. 511, p. 5.

### 2. The amount involved

This factor concerns the amount in controversy in the receivership. *See Tracy v. Spitzer-Rorick Trust & Sav. Bank*, 12 F.2d 755, 756 (8th Cir. 1926) (listing among the factors "the amount in controversy, or involved"). Here, the FTC seeks injunctive relief, so the amount involved is the value of the right sought to be enforced. *Bishop Clarkson v. Memorial Hospital v. Reserve Life Insurance Co.*, 350 F.2d 1006, 1008 (8th Cir. 1965).

### 3. The time necessary to accomplish legal tasks

All of the time billed by Temporary Receiver and his professionals was necessary to carry out the duties of the Court's Stipulated Order. (Ex. 1, ¶14). While not an exhaustive list, this work is demonstrated by Temporary Receiver's First and Second Reports, the billing statements submitted to this Court for in-camera review, and the attached affidavit of Temporary Receiver that shows the hours by timekeeper, each of which evidence the time required due to the myriad of tasks, complexity of the receivership, and the difficult circumstances encountered by Temporary Receiver. (Ex. 1-1, 1-2, ¶¶ 10-15). The time expended "is reasonable in light of the complexity of the Receivership assets and entities and the myriad of tasks needing to be handled expeditiously under difficult circumstances." *United States v. Petters*, 2009 WL 1922320, at *3 (D. Minn. June 30, 2009), attached as Exhibit 3.

### 4. The difficulty and intricacy of the legal issues involved

Temporary Receiver's fees and expenses are justified due to the complexity of the receivership estate, the party-agreed and Court-ordered duties of Temporary Receiver, the complex nature of BFL's business, the continuation of BFL operations on a limited basis as compared to a liquidation basis, the poor state of the books and records of Defendant BFL, the amount of filings in this case by the parties, the discovery and depositions, the multiple hearings, the outside motion practice in other courts throughout the United States, the state administrative

employment issues, and the overwhelming amount of communications from BFL's counsel and management to Temporary Receiver and his counsel throughout this receivership. (Ex. 1, ¶ 25); Affidavit of Rubin Brown, Ex. 2).

***Temporary Receiver's Duties and the Nature of This Litigation.*** This case has been significantly litigated. By the date of Temporary Receiver's first Fee Application, there had been 172 docket entries in this case alone. In addition to the budgetary motions and protocol development prepared by Temporary Receiver and submitted to this Court, this litigation has required Temporary Receiver's review of all parties' filings and consideration whether Temporary Receiver would take a position with respect to each respective filing. (Ex. 1, ¶ 23). Further, Temporary Receiver participated in discovery and depositions. (Ex. 1, ¶ 23). Temporary Receiver engaged in separate multi-district filings throughout the United States to assure maintenance of assets in states where BFL operates or has assets, has initiated litigation efforts to stay District of Kansas cases 14-02159 and 13-02617 previously filed against BFL, and has tracked the appeal in Case No. 14-3286 in the U.S. Court of Appeals for the Eighth Circuit concerning this Court's denial of Plaintiff Kyle Alexander's motion to intervene. (Ex. 1, ¶ 24).

***Communication and Requests.*** Throughout the interim period, Temporary Receiver and his team worked closely with BFL management, responded to continuous communication from BFL management and counsel, and maintained frequent interaction in order to run the company and carry out the duties of the Stipulated Interim Order. (Ex. 1, ¶¶ 21,22). The attached chart is reflective, but not exhaustive, of the continuous communications and requests. (Ex. 1-6).

***State of BFL's Records.*** BFL's books and records were in disarray when the company entered receivership. This poor recordkeeping resulted in a significant increase in fees by both

Temporary Receiver and RubinBrown. *See* (Ex. 1, ¶¶ 36, 37; Ex. 2, 2-1 (averring that its fees were approximately 40 % higher due to the state of BFL's records)).

***Complicated Transfer of Bitcoin Assets.*** The transfer of the bitcoin assets pursuant to the Stipulated Interim Order required detailed planning to transfer and protect the assets in light of the potential exposure of the novel and sophisticated process for transfer and storage of bitcoins. (Ex. 1, ¶ 53). The complexity of this issue, the care with which Temporary Receiver and his team approached the issue, and the significant work involving Temporary Receiver's team in conducting the transfer is detailed in Temporary Receiver's Second Report and further in Exhibit ¶ 54, 1-14.

