IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:14-CV-00815-BCW |
| | ) | |
| BF LABS INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**TEMPORARY RECEIVER ERIC JOHNSON'S SECOND APPLICATION FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES FOR THE PERIOD NOVEMBER 1, 2014 THROUGH NOVEMBER 30, 2014**

Eric Johnson, the duly-appointed Temporary Receiver in the captioned action ("Temporary Receiver"), files his Second Application for Allowance of Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses for the Period November 1 through November 30, 2014 (the "Second Application"), seeking compensation and reimbursement of expenses for the period November 1 through November 30, 2014 (the "Second Interim Period"). In support of the Second Application, Temporary Receiver states as follows:

**I.      Background**

1. On September 18, 2014, the Court appointed Eric Johnson Temporary Receiver for defendant BF Labs, Inc. ("BFL"). Doc. 9.

2. To assist in his Receivership duties, Temporary Receiver retained the following professional firms for which he is seeking compensation for under the Application:

   a.      **Spencer Fane Britt & Browne LLP ("Spencer Fane").** Temporary Receiver retained Spencer Fane to provide legal services in the areas of corporate, commercial, employment and insurance law and litigation. Temporary Receiver believed

it necessary to retain a firm capable of committing substantial resources to a variety of legal areas to assist Temporary Receiver in fulfilling his duties. Attorneys and Employees of Spencer Fane were instrumental in assisting Temporary Receiver with maintaining the control and custody of BFL's information, securing BFL's assets, supervising the limited operations conducted by BFL during the Second Interim Period, and providing legal counsel to Temporary Receiver.

b. **RubinBrown LLP ("RubinBrown").** Temporary Receiver retained RubinBrown to provide forensic consulting services, advise on the financial stability of BFL, coordinate with BFL's accounting team (MarksNelson LLC), and provide analysis of BFL's assets, liabilities and proposed business plan. The complexity of the bitcoin business and BFL's incomplete financial records required a large accounting firm that was able to devote significant resources to this effort.

c. **UnitedLex Corporation ("UnitedLex").** Temporary Receiver retained UnitedLex to ensure the security of BFL's electronic information and servers and to advise on the bitcoin industry. Further, United Lex assisted with the development and preparation of the bitcoin transfer protocol and in conducting the transfer of bitcoin from BFL's storage wallet to the Court-controlled bitcoin wallet. Finally, UnitedLex imaged the computers and other electronic devices not imaged by the FTC.

d. **BKD Forensics.** Temporary Receiver retained BKD Forensics to ensure the safe and secure transfer of bitcoins and to advise on bitcoin mining operations. Given the unique nature of bitcoin, Temporary Receiver believed it was necessary to retain professionals with bitcoin knowledge and expertise. Further, BKD assisted with the

development and preparation of the bitcoin transfer protocol and in conducting the transfer of bitcoin from BFL's storage wallet to the Court-controlled bitcoin wallet.

3. On October 2, 2014, following negotiation by the parties and submission to the Court, the Court issued a Stipulated Interim Order (the "Stipulated Order") continuing the receivership of BFL. Doc. 54.

4. Section XIV of the Stipulated Order governs "Compensation for Temporary Receiver," and states that "the Temporary Receiver and all personnel hired by the Temporary Receiver as herein authorized, including counsel to the Temporary Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order, and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by or in the possession or control of, or which may be received by, the Receivership Defendant." Doc. 54 at Section XIV.

5. On November 17, 2014, Temporary Receiver filed his Motion to Clarify Stipulated Interim Order Related to Timing of Filing Fee Application. Doc. 162.

6. On November 21, 2014, Temporary Receiver submitted his First Application for Allowance of Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses for the Period of September 19, 2014 through October 31, 2014 (the "First Application"). Doc. 173. As indicated in its title, the First Application covered the period of time from September 19, 2014 through October 31, 2014 (the "First Interim Period").

7. On December 5, 2014, BFL objected to the First Application. Doc. 194. In its objection, BFL admitted that Temporary Receiver is due reasonable compensation. Doc. 194 at 4. The FTC did not object to the First Application.

8. On December 10, 2014, Temporary Receiver filed its Reply in Support of the First Application. Doc. 199.

9. On December 12, 2014, the Court entered its Order denying Plaintiff Federal Trade Commission's motion for preliminary injunction, asset freeze, appointment of receiver, and other equitable relief (the "December 12 Order"). Doc. 201. In the December 12 Order, the Court set a telephonic conference for December 22, 2014 to discuss the efficient wind down of the Temporary Receivership.

