UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>BF LABS, INC., et al.<br><br>　　　Defendants. | CASE NO. 4:14-cv-00815-BCW<br><br>**PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER DENYING PRELIMINARY INJUNCTION AND SUGGESTIONS IN SUPPORT THEREOF** |

Pursuant to Federal Rule of Civil Procedure 59(e), Plaintiff Federal Trade Commission ("FTC") respectfully moves the Court to reconsider its Order denying Plaintiff's Motion For Preliminary Injunction ("Order"). (Dkt. No. 201.) Rule 59(e) motions for reconsideration of rulings other than final judgments are deemed Rule 60(b) motions. *Elder Keep v. Aksamit*, 460 F.3d 979, 984 (8th Cir. 2006). Per Rule 60(b), relief may be granted under several different circumstances, including mistake. Fed. R. Civ. P. 60(b)(1). The Eight Circuit has interpreted mistake in this context as "judicial inadvertence," *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 460-61 (8th Cir. 2000), relief for which is granted for "obvious errors of law that are apparent on the record." *Jo Ann Howard & Assocs. v. Cassity*, Case No. 4:09-cv-01252, 2014 U.S. Dist. LEXIS 95896, *19-20 (E.D. Mo. July 15, 2014). The FTC seeks reconsideration on three such errors: (1) the Order required the FTC to prove that Defendants did not intend to meet their delivery dates to demonstrate likelihood of success on the merits; (2) in balancing the equities, the Order did not address the necessity of preserving assets for consumer redress; and (3) the Order determined that the low likelihood of recurrence of illegal conduct precludes

preliminary injunctive relief under the FTC Act. Each of these errors contradicts well-settled precedent.

I.  **THE ORDER FOCUSES ON DEFENDANTS' MINDSET AND IGNORES WELL-SETTLED PRECEDENT THAT REQUIRES ANALYSIS OF WHETHER CONSUMERS WERE MISLED**

The Order acknowledges that it is an "undisputed principle" that Section 5(a) does not require a showing of scienter or intent on the part of the Defendant. (Order at 5-6.) Nonetheless, it concludes, "a statement about a defendant's intended future conduct is false when the speaker does not *intend* to perform at the time the statement is made." (*Id.* at 6 (emphasis added); *see also id.* n.7.)

   A.  **Falsity Or Likeliness To Mislead Under the FTC Act Is Determined From The Perspective Of The Consumer**

Longstanding Eight Circuit precedent directs courts to analyze whether a claim is false or misleading under the FTC Act from the standpoint of the *consumer*, not the mental state of the defendant. *Benrus Watch Co. v. FTC*, 352 F.2d 313, 318 (8th Cir. 1965) ("whether a trade practice ... is deceptive depends ... on the impression which such a practice makes on the minds of the consuming public."); *see also Curtis Lumber Co. v. La. Pac. Corp.,* 618 F.3d 762, 779 (8th Cir. 2010) (trade practices are deceptive under the FTC Act if they are likely to deceive or have a capacity to deceive a reasonable consumer). (*See also* Dkt. No. 193 at 13-14 ¶ 6.) The focus on the consumer perspective rather than the defendant's mental state makes sense given that the "central purpose" of Section 5 is to abolish "caveat emptor" and to give "the consumer the right to rely upon representations of facts as the truth." *FTC v. Freecom Commc'ns Corp.*, 401 F.3d 1192, 1202 (10th Cir. 2005). As such, "[t]he cardinal factor is the probable effect which the advertiser's handiwork will have upon the eye and mind of the reader." *Id.* (citing *FTC v. Sterling Drug, Inc.*, 317 F.2d 669, 674 (2d Cir. 1963)). The Eighth Circuit has recognized as

2

much, holding that consumers are entitled to rely upon the merchant's representations. *Am. Life & Accid. Ins. Co. v. FTC*, 255 F.2d 289, 293 (8th Cir. 1958). Underscoring that the proper inquiry into whether a claim is false or misleading revolves around the consumer's perspective, the Eighth Circuit held that even in the absence of proof of deception, an advertisement can violate Section 5 if it has the capacity or tendency to mislead.[1] *Id*. ("In order best to implement the prophylactic purpose of the statute, it has been consistently held that advertising falls within its proscription not only when there is proof of actual deception but also when the made have a capacity or tendency to deceive, i.e., when there is a likelihood or fair probability that the reader will be misled."); *see also Curtis Lumber,* 618 F.3d at 779 (trade practices are deceptive under the FTC Act if they are likely to deceive or have a capacity to deceive a reasonable consumer).

