IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | ) |
| | ) |
|       **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 14-CV-0815-W-BCW |
| | ) |
| **BF LABS INC., et al.,** | ) |
| | ) |
|       **Defendants.** | ) |

**DEFENDANTS BF LABS INC., SONNY VLEISIDES, AND DARLA DRAKE'S
SUGGESTIONS IN OPPOSITION TO PLAINTIFF'S MOTION FOR
RECONSIDERATION OF ORDER DENYING PRELIMINARY INJUNCTION**

    The Federal Trade Commission seeks to disturb this Court's well-reasoned Order denying the FTC's motion for a preliminary injunction, asset freeze, appointment of a receiver, and other equitable relief. Notwithstanding the Court's careful consideration of all the pleadings, facts, arguments, and law related to the FTC's Preliminary Injunction Motion, the FTC asks the Court to reconsider its Order under Federal Rule of Civil Procedure 60(b) based on mistake. But the FTC merely offers the same arguments raised in its Preliminary Injunction Motion and post-hearing brief, raising no new issues or evidence. This failure alone is sufficient reason for denying the FTC's motion.

    While the FTC disagrees with the Court's decision, the United States Court of Appeals for the Eighth Circuit has held that Rule 60(b) "provides for extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances." *United States v. Young*, 806 F.2d 805, 806 (8th Cir.1986) (per curiam), *cert. denied*, 484 U.S. 836, 108 S.Ct. 117, 98 L.Ed.2d 76 (1987). In another case, the Eighth Circuit made it clear that parties who seek reconsideration but do "nothing more than reargue, somewhat more fully, the merits of their claim" do not comply with "the purpose of Rule 60(b)." *Broadway v. Norris*, 193 F.3d 987, 989-

1

90 (8th Cir. 1999). Indeed, "the failure to present reasons not previously considered by the court 'alone is a controlling factor against granting relief.'" *Sanders v. Clemco Indust.*, 862 F.2d 161, 170 (8th Cir. 1988) (quoting *Fox v. Brewer*, 620 F.2d 177, 180 (8th Cir. 1980)); *see also Broadway*, 193 F.3d at 990 (Rule 60(b) "is not a vehicle for simple reargument on the merits. This ground alone is sufficient to prevent a holding that the District Court abused its discretion in denying the motion.").

Because the FTC identified no "mistakes" in fact or in law in the Court's Order, and because the FTC failed to present evidence or arguments not previously considered by the Court, the FTC's motion for reconsideration should be summarily denied.

I.  **The Court Properly Analyzed Section 5(a) Standards and Did Not Insert an Intent Element Into Its Section 5(a) Analysis.**

Even if this Court were inclined to revisit the FTC's arguments, there is no reason for the Court to alter its prior conclusions. As the Court stated, to violate Section 5(a) of the FTC Act, the FTC must show a material representation that is "likely to mislead consumers acting reasonably under the circumstances." The Court properly cited *FTC v. Real Wealth, Inc.*, No. 10-CV-0060-FJG, 2011 WL 1930401, at *3 (W.D. Mo. May 17, 2011), for the "likely to mislead" standard: a representation is likely to mislead consumers acting reasonably if the express or implied representation "is false, *or*" if the person making the representation "lacked a reasonable basis" for asserting that the representation was true. (emphasis added). As the Court also acknowledged (Order, p. 8, n.6) (citing *Real Wealth*), the FTC can also establish the "likely to mislead" element by showing that the "net impression" of representations regarding delivery dates is misleading.

As the FTC insists and the Court acknowledged, the FTC has alleged that BF Labs' representations were false (Doc. 2 at p. 10) and that the net impression of BF Labs'

2

representations were misleading (*id.*), not that BF Labs lacked a reasonable basis for asserting that its representations were true. While the FTC is correct that the "net impression" analysis considers what a reasonable consumer would believe based on the net impression of a representation or representations, the FTC takes this rule too far and seeks also to impose a consumer perspective within the "falsity" inquiry. As *Real Wealth* makes clear, however, the FTC may show that a representation is "likely to mislead" *either* by showing that the representation is false—an objective, independent standard—*or* by showing that the net impression of a representation or representations is likely to mislead a reasonable consumer—a subjective standard that is separate and independent from the falsity analysis. 2011 WL 1930401, at *3.

