IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:14-CV-00815-BCW ) |
| BF LABS INC., *et al.*, | ) ) |
| Defendants. | ) |

**TEMPORARY RECEIVER'S REPLY IN SUPPORT OF HIS SECOND APPLICATION
FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES
FOR THE PERIOD NOVEMBER 1, 2014 THROUGH NOVEMBER 30, 2014**

Temporary Receiver Eric Johnson submits this reply memorandum in support of his Second Application for Allowance of Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses for the Period November 1 through November 30, 2014 (the "Second Application").

**I. Regardless of Who This Court Finds Responsible for Payment, The Court Should Approve the Payment of Temporary Receiver's Fees and Expenses**

Defendants devote several pages of their Opposition to Temporary Receiver's Second Application to arguing that the FTC, rather than Defendants, should pay Temporary Receiver's fees and expenses, because the FTC was not entitled to a preliminary injunction or receivership. *See* Doc. 220 at 2-4. The determination of *who* pays the cost of the receivership does not impact whether a receiver is entitled to compensation. "[I]f a receiver reasonably and diligently discharges his duties, he is entitled to compensation." *S.E.C. v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992). Costs and expenses of a receivership, including compensation for the receiver, counsel fees, and obligations incurred by him or her in the discharge of his or her duties, constitute a first charge against the property or funds in receivership, irrespective of who is

1

WA 6518710.2

ultimately successful in the suit or is ultimately liable to pay them. *United States v. Weitzel*, 246 U.S. 533 (1918). Indeed, Temporary Receiver acted upon and relied upon the Court's orders in undertaking this engagement and engaging his professionals. It would set a negative precedent and have a chilling effect to make the payment of a receiver's fees and expenses contingent upon who ultimately prevails in the litigation.

This Court's Stipulated Interim Order—which was ***negotiated by and agreed to*** by Defendants and submitted to this Court—provides that "the Temporary Receiver and all personnel hired by the Temporary Receiver as herein authorized, including counsel to the Temporary Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order, and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by or in the possession or control of, or which may be received by, the Receivership Defendant." Doc. 54 at XIV. Temporary Receiver takes no position on which party should ultimately bear the costs of the receivership. Instead, Temporary Receiver only moves this Court to approve the immediate payment of the fees and expenses in the Applications as provided for by the Stipulated Interim Order (and the TRO), as they are reasonable and were necessary to perform the duties of such Orders.

**A.     The fees and expenses were necessary to perform the duties of the Stipulated Interim Order and are reasonable given the complexity and difficulties of this case**

As explained in the First Application and the Reply in Support[1] and in the Second Application, all of the time billed by Temporary Receiver and his professionals was necessary to carry out the duties of the Stipulated Order. *See* Docs. 173, 199, 212. This work is demonstrated

---

[1] Temporary Receiver incorporates by reference in its entirety his *Reply in Support of his First Application for Allowance of Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses for the Period September 18, 2014 through October 31, 2014*. Doc. 199.

by Temporary Receiver's First and Second Reports, the billing statements submitted to this Court for in-camera review, the difficult circumstances encountered by Temporary Receiver, and the affidavits submitted by Temporary Receiver in support of the Applications that show the hours by timekeeper, each of which evidence the time required due to the myriad of tasks and complexity of the receivership.

Factors considered in this Court's determination of reasonable compensation include the attorney's ability and experience, the amount involved, the time necessary to accomplish legal tasks, the difficulty and intricacy of the legal issues involved, the results attained, and the amount charged by attorneys of equal standing and ability. *Federal Oil Mktg. Corp. v. Cravens*, 46 F.2d 938, 940 (8th Cir. 1931). The Second Application discussed each of these factors in detail to explain why the requested fees and expenses for the Second Interim Period are reasonable. Doc. 212 at 8-12. Defendants, as in their previous Opposition, "do not deny that Temporary Receiver is entitled to reasonable compensation", *see* Doc. 220 at 4. Nevertheless, Defendants contend Temporary Receiver has not made a prima facie case in support of the requested compensation. This is despite Temporary Receiver's detailed discussion of each *Federal Oil Mktg. Corp.* factor and its application to this case, including the presentation of affidavits and charts explaining the fees and expenses it incurred. Doc. 212 at 8-12.

Defendants' Opposition does not discuss the Eighth Circuit's *Federal Oil Mktg. Corp.* factors, nor does it attempt to argue that Temporary Receiver's requested fees are unreasonable under such factors. This is because a review of the factors proves Temporary Receiver's

requested fees and expenses are reasonable.[2] As discussed further below, Defendants need not review Temporary Receiver's unredacted billing statements to determine that Temporary Receiver's requested fees are reasonable under the Eighth Circuit's factors.