**5. The results attained**

Temporary Receiver's First and Second Reports detail the results obtained and the accomplishment of the duties required by the Stipulated Interim Order. These actions included identifying and preserving millions of dollars in liquid and inventory assets, initiating and conducting litigation to preserve the company's assets, maintaining control over the BFL facility, communicating with and supervising BFL management and operations including Bruce Bourne, Debbie Hernandez, and Justin Rowden, implementing previously undeveloped protocol for payment of vendors, the payment of vendors to maintain operations, analyzing and handling claims against BFL, coordinating with various professionals including Rubin Brown, MarksNelson, BKD, and United Lex, and undertaking other duties as required by the Stipulated Interim Order and this Court. (Ex. 1, ¶ 61). Further, BFL does not challenge the results obtained. Other than arguments concerning duplication or unnecessary work (which are discredited, as addressed *infra* in Section III) BFL does not challenge the results obtained by Temporary Receiver.

### 6. The amount charged by attorneys of equal standing and ability.

"A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated." *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851-52 (8th Cir. 2002). Further demonstrating this Court's discretion, in a complex matter, the relevant market "may extend beyond the local geographic community" and include the national market or a market for a particular legal specialization. *Casey v. City of Cabool*, Mo., 12 F.3d 799, 805 (8th Cir. 1993). Importantly, Defendants "may not object to the fee request 'based on the general proposition that the fee sought is simply too much.'" *FTC v. Cent. Coast Nutraceuticals, Inc.*, No. 10 C 4931, 2011 WL 2135208, at *1 (N.D. Ill. May 25, 2011) (citations omitted). Temporary Receiver's rates charged are fair compared to attorneys of equal standing and ability. (Ex. 1, ¶ 13). In fact, Temporary Receiver charges less than BFL's law firm, Polsinelli. (Ex. 1, ¶ 13, 1-5.) Further, Temporary Receiver and his counsel reduced their fees from their Kansas City-market rate by 30 percent. (Ex. 1, ¶ 7, 11-12). This discount further demonstrates the reasonableness of the fees. *FTC v. Consumer Health Benefits Ass'n*, 2011 WL 5513182, at *2 (E.D.N.Y. Nov. 10, 2011) (citations omitted) ("These discounts bespeak recognition by the Receiver that 'receivers and attorneys engaged in the administration of estates in the courts of the United States ... should be awarded only moderate compensation.').

## II. Defendants Are Not Entitled to Review Temporary Receiver's and His Counsel's and Consultants' Billing Statements to Determine the Reasonableness of the Fees

### A. In-camera review of Temporary Receiver's counsel's billing records is necessary to protect and preserve the attorney-client privilege

Temporary Receiver has submitted his billing records for in-camera review. This is a reasonable action under the current circumstances of this case that allows the Court to evaluate the tasks performed while preserving the attorney-client privilege.

A sister district court in this Circuit rejected a demand for billing statements made by a party objecting to a receiver's fee application. *See Petters*, 2009 WL 1922320, at *3 (attached as Exhibit 3). In *Petters*, the objecting party alleged the receiver had "not sufficiently delineated the fees and costs attributable to each particular defendant" and that "the billing records underlying the fee petitions are not publicly disclosed and thus leave creditors unable to determine whether the fees and expenses were actual, reasonable, and necessary." *Id.* at *1. The receiver in *Petters*, like Temporary Receiver here, reviewed itemized statements of his professionals showing the fees and costs incurred, moved the Court for approval of the fees and costs he found to be reasonable and necessary, and then submitted the itemized billing statements to the district court for independent, in camera review. *Id.* (detailing the "protocol for each fee application to date"). Like Defendants here, the objecting party argued it was "entitled to view the itemized statements underlying the fee petitions to determine whether the services were reasonable, necessary, and beneficial to the receivership" and demanded "that the billing records supporting the fee petitions be redacted and publicly disclosed." *Id.* The *Petters* court denied this request, relying on Eighth Circuit case law and citing several concerns also present in this case:

> A. In Camera Review
>
> [The] request to require that the billing records supporting the fee petitions be redacted and publicly disclosed is neither practical nor necessary. A district court has the discretion to require in camera review of fee petitions in receivership cases to protect and preserve the attorney-client privilege. *Fed. Sav. and Loan Ins. Corp. v. Ferm*, 909 F.2d 372, 374–75 (9th Cir. 1990). *See also Minnesota Supply Co. v. Raymond Corp.*, 472 F.3d 524, 545 n. 14 (8th Cir. 2006) (refraining from deciding the moot issue of whether the district court's in camera review of attorney invoices was proper, but "remind[ing] parties that the District Court has substantial discretion in awarding fees and costs.").
>
> …
>
> Requiring public disclosure of redacted billing statements would not only be burdensome given the complexity of the case, but would also create the risk of inadvertently disclosing confidential and protected information.

*Petters* at *2.

As the *Petters* court held, in camera review of fee petitions in receivership cases is necessary to protect and preserve the attorney-client privilege. Indeed, a receiver holds the attorney-client privilege as to receivership privileged communications between the receiver and his legal counsel, and his partners and associates. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 105 S. Ct. 1986, 85 L. Ed. 2d 372 (1985); *see also Shannon v. Superior Court*, 217 Cal.App.3d 986, 995-96 (Cal. Fifth Dist. 1990). The policy reasons for this rule are manifest:

> The receiver may also be required to defend against an effort by the parties to remove him or her for claimed deficiencies or wrongdoing on his or her part as the receiver. It is conceivable the receiver may come to take issue with, and seek review of, a ruling of the court. The receiver's ability to independently carry out his or her fiduciary responsibilities would be seriously undermined, if not wholly destroyed, were he or she unable to freely and fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the [receiver] may have adequate advice. The absence of the privilege would convert the attorney habitually and inevitably into a mere informer for the benefit of the [receiver's] opponent.

*Shannon*, 217 Cal. App. 3d. at 995-96 (internal citations omitted).

Like the *Petters* and *Shannon* cases, the circumstances of this case and the fact that BFL and its counsel have threatened Temporary Receiver with objections and future litigation over alleged damages, are sufficient for this Court to deny Defendant's request for Temporary Receiver's billing statements. (Ex. 1 ¶ 44, 1-12). In particular, Defendants' counsel made the following threats of potential litigation against Temporary Receiver:

- With respect to the court-ordered transfer, Counsel for BFL states that "Defendants certainly **<u>reserve all rights, claims, causes of action, etc. against both the FTC and the Receiver</u>** in connection with any loss or damage resulting from this transfer." (Ex. 1-11 (Email chain dated 10/24/2014) (emphasis added)).

- Regarding the sale of company assets, counsel for BFL stated: "We object. We will object to your motion. You secured this asset which was located at Mr. Zerlan's house without full disclosure. He is the registered owner of the gun. If

you sell it, you will have to **contend with that and whatever issues it raises**. Your client did not want any guns at the premises and as I understood it said he would feel better if we turned this gun over. You are a temporary receiver, not the owner of the business. Being "directed and authorized" to exercise your discretion ("advisable or necessary") **doesn't insulate you from liability or accountability for your actions.** Please advise in writing the basis for your decision to exercise your discretion and sell this firearm during an interim period." (Ex. 1-11 (Email chain dated 10/24/2014) (emphasis added)).

- Counsel for BFL states to FTC (copying Temporary Receiver) that "the Court has only appointed him receiver based on our stipulation to it in the interim order. You won't be so lucky next time." (Ex. 1-11 (Email chain dated 10/24/2014).

- In response to Temporary Receiver's decision to preclude use of company resources for attendance at a trade show, counsel for BFL states that "Butterfly Labs **objects, and notes the ongoing prejudice** and obstacles in repairing its name and reputation." (Ex. 1-11 (Email chain dated 10/17/2014) (emphasis added)).

As a result of emails like those above, Temporary Receiver anticipates, then and now, having to defend himself against BFL in a future action. (Ex. 1, ¶ 45). Consequently, Temporary Receiver required consultation with his attorneys and other professionals to defend his position and decisions in anticipation of litigation with BFL in the future. (Ex. 1, ¶ 45). Therefore, Temporary Receiver's billing statements reflect attorney-client communications. (Ex. 1, ¶ 8). This Court should reject Defendants' attempt to compel the production of these privileged billing statements.