10. On December 15, 2014, the Court entered its Order clarifying that the temporary receivership remains in place pending further Order from the Court related to the efficient wind down of the Temporary Receivership (the "Clarification Order"). Doc. 204.

11. On December 16, 2014, Temporary Receiver filed his Motion to Approve Temporary Receivership Wind Down Procedures. Doc. 206.

**II.   Fees Sought in the Second Interim Period**

12. For the Second Interim Period, Temporary Receiver incurred the following fees and expenses as follows[1]:

    a.   **Temporary Receiver:** $43,095.50 in fees and $0.00 in expenses, for a total of $43,095.50. Temporary Receiver's fees reflect a voluntary 30 percent (30%) reduction in his standard hourly rate. This receivership has commanded near constant full time attention of Temporary Receiver. During the Second Interim Period (approximately 30 days), Temporary Receiver billed approximately 175.9 hours on this case. Temporary Receiver's standard hourly rate is $350 per hour. With the 30 percent reduction, his

---

[1] The relevant billing statements of Temporary Receiver, Spencer Fane Britt & Browne LLP, RubinBrown LLP, BKD Forensics and UnitedLex for the Second Interim Period are being provided to the Court for *in camera* inspection, for the reasons outlined in Temporary Receiver's Reply in Support of its First Application, Doc. 199 at 7-11, which are fully incorporated herein. These reasons include the fact that the billing statements include attorney-client privileged information. Ex. 1, ¶9.

standard hourly rate is $245 per hour, which resulted in a savings to the receivership estate of $18,469.50. Ex. 1, ¶7.

      b.    **Spencer Fane:** $176,180.02 in fees and $1,851.90 in expenses, for a total of $178,031.92. Spencer Fane's fees reflect a voluntary 30 percent (30%) reduction of each timekeeper's standard hourly rate. This discount amounted to a $75,505.73 cost saving to the Receivership Estate. Spencer Fane also did not charge for telephone, facsimile, or computerized legal research. Ex. 1, ¶7, 10-11. Two charts showing a summary of the various timekeepers, rates, hours, and general description of work performed are attached as Exhibits 1-1 and 1-2.

      c.    **RubinBrown:** $40,667.82 in fees and $2,332.18 in expenses, for a total of $43,000. RubinBrown's fees reflect a voluntary 11 percent (11%) reduction. This discount amounted to a $5,321.18 costs saving to the Receivership Estate. Ex. 1, ¶8.

      d.    **UnitedLex:** $10,706.50 in fees and $75.00 in expenses, for a total of $10,781.50. Ex. 1, ¶8. United Lex's fees reflect an 8 percent (8%) discount. Ex. 1, ¶12.

      e.    **BKD Forensics:** $4,377.10 in fees and $0.00 in expenses, for a total of $4,377.10. Ex. 1, ¶8.

13. For the Second Interim Period, Temporary Receiver incurred a total of $275,026.94 for services rendered on behalf of Temporary Receiver, including those services Temporary Receiver performed himself, and $4,259.08 in actual and necessary out-of-pocket expenses (collectively, the "Second Interim Period Fees").

14. Like the fees for the First Interim Period, Temporary Receiver, Spencer Fane, RubinBrown, UnitedLex, and BKD Forensics have not received payment for any of their fees and expenses for the Second Interim Period.

5

WA 6455281.4

Case 4:14-cv-00815-BCW   Document 212   Filed 12/18/14   Page 5 of 14

15. Based on the voluntary reduction in the professional fees of Temporary Receiver, Spencer Fane, and RubinBrown, the Receivership estate saved a total of $100,276.41.

16. Temporary Receiver seeks the Court's Order authorizing allowance of and immediate payment of the Second Interim Period Fees. Temporary Receiver and his team have not received any fees or repayment of expenses since it began working on this matter beginning in the middle of September.

### III. Standards for Approval of Receivership Fee Application

17. Courts are vested with great discretion in determining who shall pay the cost and expenses of receiverships. *Burnrite Coal Briquette Co. v. Riggs,* 274 U.S. 208 (1927). *See also Lewis v. Gramil Corp.*, 94 So. 2d 174 (Fla. 1957); *Deauville Corp. v. Blount*, 34 So. 2d 537 (Fla. 1948). Costs and expenses of a receivership, including compensation for the receiver, counsel fees, and obligations incurred by him or her in the discharge of his or her duties, constitute a first charge against the property or funds in receivership, irrespective of who is ultimately successful in the suit or is ultimately liable to pay them. *United States v. Weitzel*, 246 U.S. 533 (1918); *Palmer v. Texas*, 212 U.S. 118 (1909).