Contrary to this precedent, the Order's reasoning denies the consumers in this case the right to rely on Defendants' representations. By requiring a showing that Defendants did not intend to perform in order to demonstrate falsity, the Court has added a scienter element for claims of future performance under the FTC Act. Indeed, the only way the FTC would succeed under the Court's articulated standard is to prove scienter, specifically by proffering evidence that Defendants made the shipment representations while not *intending* to meet them. The requirement that the FTC demonstrate that Defendants did not intend to meet their delivery promises subjects their customers to caveat emptor, the outcome that Section 5 was enacted to prevent. No reason exists why the consumers in this case should receive less protection than consumers who may fall prey to other types of deceptive claims.

---

[1] Even though actual deception is not required, the FTC has presented evidence of thousands of complaints showing that consumers were actually deceived. (Dkt. No. 193 at 5 ¶ 20.) *See also FTC v. Bay Area Bus. Council, Inc*., 423 F.3d 627 (7th Cir. 2005) ("Any doubt that consumers were misled is dispelled by the number of consumer complaints.").

B.   **No Legal Basis Exists For The Conclusion That Claims Of Future Performance Require A Showing Of Intent**

The Order does not cite a single case finding an exception to the well-established rule that intent is not needed to prove any element of an FTC Act violation, and the FTC has not located any such case. The cases upon which the Order relies do not justify creating such an exception. *United States v. Ukrainian Village Pharmacy, Inc.*, No. 13-3883, 2014 WL 6783033 (7th Cir. Dec. 3, 2014),[2] dealt with the False Claims Act, which requires a showing of knowing falsity. *Id*. at *2. The plaintiff pled that the alleged violator agreed that it would not accept kickbacks while *knowing* that it would. *Id.* ("The complaint alleges that the pharmacy knew when it made the statement that other pharmacies in the Bogacheck network had been giving kickbacks, and knew that as a member of the network it would do so as well."). Therefore, the Seventh Circuit's analysis of whether the alleged violator's statement was false when made arises from the language of the complaint itself and the applicable statutory requirements, not a legal standard universally governing the concept of falsity or tendency to mislead. Here, the FTC did not allege that the defendants knew that the statements were false when made, nor was it required to under the FTC Act. Thus, the analysis in *Ukrainian Village Pharmacy* does not apply here. Similarly, *Borow v. nView Corporation*, 829 F. Supp. 828 (E.D. Va. 1993), was a case brought under SEC Rule 10b-5, which requires plaintiffs to "allege facts that, if proved, would establish that defendants, with scienter, made a material representation or omitted to disclose a material fact that they had a duty to disclose." *Id*. at 832. Thus, the Court's analysis turned on the requirements of Rule 10b-5, not a universally applicable prerequisite to proving

---

[2] This case was decided the day that all briefing regarding the FTC's motion for a preliminary injunction concluded.

4

falsity, especially under a statute that unlike Rule 10b-5, does not impose a scienter requirement.[3]

## II. FACTORS OTHER THAN LIKELIHOOD OF RECURRENCE SHOULD HAVE FACTORED INTO BALANCE OF THE EQUITIES

Because the likelihood of recurrence of illegal conduct is but one factor for consideration in balancing the equities, the Order should have addressed the other equitable considerations raised by the FTC. As the FTC articulated in its moving papers and at the post-hearing briefing, preliminary relief serves not only to enjoin illegal conduct pending the outcome of a case, but also to ensure availability of a meaningful remedy at its conclusion. (Dkt. No. 193 at 17-18 ¶ 13; Dkt. No. 8 at 38-40.) The Eighth Circuit has stated that preliminary relief for this purpose is "well established." *Airlines Reporting Corp. v. Barry*, 825 F.2d 1220, 1227 (8th Cir. 1987) ("the resolution of this issue depends on two factors -- the [non-movant's] resources and the potential magnitude of eventual damages. In the present case, ARC has demonstrated a clear probability that defendants will not be able to satisfy an award of adequate damages. We therefore agree with the District Court that ARC is entitled to a preliminary injunction to protect its remedy."). Regardless of whether Defendants abandoned the pre-order model, the fact remains that absent injunctive relief to secure assets, there may be no money left at the conclusion of the case to redress consumers should the FTC prevail. Defendants have admitted that they have more than $5.49 million in known outstanding refund liability, and anticipated refund requests amounting to $3.55 million, which does not account for their liability should the FTC prevail. (Def. PI. Ex. 511 at 19.) They also stated that Butterfly Labs averages $1.2 million per month in operating

---

[3] The Order also cites the Restatement of Torts. The section upon which the Order relies does not state that intent is required to prove falsity, but rather that nonperformance does not demonstrate intent.