In other words, if the FTC can demonstrate that a representation was objectively false, then it has met its burden on the "likely to mislead" prong under *Real Wealth* without any further showing. Being able to show that a representation was "false" is therefore something of an evidentiary shortcut on the "likely to mislead" inquiry: no consumer declarations demonstrating that consumers were misled are necessary – the actual falsity of a representation is enough.

Here the FTC has alleged both that BF Labs' delivery representations were false and that the net impression of those representations was likely to mislead. Doc. 2, p. 10. The delivery representations are, however, as the Court recognized, representations of BF Labs' intent to ship products within a projected timeframe. Because the representations that the FTC has challenged here are statements of intent, those statements can only be "false" (and thus can only save the FTC from the additional burden of having to show that the representations were otherwise likely to mislead) if BF Labs did not actually have the intent to ship products when it said that it had

3

that intent. And with respect to representations that shipments were "scheduled" for a particular window, the statements would only be "false" if they were not, in fact, "scheduled."

Consequently, it is not the Section 5(a) standard that injects an "intent" inquiry into the Court's analysis. It is the intent-based, forward-looking statements that the FTC chose to challenge as "false" that require an examination of whether the statements are objectively false. And the FTC simply has not met its burden of showing that those challenged statements were "false"—or even that they were likely false—when they were made.

In any event, the Court also examined the FTC's allegations and *BF Labs' representations* to determine whether the "net impression" of those representations was "likely to mislead" (*see* Order, p. 8, n. 6), and found that that the FTC had not demonstrated a likelihood of success on the merits under that theory either. *See generally FTC v. Gill*, 71 F. Supp. 2d 1030, 1046 (C.D. Cal. 1999) (citing *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374 (1965) and holding that a court may examine representations "to determine whether the net impression is such that the representation would be likely to mislead reasonable consumers").

While consumer complaints can be a basis for finding that the net impression of a representation was misleading, both the FTC and Defendants offered declarations from consumers that supported divergent conclusions. And at least some of the declarations offered by the FTC appeared less than trustworthy. For instance, one declarant stated on September 25, 2014, that he had not received a refund or product shipment and that the machines "would be useless" and "obsolete" if shipped to him even on the date of his declaration. *See* Doc. 42-21, ¶ 8. But evidence at the preliminary injunction hearing showed that just days before the declarant executed his declaration for the FTC, he responded to an email from BF Labs informing him that Monarchs were available to fulfill his order and, that instead of opting for a refund—the option

4

one would expect the declarant to have selected if the Monarch miners were "useless" and "obsolete" as he declared—the declarant opted for BF Labs to ship him two Monarchs plus a rebate. Day 1 Tr. 168:15-171:7.

In one additional example, a customer who stated that he ordered product from BF Labs in January 2013 declared that "the expected delivery date . . . was April 1, 2013" (Doc. 166-5, ¶ 2), yet in an email to BF Labs stated that his "reasonable expectation" was that his product "would ship in around 6 months [sic] time." *Id*. at p. 28. While these examples are not necessarily exhaustive, they give the Court reason to question the reliability of consumer declarations offered by the FTC. Given the stringent standard to which the FTC must be held in making a preliminary injunction showing, the Court correctly found that the FTC had not established a likelihood of success on the merits.

II.  **The Court's Order Properly Addressed Other Equitable Considerations Raised by the FTC Into Its Analysis of the Balance of The Equities, Including the Preservation of Assets for Potential Consumer Redress.**

The Court did not ignore the preservation of assets for potential consumer redress. Rather, the Court expressly acknowledged that "[t]he principal interest weighing in favor of a preliminary injunction is protecting consumers, which is obviously important. But this interest is present in every Section 5 case . . . ." Order, p. 10. Part of protecting consumers, of course, is preserving assets for potential consumer redress. Plaintiff's contrary argument is not supportable.

Further, BF Labs offered evidence at the hearing that, if no preliminary injunction were entered, BF Labs may have opportunity to generate more assets through business activity than could be preserved through entry of preliminary injunction and imposition of receivership. The Court's Order expressly required BF Labs to regularly report to the Court concerning BF Labs' "progress toward generating assets to pay out all requested refunds in a timely manner." Order,

5

p. 12. The Court therefore clearly and appropriately considered preservation—and even the creation—of assets for potential consumer redress.