> **B.  This Court is an expert on the reasonableness of the fees, and Temporary Receiver has submitted sufficient evidence for the Court to determine the fees were reasonable**

Defendants contend the affidavit filed in support of Temporary Receiver's Second Application is insufficient to explain Temporary Receiver's fees and also object to Temporary Receiver seeking payment for his counsel and professionals to attend the preliminary injunction hearing. The charts attached as exhibits to the Second Application show the tasks and job descriptions of those attorneys and consultants who worked for Temporary Receiver. This is sufficient for Defendants to challenge Temporary Receiver's bills, which they have done in filing their responses. Trial courts are experts as to the reasonableness of attorneys' fees. *See, e.g., Brown v. Culpepper*, 561 F.2d 1177, 1177 (5th Cir. 1977).

Further, this Court is in an even better position to assess the reasonableness of Temporary Receiver's fees than that of a trial court assessing the reasonableness of non-receivership counsel, as the Court here is analyzing the fees incurred by its own appointee, who (1) was tasked with carrying out the Court's orders, (2) communicated frequently with the Court, and (3) acted at the Court's direction and pursuant to the Court's instructions. With respect to any concern of duplication of efforts that were not already reviewed and removed from the bill by Temporary Receiver, the Court is in possession of the in-camera bills to determine the reasonableness of the fees. Defendants do not need the opportunity to litigate "specific line

---

[2] The reasonableness of the Second Application is further supported by the fact that the FTC did not object to the Second Application, a factor to be given great weight. *F.T.C. v. Consumer Health Benefits Ass'n*, 2011 WL 5513182, at *3 (E.D.N.Y. Nov. 10, 2011).

items" as they demand in their Opposition, when the Court has the ability to review and fully consider the reasonableness of the fees incurred under the circumstances of this proceeding. The Court is intimately acquainted with the legal proceedings for which the fees have been incurred and is well situated to assess their reasonableness in accordance with the requirements of the Stipulated Interim Order.

Regarding attendance at the Preliminary Injunction hearing, it was not known during the Preliminary Injunction hearing whether Temporary Receiver would need the assistance of his counsel, the operations counsel or his accounting consultant, RubinBrown, to address questions raised by the Court or the parties with respect to litigation, operations, or the business plan submitted by Defendants. Therefore, their attendance was necessary and the rates reasonable. Doc. 212, Ex. 1, ¶ 8-9 (Affidavit of Eric Johnson).[3]

## II. Defendants Are Not Entitled to Review Temporary Receiver's and His Counsel's and Consultants' Billing Statements to Determine the Reasonableness of the Fees

### A. In-camera review of Temporary Receiver's counsel's billing records is necessary to protect and preserve the attorney-client privilege and Defendants' attempt to distinguish *Petters* is unavailing

Defendants' Opposition centers on their desire to review Temporary Receiver's unredacted billing statements. Defendants do not respond to Temporary Receiver's reasoning for submitting his billing records for in camera review: that in-camera submission is a reasonable

---

[3] While not addressed in their Opposition to the First Application, Defendants now raise the issue that Temporary Receiver had several professionals present at the initial September 29 hearing. What Defendants fail to mention is that they also had several professionals present and whether such professionals were billing at a reduced rate. Given the circumstances and in order to address any issues or questions that may have arisen at the first hearing in September, Temporary Receiver believed it necessary to have certain members of his team present. Once again, with respect to the attorneys present (and Temporary Receiver himself), such professionals were billing at a 30% discount. Further, Defendants allege that their complaints about staffing led to two attorneys not billing for the November hearing. The two attorneys that were present for the November hearing did not bill because Temporary Receiver determined that they should attend given their extensive work and dedication to the case, but would not bill the estate for their time. It is certainly strange that Temporary Receiver has to now defend his actions in <u>not</u> billing for lawyers.

5                                                                WA 6518710.2

action under the circumstances of this case that allows the Court to evaluate the tasks performed while preserving the attorney-client privilege. These circumstances include the fact that BFL and its counsel have threatened Temporary Receiver with objections and future litigation over alleged damages, as explained in Temporary Receiver's Reply in Support of its First Application. Doc. 199. A receiver holds the attorney-client privilege as to receivership privileged communications between the receiver and his legal counsel, and his partners and associates. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 105 S. Ct. 1986, 85 L. Ed. 2d 372 (1985).

A sister district in the Eighth Circuit has rejected a request to view an equity receiver's unredacted billing statements, ruling that in camera review of fee petitions in receivership cases is necessary to protect and preserve the attorney-client privilege. *United States v. Petters*, 2009 WL 1922320, at *3 (D. Minn. June 30, 2009), Doc. 199, Ex. 3. Defendants attempt to distinguish *Petters* on the grounds that it was not an FTC case, but that fact is irrelevant: like here, it was an equity receivership brought by the federal government, the *Petters* court issued an order issuing a preliminary injunction and appointing the receiver, and the court applied Eighth Circuit law, including the *Federal Oil Mktg. Corp.* factors, to analyze the reasonableness of the receiver's requested fees. *Id.* at *2-3. Defendants try to minimize the importance of *Petters* by noting that the court "merely allowed an in camera review because" the defendants faced related criminal proceedings and therefore public disclosure of unredacted billing statements risked disclosure of confidential and protected information. In doing so, Defendants gloss over the *Petters* court's discussion of its discretion and the impracticality of requiring disclosure of unredacted billing records that contain confidential and protected information. *Id.* at *2-3.