**B. There is no procedure requiring production of billing statements. The circumstances of this case, like those in *Petters*, do not warrant production.**

Defendants cite no law requiring Temporary Receiver to supply them with more detailed information about the fees incurred during this period. Defendants' reference to four FTC receivership fee applications where the receiver's counsel submitted itemized bills does not demonstrate a legal standard requiring disclosure of Temporary Receiver's privileged billing statements. To the contrary, in one of these cases where the receiver chose to submit billing statements, *FTC v. Money Now Funding LLC, et al.*, Case No. 13-01583-ROS, that court had

previously issued a procedures order in the case expressly noting that fee applications ***did not*** need to be accompanied by itemized billing statements and that the receiver should instead make its itemized statements available to the court for in-camera review upon judicial request. *See* Doc. No. 105 at 4-5, No. 13-01583-ROS (D. Ariz. Sept. 30, 2013), attached hereto as Exhibit 4. Here, no procedures order exists regarding the submission of billing statements and Temporary Receiver has already submitted its billing statements to the Court for in-camera review. Under the circumstances of this case, like those discussed in *Petters*, this Court should not require Temporary Receiver to produce its privileged billing statements to Defendants.

## III. Defendants Misstate the Record in an Attempt to Challenge Temporary Receiver's Discharge of His Court-Ordered Duties

Defendants' Objections contain several misstatements regarding actions taken by Temporary Receiver and his professionals in an attempt to argue that Temporary Receiver's Application seeks excessive or unnecessary fees. Temporary Receiver is obligated to correct the record.

***Storage Wallet Transfer.*** Defendants argue that BFL conducted the wallet transfer, contending that Temporary Receiver has charged for an expense that is unnecessary or duplicative.[1] In particular, Defendants contend that "BF Labs actually transferred the bitcoin wallet, not United Lex or BKD Forensics . . . Admittedly, UnitedLex and BKD Forensics were present and worked on a transfer." (Doc. 194, p. 7). This is a misstatement of the facts. The majority of the work was conducted by Temporary Receiver and his consultants during two time periods: before the transfer as they developed the transfer protocol for court approval, and after as they conducted the transfer at Temporary Receiver's office on November 6, 2014. (Ex. 1, ¶

[1] The wallet transfer occurred on November 6, 2014. This activity is not part of the Application, but Defendants have raised it as an example of alleged duplication by Temporary Receiver. Therefore, Temporary Receiver will respond to this allegation as part of this reply.

54). The transfer log is a document created contemporaneously with the transfer, which confirms that Temporary Receiver's consultants, not BFL, controlled the transfer and conducted the majority of the work necessary for the transfer. (Ex. 1, ¶ 54). Temporary Receiver's consultants led implementation of the protocol, installed the software necessary for transferring and storing the bitcoin, prepared all backup and redundancy protocols (fragments) in the event of a lost passphrase or wallet, created all new wallets, and instructed BFL when and where to send the transfer of bitcoins. (Ex. 1, ¶ 56). While technically accurate that BFL representatives may have "transferred" the bitcoin during a series of transfers on November 6, 2014, Temporary Receiver's consultants directed all of the transfers. (Ex. 1, ¶ 55). Given the totality of the actions undertaken that day by Temporary Receiver's consultants, Defendants' statement to this Court misconstrues the facts.

***Preservation of ESI.*** Defendants allege duplication by United Lex by copying computers and other BFL information at the facility. BFL knows that Temporary Receiver was ordered to copy all information at the facility, and then again re-ordered to copy all information pursuant to the Stipulated Interim Order. (Doc. 54). Temporary Receiver took over operations on September 19, 2014. Modus conducted its copying before September 19, 2014 as a result of previously filed lawsuit against BFL. There was a gap in time that required Temporary Receiver to make a copy of BFL's data in order to comply with Stipulated Interim Order. (Ex. 1, ¶ 52). Moreover, BFL did not inform Temporary Receiver or the FTC about the Modus preservation efforts until after September 19, 2014. (Ex. 1, ¶ 48). BFL's argument omits this key information for the Court.