18. A receiver appointed by a court who reasonably and diligently discharges his duties is entitled to be fairly compensated for services rendered and expenses incurred. *Gaskill v. Gordon*, 27 F.3d 248 (7th Cir. 1994) ("[I]f a receiver reasonably and diligently discharges his duties, he is entitled to compensation"); *see generally* 65 Am. Jur. 2d, *Receivers* § 219 (2d ed. 2008); Jeffrey F. Ghent, Annotation, "Measure and Amount of Compensation of Receiver Appointed By Federal Court," 6 A.L.R. Fed. 817, §§ 3–9 (1971 & Supp. 2008). The amount of the compensation is to be determined by the court in the exercise of its reasonable discretion. *Gaskill*, 27 F.3d at 253; *United States v. Code Prods. Corp.,* 362 F.2d 669, 673 (3d Cir. 1966);

*Crites, Inc. v. Prudential Ins. Co. of Am.*, 322 U.S. 408, 418 (1944); *Commodity Credit Corp. v. Bell*, 107 F.2d 1001, 1001 (5th Cir. 1939).

19. "It is so well established that allowances to a receiver and his counsel are largely in the discretion of the court exercising control over them, that it is unnecessary to review at length the authorities on the subject." *Trustees Corp. v. Kansas City M. & O. Ry. Co.*, 26 F.2d 876, 880 (8th Cir. 1928). "The compensation is usually determined according to the circumstances of the particular case, and corresponds with the degree of responsibility and business ability required in the management of the affairs entrusted to him, and the perplexity and difficulty involved in that management." *Id.*, at 881 (quoting *Stuart v. Boulware*, 133 U.S. 78, 10 S.Ct. 242, 244, 33 L.Ed. 568 (1890)).

20. "A receiver is an officer of the court, and is entitled to reasonable compensation, including a reasonable sum for attorney's fees." *Southeast Bank, N.A. v. Ingrassia*, 562 So.2d 718, 721 (Fla. App. 3d Dist. 1990) (citations omitted). Such right also includes amounts allowed for a receiver's hired professionals, including his accountants and attorneys. *Johnson v. Kruglak*, 246 So. 2d 617, 619-20 (Fla. App. 3d Dist. 1971). These fees are classed as receiver's expenses, *County Corp. of Md. v. Semmes*, 182 A. 273 (Md. 1936), and, like any other administrative expense, take precedence over pre-existing liens on the funds or property in receivership. *Foxley Cattle Co. v. Midwest Soya Int'l, Inc.*, 585 N.W.2d 231 (Iowa 1998).

21. In setting a reasonable fee, the court is to consider "all of the factors involved in a particular receivership." *Gaskill*, 27 F.3d at 253; *see also S.E.C. v. Byers*, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008). Factors considered in determining reasonable compensation for a receiver's attorney include the attorney's ability and experience, the amount involved, the time necessary to accomplish legal tasks, the difficulty and intricacy of the legal issues involved, the

results attained, and the amount charged by attorneys of equal standing and ability. *Federal Oil Mktg. Corp. v. Cravens*, 46 F.2d 938, 940 (8th Cir. 1931); *see also* 6 A.L.R. Fed. 817, at §§ 7–12 (discussing factors).

IV. **Temporary Receiver's requested fees and expenses are reasonable under the Eighth Circuit's factors outlined in *Federal Oil Mktg. Corp.***

A. **The ability and experience of the attorneys and professionals**

22. Both Temporary Receiver and the attorneys and professionals engaged by Temporary Receiver have a wide range of ability and experience for which they were retained. Ex. 1, ¶9. Indeed, BFL noted in its business plan that Temporary Receiver had "a high degree of competence and diligence". Def. Ex. 511 at 5.

B. **The amount involved**

23. This factor concerns the amount in controversy in the receivership. *See Tracy v. Spitzer-Rorick Trust & Sav. Bank,* 12 F.2d 755, 756 (8th Cir. 1926) (listing among the factors "the amount in controversy, or involved"). Here, the FTC sought injunctive relief, so the amount involved is the value of the right sought to be enforced. *Bishop Clarkson v. Memorial Hospital v. Reserve Life Insurance Co.*, 350 F.2d 1006, 1008 (8th Cir. 1965). In terms of assets, Temporary Receiver was charged with the security and preservation of millions of dollars of assets. *See* Doc. 192, Second Report.