5

Case 4:14-cv-00815-BCW   Document 214   Filed 12/19/14   Page 5 of 8

expenses. (*Id.* at 15.) At this rate, there is a "clear probability that defendants will not be able to satisfy an award of adequate [refunds]."

Finally, the Court has determined that various portions of the proposed injunctive provisions are too onerous. However, such a finding does not preclude the entry of some form of preliminary relief that the Court deems more tailored to the conduct at issue, such as maintaining a cash reserve for redress that at least covers $5.49 million in outstanding refund requests, and the projected $3.55 million in projected refund requests.

## III.   THE COURT ERRONEOUSLY APPLIED FIRST PROVISO LAW

Contrary to Section II.C of the Order, the FTC can obtain preliminary injunctive relief under Section 13(b) absent a showing that Defendants are "violating or about to violate" the law. As the FTC set forth in its prior submissions to the Court, the requirement that the FTC establish that the Defendants are "violating, or about to violate" the law is contained in the first proviso of Section 13(b). (Dkt. No. 193 at 11 n.2; Dkt. No. 8 at 25 n.119.) Courts have interpreted Section 13(b) of the FTC Act to consist of two separate and distinct provisos: (1) the first proviso, which starts from the beginning of the section and includes the clause "provided, however," and (2) the second proviso, which reads "Provided, further, That in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction." *See FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1434 (11th Cir. 1984); *FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1111 (9th Cir. 1982). A showing of "violating or about to violate" is required only under the first proviso of Section 13(b), which governs when the FTC can seek preliminary injunctive relief before or during the pendency of an *administrative* proceeding. For example, in *FTC v. Freeman Hosp.*, 69 F.3d 260 (8th Cir. 1995), the FTC sought preliminary relief under the first proviso to halt a proposed hospital merger while an administrative action reviewing that merger proceeded. This

case, in contrast, does not involve administrative proceedings, and is brought under the second proviso of Section 13(b). (Dkt. No. 8 at 25-26, n. 119) Thus, there is no requirement that the FTC show that Defendants are "violating or about to violate" the law.

## IV. CONCLUSION

For the foregoing reasons, the Court should reconsider its denial of preliminary injunctive relief.

Respectfully submitted,

JONATHAN E. NUECHTERLEIN
General Counsel

Dated:  December 19, 2014         */s/ Leah E. Frazier*
Helen Wong, DC Bar # 997800
Teresa N. Kosmidis, NY Bar# 4533824
Leah Frazier, DC Bar# 492540
Gregory A. Ashe, VA Bar #39131
Federal Trade Commission
600 Pennsylvania Ave., N.W.
Mail Stop CC-10232
Washington, D.C. 20580
202-326-3779 (Wong)
202-326-3216 (Kosmidis)
202-326-2187 (Frazier)
202-326-3719 (Ashe)
Facsimile: 202-326-3768
hwong@ftc.gov
tkosmidis@ftc.gov
lfrazier@ftc.gov
gashe@ftc.gov

TAMMY DICKINSON
United States Attorney

Dated: December 19, 2014         */s/ Charles M. Thomas*
Charles M. Thomas, MO Bar #28522
Assistant United States Attorney
Charles Evans Whittaker Courthouse
400 East Ninth Street, Room 5510
Kansas City, MO  64106
Telephone: (816) 426-3130

Facsimile: (816) 426-3165
E-mail: charles.thomas@usdoj.gov

ATTORNEYS FOR PLAINTIFF
FEDERAL TRADE COMMISSION

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 19, 2014, a true and correct copy of the foregoing was filed electronically with the United States District Court for the Western District of Missouri using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system.

*/s/ Gregory A. Ashe*
 Attorney for Plaintiff Federal Trade Commission

8

Case 4:14-cv-00815-BCW   Document 214   Filed 12/19/14   Page 8 of 8