The Court also appropriately acknowledged that the preliminary injunction that the FTC proposed would have had a negative impact on consumers because it "extends to areas of the company such as shipping products and interacting with consumers." Order, p. 11. Because the supposed basis of the FTC's case here is delayed shipment, the Court properly denied an injunction that would have exacerbated any delay for consumers.

**III.    Even the FTC Does Not Buy Its "Second Proviso" Argument—and Courts Do Not, Either.**

As the FTC's motion for reconsideration goes, the so-called "second proviso" of Section 13(b) is comprised, in its entirety, of the following language: "Provided, further, That in the proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction." Doc. 214, p. 6. The FTC argues that only the first proviso includes "the beginning of the section," with its "is violating or is about to violate any provision of law enforced by the Federal Trade Commission" language. *Id*.

The FTC's argument is wrong on four levels. First, the language of the second proviso does not stand on its own. The word "Provided" itself demonstrates that the phrase is preceded by some conditions or foregoing content that applies. This conclusion is only reinforced by the use of the word "further," which acknowledges some preceding, relevant content. Beyond that, without "the beginning of the section," the second proviso contains no indication which court the proviso is talking about, what the proper proof is, or what a proper case might be. The second proviso, by its very nature, must incorporate some additional content from somewhere. "The beginning of the section" is the only possible location for that additional content.

Case 4:14-cv-00815-BCW   Document 223   Filed 01/05/15   Page 6 of 11

Second, even the FTC does not buy its conclusion that only the first proviso includes "the beginning of the section," as shown by its preliminary injunction arguments. In *Plaintiff's Suggestions in Support of its Ex Parte Motion for Temporary Restraining Order with Asset Freeze, Appointment of Receiver, and Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue*, (Doc. 8, p. 25), for example, the FTC states:

> The second proviso of Section 13(b), under which this action is brought, states that "the Commission may seek, and after proper proof, the court may issue, a permanent injunction" against violations of "any provision of law enforced by the Federal Trade Commission."

But the language "any provision of law enforced by the Federal Trade Commission" traces to the "the beginning of the section," 13(b)(1). It does not come from the so-called second proviso that the FTC now tries to argue is comprised, sum total, of the "Provided, further, . . ." language. But as the FTC already (necessarily) admitted, the "second proviso" does not stand on its own and includes Section 13(b)(1), too. Similarly, the FTC states that "[t]wo factors determine whether preliminary injunctive relief should issue under Section 13(b): (1) the likelihood of success on the merits; and (2) the balance of equities. *See* 15 U.S.C. §53(b)." Doc. 8, p. 27. This too is an admission that language from "the beginning of the section" applies to both provisos.

Third, not one of the cases that the FTC cites for its supposed second-proviso rule holds that the "is violating, or is about to violate" standard does not apply to a second-proviso case. Rather, both *FTC v. U.S. Oil & Gas Corp.,* 748 F.2d 1431, 1434 (11th Cir. 1984) and *FTC v. H.N. Singer, Inc*., 668 F.2d 1107, 1111 (9th Cir. 1982), merely stand for the rule—unremarkable, and undisputed here—that courts may enter preliminary injunctive relief and other equitable relief under the second proviso, even though that proviso's express language provides only for permanent injunctive relief, and that the FTC does not need to first institute administrative

7

proceedings before seeking such relief. The FTC did not (and cannot) cite a single case—much less "case law from every circuit . . . about the second proviso of 13B" (Day 2 Tr. 37:18-38:5)—to support its assertion that "[a] showing of 'violating or about to violate' is required only under the first proviso of Section 13(b)." *See* Doc. 214, p. 6.

Fourth, a number of cases (which the FTC fails to reconcile or even address) brought under the so-called second proviso have clearly held that the "is violating, or is about to violate" standard applies in second proviso cases. Just one example is *FTC v. Evans Products Co.*, 775 F.2d 1084, 1088 (9th Cir. 1985). As the *Evans* court explained:

> Evans' view that section 13(b) cannot be used to remedy past violations is supported by the statutory language. The FTC may only seek a temporary restraining order or a preliminary injunction when it believes a person "is violating, or is about to violate" any law enforced by the FTC; the statute does not mention past violations. 15 U.S.C. section 53(b)(1). The sparse legislative history also indicates that Congress only contemplated ongoing or future violations which required the "quick handling" that an injunction could provide. . . . The legislative history is silent about the use of section 13(b) to preserve remedies for a past violation of the law.
>
> As a general rule, "[p]ast wrongs are not enough for the grant of an injunction"; an injunction will only issue if the wrongs are ongoing or likely to recur.