As explained in the Reply in Support of the First Application, Temporary Receiver anticipates, then and now, having to defend himself against BFL in the current action and potentially in a future action. Doc. 199. It is important to note that Defendants have not once denied that they intend to seek litigation against Temporary Receiver and, in fact, have recently filed their Answer wherein they counterclaim against the FTC and affirmatively make allegations regarding Temporary Receiver concerning their alleged damages, including alleged rough handling of equipment and inventory, that the Temporary Receiver "spent most of his time questioning and revising BF Labs' proposed budget", that no operations took place during the first three weeks of the Interim Period, and that shipping was "only permitted if allowed by the Temporary Receiver" and that no products were shipped during the Interim Period. *See* Doc. 227 at ¶¶ 64-69. It is obvious that Defendants intend to seek claims against Temporary Receiver, or at a minimum, seek to discover information from Temporary Receiver as Defendants prosecute their counterclaims against the FTC.

Consequently, Temporary Receiver's privileged consultation with his attorneys and other professionals to defend his position and decisions in anticipation of litigation with BFL in the future was both necessary and prudent. Therefore, Temporary Receiver's billing statements reflect attorney-client communications. As the *Petters* court did, this Court should reject Defendants' attempt to compel the production of these privileged billing statements. Instead the Court should rely on its expertise to evaluate the reasonableness of Temporary Receiver's fee applications and award its fees as the Court so determines in its discretion.

### B. Defendants point to no rule requiring production of unredacted billing statements

Defendants cite the well-known Supreme Court due-process case, *Mullane v. Cenral Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950), in addition to *Jensen v. Clarke*, 943 F.3d 1191, 1203 (8th Cir. 1996) and *In re Alpha Telecom, Inc.,* 2006 WL 3085616 (D. Or. Oct. 27, 2006) for the proposition that parties in a receivership cannot be deprived of their assets without notice and an opportunity to challenge the basis for the deprivation. Doc. 220 at 6. Yet none of those cases stands for the proposition that itemized billing statements are required in a receiver's application for compensation. *Jensen* is not a receivership case, but instead concerns the award of attorney fees to a prevailing party in a civil rights suit, where the standards for fee awards differ from equity receiverships. 943 F.3d at 1203. In *in re Alpha Telecom*, the receiver submitted "a proposed notice" regarding the fee application to be sent to investors, creditors, and other interested parties that would accompany the fee application—there is no mention in that case of itemized billing records. 2006 WL 3085616 at *1. Finally, *Mullane* does not discuss attorney fees, but instead stands for the proposition that due process requires notice to interested parties and an opportunity to be heard. 339 U.S. at 315. Here, Temporary Receiver's fee-related filings and exhibits, including affidavits and charts supporting both the First and Second Applications, provide Defendants with notice of the fees sought and the basis for their reasonableness.

The reference to other FTC receivership fee applications where the receiver's counsel submitted itemized bills does not demonstrate a legal standard requiring disclosure of Temporary Receiver's privileged billing statements. Indeed, there is no rule requiring production of unredacted billing statements. In fact, one of the FTC cases cited by Defendants, the court issued

an order noting that fee applications did not need to be accompanied by itemized billing statements and that the receiver should instead make its itemized statements available to the court for in-camera review upon judicial request. *FTC v. Money Now Funding LLC, et al.,* Case No. 13-01583-ROS. Temporary Receiver attached that Order to its Reply in Support of the First Application. Doc. 199, Ex. 4.

## CONCLUSION

For all the reasons set forth herein and in Temporary Receiver's Second Application, Temporary Receiver respectfully requests this Court to grant the Second Application for Allowance of Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses for the Period November 1 through November 30, 2014, and for any other relief the Court deems just and proper.

Respectfully submitted,

SPENCER FANE BRITT & BROWNE LLP

　/s/ Bryant T. Lamer
Bryant T. Lamer　　　　　MO #57355
Lisa Epps Dade　　　　　 MO #48580
Andrea M. Chase　　　　 MO #66019
Lucinda H. Luetkemeyer  MO #63983
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
Telephone:　　　(816) 474-8100
Facsimile:　　　 (816) 474-3216
blamer@spencerfane.com
lepps@spencerfane.com
achase@spencerfane.com
lluetkemeyer@spencerfane.com
**ATTORNEYS FOR TEMPORARY RECEIVER ERIC L. JOHNSON**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 9th day of January 2015, a true and correct copy of the foregoing was filed electronically with the United States District Court for the Western District of Missouri using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system.

      /s/ Bryant T. Lamer
An Attorney for Temporary Receiver Eric L. Johnson