***RubinBrown and Marks Nelson.*** Defendants allege that RubinBrown expenses are unnecessary because it reviewed "BFL's assets, liabilities and proposed business plan" whereas

Marks Nelson "significant background" with BFL would obviate the need for RubinBrown's review. The Stipulated Interim Order provides Temporary Receiver with the authority to hire accountants. (Doc. 54, p. 13). RubinBrown was necessary for Temporary Receiver's review of the proposed business plan and the assets and liabilities of BFL. (Ex. 1, ¶ 34). Marks Nelson did not review and provide comments to Temporary Receiver regarding the proposed business plan. (Ex. 1, ¶35). Marks Nelson and RubinBrown conducted very different functions, both of which were necessary for Temporary Receiver to comply with the Stipulated Interim Order. (Ex. 1, ¶ 35).

***Shipping.*** Temporary Receiver did not prohibit shipping. The Court's Stipulated Interim Order allowed for shipping "under conditions acceptable to the Temporary Receiver." (Doc. 54, p. 16). Shipping required customer communication and, if more than 345 were shipped, testing of new machines. Temporary Receiver requested a communication plan, but BFL did not provide a communication plan that was acceptable to Temporary Receiver because the communication plan proposed by BFL appeared to be one-sided and forward looking beyond the interim period. (Ex. 1, ¶ 33). Further, Temporary Receiver requested a testing protocol, but this was denied by counsel for BFL. (Ex. 1, ¶ 31). Given the responses by BFL and the limited amount of time left within the interim period, the conditions were unacceptable for Temporary Receiver to allow shipping during the interim period. (Ex. 1, ¶ 26-33).

***Receiver's Duties.*** Defendants represent that the ex parte order required a determination of "whether BF Labs can be operated lawfully and profitably" and state that "Temporary Receiver did not address [this issue] during the billing period (or since)." (Doc. 194 at 7-8). Yet, as Defendants are aware, an analysis of "lawfulness and profitability" was <u>not</u> required by the Stipulated Interim Order. (Doc. 54). The Stipulated Interim Order required analysis of factors for

this Court to make a determination regarding feasibility. *Id.* Defendants do not dispute Temporary Receiver's Second Report made a determination regarding feasibility and closely analyzed BFL's business plan. *See* Doc. 192.

## IV. Discovery and A Hearing on Temporary Receiver's Fees and Expenses is Unnecessary

The Court has sufficient information to conduct its review of its Temporary Receiver's fee application without a hearing and based on the current information submitted to the Court. The Court is intimately acquainted with the legal proceedings for which the fees have been incurred and is well situated to assess their reasonableness in accordance with the requirements of the Stipulated Interim Order. And, trial courts are themselves experts as to the reasonableness of attorneys' fees. *See, e.g., Brown v. Culpepper*, 561 F.2d 1177, 1177 (5th Cir. 1977). Further, this Court is in an even better position to assess the reasonableness of Temporary Receiver's fees than that of a trial court assessing the reasonableness of non-receivership counsel, as the Court here is analyzing the fees incurred by its own appointee, who (1) was tasked with carrying out the Court's orders, (2) communicated frequently with the Court, and (3) acted at the Court's direction and pursuant to the Court's instructions.

## CONCLUSION

For all the reasons set forth herein and in Temporary Receiver's Application, Temporary Receiver respectfully requests this Court grant its First Application for Allowance of Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses for the Period September 18, 2014 through October 31, 2014 (the "Application"), and other relief as the Court deems just and proper.

SPENCER FANE BRITT & BROWNE LLP

/s/ Bryant T. Lamer

Bryant T. Lamer MO #57355
Lisa Epps Dade MO #48580
Andrea M. Chase MO #66019
Lucinda H. Luetkemeyer MO #63983
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
Telephone: (816) 474-8100
Facsimile: (816) 474-3216
blamer@spencerfane.com
lepps@spencerfane.com
achase@spencerfane.com
lluetkemeyer@spencerfane.com
**ATTORNEYS FOR TEMPORARY RECEIVER ERIC L. JOHNSON**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 10th day of December 2014, a true and correct copy of the foregoing was filed electronically with the United States District Court for the Western District of Missouri using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system.

/s/ Bryant T. Lamer

An Attorney for Temporary Receiver
Eric L. Johnson