C. **The time necessary to accomplish legal tasks**

24. All of the time billed by Temporary Receiver and his professionals was necessary to carry out the duties of the Stipulated Order. Ex. 1, ¶9. While not an exhaustive list, this work is demonstrated by Temporary Receiver's First and Second Reports, the billing statements submitted to this Court for in-camera review, and the attached affidavit of Temporary Receiver that shows the hours by timekeeper, each of which evidence the time required due to the myriad

8

WA 6455281.4

Case 4:14-cv-00815-BCW   Document 212   Filed 12/18/14   Page 8 of 14

of tasks, complexity of the receivership, and the difficult circumstances encountered by Temporary Receiver. *See* Doc. 199 (Reply in Support of First Fee Application, Ex. 1-1, 1-2, Ex. 1, ¶¶ 16-61). The time expended "is reasonable in light of the complexity of the Receivership assets and entities and the myriad of tasks needing to be handled expeditiously under difficult circumstances." *United States v. Petters*, 2009 WL 1922320, at *3 (D. Minn. June 30, 2009).

25. During the Second Interim Period, Temporary Receiver, either himself or directing Spencer Fane, RubinBrown, UnitedLex and/or BKD Forensics, performed the following tasks, among others, pursuant to the Stipulated Order:

    a. Maintained a chain of custody;

    b. Secured and Supervised BFL's business premises;

    c. Conserved, held, and managed all Receivership assets;

    d. Liquidated Receivership assets, developed a Court-approved transfer protocol and transferred the BFL-controlled bitcoin wallets to a Court-controlled wallet;

    e. Addressed various insurance issues;

    f. Prevented the inequitable distribution of Receivership assets and made necessary payments, including maintaining accurate records of receipts and expenditures;

    g. Managed and administered BFL, including coordination of operations with BFL and regular meetings with its management, in addition to preparation of generalized communications to hundreds of consumers regarding the status of the pending Temporary Receivership, and logging and preserving all information submitted by such consumers to the Temporary Receivership;

    h. Prepared the Second Report to the Court, which included the review and assessment of BFL's Business Plan and financials;

      i.      Participated, to the extent appropriate, in all aspects of the captioned case, including both significant motion practice and extensive communications with counsel for the FTC and BFL, prepared for and attended a 30(b)deposition, and hearings with the Court;

      j.      Participated in other pending lawsuits and claims brought against BFL to preserve Receivership assets;

      k.      Worked with Rubin Brown including the business plan analysis, refund liability analysis and asset analysis;

      l.      Worked on Kansas Department of Labor and Revenue matters;

      m.      Reviewed documents from the FTC;

      n.      Worked with BFL management concerning operations and inventory;

      o.      Coordinated the production and categorization of customer voicemail and emails to BFL;

      p.      Worked on the customer communication plan;

      q.      Met with counsel for Meissner, per court order in Case No. 13-02617 (D.Kan.);

      r.      Prepared for and attended the hearing on the preliminary injunction,

      s.      Attended various meetings with the Court.

Ex. 1, ¶17.

**D.    The difficulty and intricacy of the legal issues involved**

26.    Temporary Receiver's fees and expenses are justified due to the complexity of the receivership estate, the party-agreed and Court-ordered duties of Temporary Receiver pursuant to the Stipulated Interim Order, the complex nature of BFL's business, the continuation of BFL operations on a limited basis as compared to a liquidation basis, the state

of BFL's books and records, the amount of filings in this case by the parties, the discovery and deposition, multiple hearings, the state administrative employment issues, and the substantial amount of communications from BFL's counsel and management to Temporary Receiver and his counsel throughout this receivership. Ex. 1, ¶15; Ex. 2.

27. ***Temporary Receiver's Duties and the Nature of This Litigation.*** Temporary Receiver's duties and the nature of this litigation are detailed in Paragraph 25. Ex. 1, ¶ 17.

28. ***Communication and Requests.*** Throughout the Second Interim Period, Temporary Receiver and his team worked closely with BFL management, responded to continuous communication from BFL management and counsel, and maintained frequent interaction in order to run the company and carry out the duties of the Stipulated Order. Ex. 1, ¶19. Further, Temporary Receiver, within approximately 24 hours of the request being made by BFL, reviewed, redacted for confidential customer information, and produced approximately 1,666 emails from his Receiver's email account. Ex. 1, ¶ 20.