*Id*. at 1087 (internal citations omitted).

The Ninth Circuit's approach, based on a well-reasoned analysis of Congressional intent and the principle that district courts must independently examine alleged bases for FTC requests for preliminary injunctions, is consistent with Eighth Circuit preliminary-injunction principles. *See FTC v. Freeman Hosp.*, 69 F.3d 260, 267 (8th Cir. 1995) (holding that "Congress expected courts to use independent judgment in reviewing preliminary injunction applications under Section 13(b)"); *see also FTC v. Simeon Mgmt. Group*, 532 F.2d 708, 713-14 (9th Cir. 1976) (district courts are compelled to make an "independent determination" as to whether a defendant "is violating, or is about to violate" a statute within the FTC's enforcement jurisdiction); *FTC v.*

8

*Merchant Servs. Direct, LLC*, 2013 WL 4094394, at *1 (E.D. Wash. Aug. 13, 2013) (holding that "[i]n deciding whether the FTC has made a 'proper showing' of entitlement to injunctive relief, a court must independently assess whether violations are imminent").

Even if the "is violating, or is about to violate" standard did not apply as a threshold inquiry, the Court would still have been required to evaluate the "is violating, or is about to violate" standard in its "likelihood of success on the merits" analysis. Ultimately, the FTC seeks a permanent injunction in this case. *See* Doc. 2, p. 1. The Court was therefore required to consider, in its preliminary injunction analysis, whether the FTC would likely succeed in securing a permanent injunction. Because a permanent injunction will only issue in those situations involving "a cognizable danger of recurrent violations," the "is violating, or is about to violate" inquiry was relevant to the FTC's likelihood of success on the merits. *See FTC v. Security Rare Coin & Bullion Corp.*, Civ. A. No. 3-86-1067, 1989 WL 134002, at *19 (D. Minn. Sept. 11, 1989), *aff'd* 931 F.2d 1312 (8th Cir. 1991). The "is violating, or is about to violate" inquiry was also relevant to the balancing of equities inquiry. *See FTC v. Home Assure, LLC*, No. 8:09-cv-547-T-23TBM, 2009 WL 1043956, at *20-21 (M.D. Fla. Apr. 16, 2009) (balance of equities did not favor FTC where no likelihood of recurrence shown). The Court therefore correctly considered the "is violating, or is about to violate" standard in its preliminary injunction analysis, and the FTC's Motion for Reconsideration should be denied.

## CONCLUSION

The FTC's Motion for Reconsideration is without merit. The Court has already addressed the FTC's arguments and properly ruled on them. For all the reasons stated above, the Court correctly denied the FTC's request for a preliminary injunction and related relief.

Respectfully submitted,

/s/ James M. Humphrey
| | |
|---|---|
| James M. Humphrey | MO # 50200 |
| Michael S. Foster | MO # 61205 |
| Miriam E. Bailey | MO # 60366 |

Polsinelli PC
900 W. 48th Place, Suite 900
Kansas City, Missouri  64112-1895
Telephone: (816) 753-1000
Facsimile: (816) 753-1536
jhumphrey@polsinelli.com
mfoster@polsinelli.com
mbailey@polsinelli.com

Braden M. Perry    MO # 53865
Kennyhertz Perry, LLC
420 Nichols Road, Suite 207
Kansas City, MO 64112
Direct: 816-527-9445
Fax: 855-844-2914
braden@kennyhertzperry.com

Attorneys for Defendant BF Labs Inc., Sonny Vleisides, and Darla Jo Drake.

10

## CERTIFICATE OF SERVICE

     The undersigned hereby certifies that on the 5th day of January 2015, a true and correct copy of the foregoing was filed electronically with the United States District Court for the Western District of Missouri using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system.

                                                    /s/ James M. Humphrey
                                                Attorney for Defendants BF Labs Inc., Sonny Vleisides, and Darla Jo Drake.

11

Case 4:14-cv-00815-BCW   Document 223   Filed 01/05/15   Page 11 of 11