29. ***State of BFL's Records.*** The state of BFL's recordkeeping resulted in a significant increase in fees by both Temporary Receiver and RubinBrown. *See* Ex. 1, ¶21; Ex. 2, 2-1 (averring that its fees were approximately 37 % higher due to the state of BFL's records)).

30. ***Complicated Transfer of Bitcoin Assets.*** The transfer of bitcoin assets pursuant to the Stipulated Order required detailed planning to transfer and protect the assets in light of the potential exposure of the novel and sophisticated process for transfer and storage of bitcoins. Ex. 1, ¶ 22; *see also* Doc. 199, Reply in Support of First Fee Application, Exhibit 1-14.

E. The results attained

31. Temporary Receiver's First and Second Reports detail the results obtained and the accomplishment of the duties required by the Stipulated Interim Order. Docs. 192, 193. These actions included identifying and preserving millions of dollars in liquid and inventory

assets, initiating and conducting litigation to preserve the company's assets, maintaining control over the BFL facility, communicating with and supervising BFL management and operations, the payment of vendors to maintain operations, analyzing and handling claims against BFL, coordinating with various professionals including Rubin Brown, MarksNelson, BKD, and United Lex, and undertaking other duties as required by the Stipulated Interim Order and this Court. Ex. 1, ¶ 17.

### E. The amount charged by attorneys of equal standing and ability.

32. "A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated." *Fish v. St. Cloud State Univ.,* 295 F.3d 849, 851-52 (8th Cir. 2002). Further demonstrating this Court's discretion, in a complex matter, the relevant market "may extend beyond the local geographic community" and include the national market or a market for a particular legal specialization. *Casey v. City of Cabool*, Mo., 12 F.3d 799, 805 (8th Cir. 1993). Importantly, a party "may not object to the fee request 'based on the general proposition that the fee sought is simply too much.'" *FTC v. Cent. Coast Nutraceuticals, Inc.,* No. 10 C 4931, 2011 WL 2135208, at *1 (N.D. Ill. May 25, 2011) (citations omitted).

33. Temporary Receiver's rates charged are fair compared to attorneys of equal standing and ability. Ex. 1, ¶ 13. Further, Temporary Receiver and his counsel reduced their fees from their Kansas City-market rate by 30 percent. Ex. 1, ¶¶ 7, 11-12. This discount further demonstrates the reasonableness of the fees. *FTC v. Consumer Health Benefits Ass'n*, 2011 WL 5513182, at *2 (E.D.N.Y. Nov. 10, 2011) (citations omitted) ("These discounts bespeak recognition by the Receiver that 'receivers and attorneys engaged in the administration of estates in the courts of the United States ... should be awarded only moderate compensation.'"). RubinBrown also reduced its fees by approximately 11 percent. Ex. 1, ¶12.

12

WA 6455281.4

Case 4:14-cv-00815-BCW   Document 212   Filed 12/18/14   Page 12 of 14

34. No agreement exists between Temporary Receiver, Spencer Fane, RubinBrown, UnitedLex and/or BKD Forensics and any third party for the sharing of compensation received by any party in connection with the captioned case, except as allowed with respect to the sharing of compensation among the partners and associates of Spencer Fane, RubinBrown, UnitedLex and BKD Forensics, respectively. Ex. 1, ¶16.

35. Temporary Receiver requests that he be authorized to pay himself, Spencer Fane, RubinBrown, UnitedLex and BKD Forensics the Second Interim Fees.

WHEREFORE, Temporary Receiver respectfully requests that the Court enter an Order:

a. authorizing Temporary Receiver to immediately pay himself, Spencer Fane, RubinBrown, UnitedLex and BKD Forensics professional fees in the amount of $275,026.94 and expenses in the amount of $4,259.08; and

b. granting Temporary Receiver such other and further relief as may be just.

Respectfully submitted,

SPENCER FANE BRITT & BROWNE LLP

/s/ Bryant T. Lamer
Bryant T. Lamer        MO #57355
Lisa Epps Dade         MO #48580
Lucinda H. Luetkemeyer MO #63983
Andrea M. Chase        MO #66019
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
Telephone:    (816) 474-8100
Facsimile:    (816) 474-3216
blamer@spencerfane.com
lepps@spencerfane.com
lluetkemeyer@spencerfane.com
achase@spencerfane.com

**ATTORNEYS FOR TEMPORARY RECEIVER ERIC L. JOHNSON**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 18th day of December 2014, a true and correct copy of the foregoing was filed electronically with the United States District Court for the Western District of Missouri using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system.

      /s/ Bryant T. Lamer
An Attorney for Temporary Receiver
Eric L. Johnson