1          IN THE UNITED STATES DISTRICT COURT

2                    DISTRICT OF UTAH

3                    CENTRAL DIVISION

4

5   FEDERAL TRADE COMMISSION,          )

6              Plaintiff,              )

7   vs.                               )   CASE NO. 2:14-CV-88DB

8   APPLY KNOWLEDGE, a Utah limited   )

9   liability company, et al.,        )

10             Defendants.             )

11   _____)

12

13

14            BEFORE THE HONORABLE DEE BENSON

15         --------------------------------

16                 January 30, 2015

17

18                  Motion Hearing

19

20

21

22

23

24

25

```
 1              A P P E A R A N C E S

 2

 3
        For Plaintiff:            COLLOT GUERARD
 4                                P. CONNELL McNULTY
                                  600 Pennsylvania Avenue N.W.
 5                                Suite H286
                                  Washington, D.C.
 6

 7

 8

 9
        For Defendant:            JONATHAN HAFEN
10      Apply Knowledge           SARA NIELSON
                                  101 South 200 East
11                                Suite 700
                                  Salt Lake City, Utah
12

13

14

15      For Defendant:            KATHERINE PRIEST
        Essent Media              36 South State Street
16                                Suite 1400
                                  Salt Lake City, Utah
17

18

19

20

21
        Court Reporter:           Ed Young
22                                351 South West Temple
                                  Room 3.302
23                                Salt Lake City, Utah 84101-2180
                                  801-328-3202
24

25
```

1    January 30, 2015                           2:00 p.m.

2                    P R O C E E D I N G S

3

4            THE COURT:  Good afternoon.

5            MR. McNULTY:  Good afternoon.

6            THE COURT:  We're here in a case.  How about that?

7    This is the plaintiff's motion.  The plaintiff is moving to

8    dismiss the Sonnenberg defendants counterclaim.  The case is

9    Federal Trade Commission versus Apply Knowledge, L.L.C. and

10   others.  The case number is 14-CV-88.  The plaintiff,

11   Federal Trade Commission, is represented by who?

12           MR. McNULTY:  Good afternoon, Your Honor.  Connell

13   McNulty on behalf of the Federal Trade Commission along with

14   Collot Guerard.

15           MS. GUERARD:  Good afternoon, Your Honor.

16           THE COURT:  Tell me the name again.

17           MS. GUERARD:  It is hard.  It is Collot, like

18   hello hello, and the last name is Guerard.  I joined the

19   case after the preliminary injunction.

20           THE COURT:  I see your name on the brief now.

21   Collot Guerard.  Thank you.

22           You're here from Washington, are you?

23           MS. GUERARD:  Yes, sir.

24           THE COURT:  And you are from Pennsylvania?

25           MR. McNULTY:  Originally, yes.

1          THE COURT:  Okay.  Well, it is nice to see you.

2          Are you local here?  Where do you reside?

3          MR. McNULTY:  We are in Washington, Your Honor.

4          THE COURT:  Both of you?  You have a P.A. before

5     your bar number, and I guess that is what is making me think

6     Pennsylvania.

7          MR. McNULTY:  I was in private practice in

8     Pennsylvania, Your Honor.

9          THE COURT:  You are both out here from Washington,

10    D.C.

11         MR. McNULTY:  Yes.

12         THE COURT:  Nice to have you here.

13         Jonathan Hafen is here.  Is this Ms. Nielson with

14    you at counsel table?

15         MR. HAFEN:  Yes, it is, Your Honor.

16         THE COURT:  Sara Meg Nielson.

17         MS. NIELSON:  Yes.

18         THE COURT:  Nice to have you here.

19         We have Ms. Priest back there.  Katherine Priest.

20         MS. PRIEST:  Yes.

21         THE COURT:  She represents what I'll call the

22    Essent Media defendants.  They are not involved in this

23    motion, but there is a related issue, somewhat related to

24    this one, quite related I think in many respects, and that

25    is a pending motion for an order approving the windup of the

receivership estate and related relief, including approving

and authorizing payment for receivership assets of the

temporary receiver's and professionals' fees and expenses.

I wonder if we could have figured out a way to

make that any longer?

That is another pending matter.

You can have a seat, Ms. Priest.  Nice to have you

here.  I'll have to maybe ask a question or two about that

as we go along.

Let's turn first to the motion before the Court,

which is your motion, Mr. McNulty.

MR. McNULTY:  Yes, Your Honor.

THE COURT:  Are there any other attorneys in the

room that want to make an appearance?  No.

MR. McNULTY:  Good afternoon, Your Honor.

May it please the Court, my name is Connell

McNulty, and I, along with my co-counsel, Collot Guerard,

represent the Federal Trade Commission, the movant in

today's argument.  Under Rules 12(b)(1) and 12(b)(6) of the

Federal Rules of Civil Procedure we ask the Court to dismiss

the Sonnenbergs' sole counterclaim for wrongful injunction.

It is barred by sovereign immunity.

This Court recently visited the Federal Tort

Claims Act in its decision in U.S. vs. Daly, issued a few

days ago.  The Court held that in the absence of a waiver of

sovereign immunity, the federal government is immune from suit, citing Dahl, a Tenth Circuit case. The Federal Tort Claims Act provides the exclusive avenue to bring a tort action claim against the United States, notwithstanding other statutes that permit the government to be sued as the court recognized.

The viability of the Sonnenbergs' wrongful injunction claim begins and ends with the Federal Tort Claims Act. Congress enacted the Federal Tort Claims Act as a limited waiver of sovereign immunity for certain tort claims against the United States. However, in an express reservation of sovereign immunity, Congress provides in the Act that district courts shall not have jurisdiction over tort claims against the United States arising out of malicious prosecution and abuse of process, among other intentional torts. The Sonnenbergs' wrongful injunction claim is an intentional tort and it is barred by sovereign immunity.

In support of their wrongful injunction claim, the Sonnenbergs allege that the Federal Trade Commission sought an injunction based on allegations that it knew to be untrue, with an improper purpose, and with the objective of discrediting the Sonnenberg defendants and with animus. These allegations, each of which is false, are unequivocal allegations of intentional conduct that sound in abuse of

process and malicious prosecution, two intentional torts for which Congress has expressly reserved sovereign immunity for the United States. Congress's reservation of sovereign immunity for wrongful injunction claims, like the Sonnenbergs, deprive this Court of jurisdiction over the counterclaim.

Further, even if sovereign immunity did not bar the counterclaim, which it does, the Sonnenberg defendants seek damages improperly against the Federal Trade Commission itself. The Federal Tort Claims Act does not waive sovereign immunity for direct tort claims against federal agencies such as the F.T.C. Rather, through the F.T.C.A. Congress waives sovereign immunity for certain tort claims against the United States, not against federal agencies. Thus, under the Act district courts have no jurisdiction over Federal Tort Claims Act claims that are brought against federal agencies such as this one.

Finally, the Sonnenbergs have not complied with the procedural requirements of the Federal Tort Claims Act. Under the Act claimants must file administrative claims with the federal agency at issue. This notice requirement is strictly construed and it is jurisdictional. The Sonnenbergs did not file any such claim. Given their failure to follow the Federal Tort Claims Act and its procedural requirements, this Court lacks jurisdiction over

1    the counterclaim.

2         Each of these points we made in our motion to

3    dismiss papers.  The Sonnenberg defendants have contested

4    none of them.  The Court, therefore, has before it a motion

5    to dismiss for lack of jurisdiction and failure to state a

6    claim.  The allegations in the counterclaim are for

7    intentionally tortious conduct in seeking an injunction,

8    conduct for which Congress has reserved sovereign immunity.

9    Sovereign immunity is jurisdictional, Your Honor.  If, as

10   here, the United States has not consented to suit, has not

11   waived its sovereign immunity, jurisdiction is absent and no

12   claim can be stated or maintained as a matter of law.

13        We request time for rebuttal, and if you have any

14   additional questions we are available to answer them.

15        THE COURT:  Well, you know what they said in their

16   opposition, and they are really not challenging anything you

17   have said so far, but you want to respond after Mr. Hafen

18   addresses me?

19        MR. McNULTY:  I think it is best that the

20   Sonnenbergs make their own case and then we can respond if

21   it pleases Your Honor.

22        THE COURT:  Thank you.

23        Mr. Hafen.

24        MR. HAFEN:  Good afternoon, Your Honor.

25        I guess there is one thing we can agree on, and

that is that you have to waive sovereign immunity, but where
we seem to be missing each other is the type of claim that
this is.  Everything that you just heard presumes that this
claim somehow is an intentional tort and that is not right.
We are moving under a contract based claim for wrongful
injunction, and we are also moving under the Equal Access To
Justice Act under Rule 65(c) of the Federal Rules of Civil
Procedure.

So the question before the Court I think today is
whether the Equal Access To Justice Act waives immunity for
purposes of a claim under Rule 65(c) and the answer is
absolutely.  We have the language of 2412 itself, which is
the Equal Access To Justice Act, and, in addition, we have
some extremely helpful legislative history, and that is not
something that we have talked to the Court about in the
pleadings directly, so I wanted to make sure that I
highlighted that for you today.

Let me just start with the language of the two
statute under the Equal Access To Justice Act.  First of
all, 2412(d), which is the one that clearly applies here,
and this is a waiver of sovereign immunity, and it says
unless expressly prohibited by statute, a Court may award
reasonable fees and expenses of attorneys, in addition to
the costs which may be awarded pursuant to subsection A, to
the prevailing party in any civil action brought by or

1    against the United States or any agency or any official of

2    the United States acting in his or her official capacity, in

3    any court having jurisdiction of such action.  Well, we know

4    the Court has jurisdiction over the F.T.C.'s actions, so

5    that means the Court has jurisdiction over whatever may come

6    next.

7          Here is what comes next.  The United States shall

8    be liable for such fees and expenses to the same extent that

9    any other party would be liable under the common law or

10    under the terms of any statute which specifically provides

11    for such an award.  That is 2412(b).

12          The other part of that statute that we are moving

13    under is 2412(d)(1)(a).  This is much broader.  B requires a

14    statute, and Rule 65(c) is a statute, and I will show that

15    to the Court in just a minute, but under D this is much

16    broader and allows fees and other expenses and does not

17    require a statute, but it does have a provision with respect

18    to whether or not the United States' position was

19    substantially justified.

20          What we intend to do is file a motion, assuming

21    that the counterclaim survives as it should, we intend to

22    file a motion under Rule 65(c) seeking fees and costs under

23    2412(b) for a wrongfully entered injunction.

24          Now what I want to do is move to the Adamson case,

25    which I think is really important here.  The Adamson case is

a Tenth Circuit case from 1988. The Adamson case talks about the Equal Access To Justice Act in these circumstances where a party wishes to move for fees and expenses because of what is provided under one of the Federal Rules of Civil Procedure. Let me just give you a few quotes. The Equal Access To Justice Act expressly waives immunity against attorneys' fees awards. Under 2412(b) of the E.A.J.A. the United States is liable for attorneys' fees to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

This section, enacted in 1980 and remaining in force to the present, would appear on its face to be sufficiently broad to waive the government's immunity from fee awards pursuant to the Federal Rules of Civil Procedure which have, quote, the force of a federal statute, close quote, citing the Cibock case, a Supreme Court case from 1941. That looks pretty good. If we're moving under Rule 65(c), it looks like immunity has been waived.

Now let's talk about the legislative history. Going on in Adamson, the legislature history of Section 2412(b) supports this view of the E.A.J.A. waiver. Section 5 of the original E.A.J.A. expressly addresses fees awarded pursuant to the Federal Rules of Civil Procedure and demonstrates Congress's intent that the E.A.J.A. waives

1   government immunity.

2           Now let's talk briefly about the legislative

3   history.  There, again, is another quote from that same

4   case.  The legislative history also supports this result by

5   showing that Congress's key focus was that government and

6   private litigants become and remain subject to fees and

7   expenses in a parallel manner.  The house report states,

8   quote, that the change encompassed in Section 2412(b) simply

9   reflects the belief that at a minimum the United States

10  should be held to the same standard in litigating as private

11  parties.  As such, it is consistent with the history of

12  Section 2412 which reflects a strong movement by Congress

13  toward placing the federal government and civil litigants on

14  completely equal footing.  That sounds like a waiver if it

15  relates to the Federal Rules of Civil Procedure.

16          Well, the rule of civil procedure that we are

17  relying on here is Rule 65(c), which says the Court may

18  issue a preliminary injunction or a temporary restraining

19  order only if the movant gets security in an amount that the

20  court considers proper to pay the costs and damages

21  sustained by any party found to have been wrongfully

22  enjoined or restrained.  This is the equivalent of a

23  contract.  I will cite some authority as to why this is not

24  a tort claim.  This is a contract claim.

25          This contract is between parties and the court,

where you have a party that comes to the court and gives you
papers and says, especially ex parte, okay, we want an ex
parte temporary restraining order, and unless you are the
United States, you have to post security.  The reason that
you have to post security is because if you are wrong, if it
ultimately turns out that the injunction that you went in on
and got and were wrong about caused damages, caused the
other side to incur harms, attorneys' fees and costs, then
you are responsible for those costs and damages.  It says it
right in 65(c).

Now, the F.T.C. would probably point to the next
sentence.  The next sentence says the United States, its
officers and its agencies are not required to give security.
Well, why does it say that?  The reason that you have a
provision relating to the posting of security is to make
sure that there is something against which the enjoined
party can collect against.  What this provision does is it
exempts the United States, because the United States,
presumably, has enough money to pay any costs or damages
that result from a wrongfully entered injunction.

But there is nothing in here that exempts the
United States government from liability for obtaining an
injunction that later is reversed, which is what happened
here.

THE COURT:  Well, I'm sure that your opponent

1    would say that it is not a matter of exempting them from

2    liability, it is that sovereign immunity has never been

3    waived to cause them to be even possibly liable for

4    liability.  Liable for --

5            MR. HAFEN:  I'm with you, Your Honor.

6            That is what 2412 is all about.  2412 expressly

7    says that if you have a statute, and here 65(c) has the

8    force of a statute under the United States Supreme Court

9    case that we cited, if you have a statute and if you are a

10   prevailing party, then sovereign immunity is waived for

11   purposes of attorneys' fees and costs.

12           THE COURT:  Well, it talks about a prevailing

13   party.

14           MR. HAFEN:  Right.

15           THE COURT:  Maybe there is something in your brief

16   that I have overlooked, but tell me where it tells me that

17   the winner or not loser, whatever we want to say, in a

18   preliminary injunction battle, is a prevailing party in the

19   spirit of this or within the reach of 2412(b).

20           MR. HAFEN:  Well, our position on that is that we

21   were a prevailing party as to whether or not the injunction

22   was wrongful and that part is over.  There is nothing more

23   to be done on that issue.  Unfortunately, there is no

24   authority on either side of this issue.  You're going to be

25   setting law --

1          THE COURT:  Well, I --

2          MR. HAFEN:  -- on how that works, Your Honor.

3          THE COURT:  Maybe not setting law.  You're telling

4   me the law is already there.  I am just the first one to

5   rule on it.

6          MR. HAFEN:  Well, if you --

7          THE COURT:  What if there is an objection at a

8   trial and somebody says, objection, hearsay, and the other

9   side says, no, I am not offering it for the truth?  We have

10  a prevailing party.

11         Do I award attorneys' fees?

12         MR. HAFEN:  Do you mean for that single instance?

13         THE COURT:  This is a single, and I don't mean

14  that to be facetious, I am just saying that this statute has

15  generally been understood, when it says that the Court may

16  award reasonable fees and expenses of attorneys to the

17  prevailing party in a civil action brought by or against the

18  United States or any agency in any civil action, don't we

19  wait until the action is over before we start to talk about

20  who gets fees and costs?

21         I did an absurd thing to take it down to one

22  evidentiary objection, but there may be a big battle over

23  that piece of evidence in a motion in limine that would

24  consume a fair bit of briefing and oral argument time and

25  you would have a prevailing party.  I just wonder if you

1    have any authority to tell me that I can read prevailing

2    party in a civil action here and make it a step along the

3    way in the path to the end of the case.

4         Otherwise, I could be getting a motion after the

5    end of this hearing today.  If you win and they lose, you're

6    going to ask me for your attorneys' fees with respect to

7    this hearing or this motion.

8         MR. HAFEN:  Well, that is not the way that I see

9    it.  The way I see it is that you become a prevailing party

10   for purposes of Rule 65(c) when you get an order from the

11   Court saying that an injunction was improvidently granted.

12   At that point you are a prevailing party in an action, and

13   you are entitled to fees under Rule 65(c), which is the

14   statute which we are pursuing.

15        THE COURT:  How do you get there?  I know that is

16   your position, but you don't have any case law on that, and

17   you --

18        MR. HAFEN:  Let me just give you an example.  This

19   is a state court case.  I actually brought copies of the

20   order, if you would like to see it.  Liz Marketer versus

21   Enoch.  It was a case in front of Judge Quinn.  It is a

22   similar situation.  You have a case that is ongoing and you

23   have a plaintiff, and I represented the defendant in that

24   case as well, and they came in on an ex parte T.R.O. and

25   there was a receiver in place in the case just like this

1   one, so they came in and they got a T.R.O. on an ex parte

2   basis, and they claimed that my client was doing things he

3   was not supposed to be doing as far as engaging in behavior

4   with other companies that he was not supposed to be engaging

5   in.

6           It turned out that that was completely wrong.  The

7   parties came back to the Court and the Court said, all

8   right, the injunction was improvidently granted and,

9   therefore, awarded fees and costs to my client, including

10  the receiver's expenses, by the way, and it was about

11  $60,000 at that point in the case, because my client had

12  prevailed in the case --

13          THE COURT:  Is there a --

14          MR. HAFEN:  -- as to a wrongfully entered

15  injunction.

16          THE COURT:  Is there a Utah law similar to this

17  2412(b) from --

18          MR. HAFEN:  Not 2412(b), but certainly Rule 65 is

19  the same.  Remember, the Equal Access To Justice Act --

20          THE COURT:  Are you telling me Rule 65 in the Utah

21  Rules of Civil Procedure is identical to Rule 65 in

22  the federal rules?

23          MR. HAFEN:  It is not exactly the same.

24          THE COURT:  But I thought you just said that

25  certainly 65 --

1          MR. HAFEN:  It is similar.  I mean --

2          THE COURT:  I thought in the state -- I

3   interrupted you.  I'm sorry.

4          MR. HAFEN:  That is okay.

5          THE COURT:  I thought in the state system they had

6   a different rule with regard especially to T.R.O.s, which I

7   like better --

8          MR. HAFEN:  I knowledge that it is different,

9   but --

10         THE COURT:  -- which allows sort of a freezing of

11  everything while people can take ten days and sort stuff

12  out.

13         MR. HAFEN:  It is true that that part is

14  different, but what is not different is that both of the

15  rules provide that if the T.R.O. ends up being improvidently

16  granted, then the party against whom the injunction was

17  improvidently granted is entitled to its fees and damages as

18  a result of what wrongfully happened.

19         THE COURT:  Of course 65(c), as a matter of

20  statutory or rule construction -- well, let's read it

21  together slowly.  This is the whole thing.  Security.  The

22  court may issue a preliminary injunction or temporary

23  restraining order only if the movant gives security in an

24  amount that the Court considers proper to pay the costs and

25  damages sustained by any party found to have been wrongfully

1   enjoined or restrained.  That is the section that you like.

2   If it ended there you would be fine.

3           Right?

4           But then the next sentence says the United States,

5   its officers and its agencies are not required to give

6   security, so the operative language in the opening sentence

7   is that the Court can only do this if the movant gives

8   security.  Then the last line says the United States is not

9   required to give security.  It seems like a literal reading

10  of that rule, Mr. Hafen, would say, well, this has no

11  application to the United States.

12          MR. HAFEN:  I disagree with that.  Here is why.

13          THE COURT:  Okay.

14          MR. HAFEN:  We have cited a number of cases, and I

15  am trying to find them in my notes here, that say -- we have

16  got the Monroe case vs. Debarri, we have got the Kansas vs.

17  Adams decision, which were both Tenth Circuit cases, and

18  then we have the Norco case, which is a Washington case from

19  1986, and all of those cases go to this issue.  They go to

20  the issue of whether or not exempting someone from the

21  requirement to post security also exempts them from the rest

22  of that statute or that rule.  The answer is that it

23  doesn't.

24          THE COURT:  Did all of these involve private

25  parties?

1          MR. HAFEN:  They did involve private parties, but,

2   remember, again, the Equal Access To Justice Act is an act

3   that is intended by congressional intent to waive sovereign

4   immunity so that the United States government, when it comes

5   to the Federal Rules of Civil Procedure, is standing on

6   equal footing with private litigants.  What each of these

7   cases says is that -- one of these involved the government,

8   but what each of these say -- let me quote from Norco.  A

9   party that is exempt from the bond requirement is in the

10  same position as if it posted it.  In other words, this

11  sentence simply says that because the federal government has

12  the financial resources to handle any judgment that could be

13  entered against it for costs and damages, that does not mean

14  that they don't have responsibility for what they cause when

15  they come to the court and obtain a T.R.O. based on

16  information that is extremely wrong, which is what happened

17  here.

18          As I pointed out earlier, we talked about

19  statutory construction, we talked about reading the language

20  of this rule, but the rule does not say the United States,

21  its officers and its agencies are not required to give

22  security or to pay the costs and damages sustained by any

23  party to have been wrongfully enjoined or restrained.  It

24  stops.  That is based on its financial ability.  That is not

25  based on immunity.

1          Again, if you look at the Adamson case and you

2     look at the legislative history of the Equal Access To

3     Justice Act, the federal government with respect to all of

4     the rules of civil procedure, particularly those under which

5     fees can be awarded, which include Rule 11, which includes

6     Rule 37, and it includes Rule 65, and under all of those

7     rules the United States has waived sovereign immunity.  That

8     is important from a policy standpoint.

9          THE COURT:  I have always been told that a waiver

10    of sovereign immunity needs to be clear and unambiguous.

11         MR. HAFEN:  That is the law.  Whoever told you

12    that was right.  I don't contest that, Your Honor.

13         THE COURT:  Well, there is nothing really clear

14    about 65(c) here, is there, and about waiving governmental

15    immunity in a rule which specifically says the government

16    does not have to post security, the posting of which was

17    supposed to ensure that these kinds of fees and expenses

18    would be paid?  I am not even sure what wrongfully enjoined

19    means.

20         What do you think that means in this section?

21         MR. HAFEN:  Wrongfully enjoined means that a party

22    is kept from doing something that it should have been

23    allowed to continue doing.  In this case, and I am sure you

24    recall all of this, but this wrongfully entered T.R.O.

25    caused significant damages to the Sonnenbergs.

1          Here is what happened.  The F.T.C. comes in and

2     says common enterprise, common enterprise, refers to

3     defendants, lumping the Essent Media defendants and the

4     Sonnenberg defendants together, and based on all of the

5     defendants being lumped together, then all of the

6     allegations about wrongdoing and about earnings claims and

7     so forth and then attributed by this Court to my clients and

8     a T.R.O. is entered and a receiver is appointed.

9          The receiver comes in under the auspices of the

10    T.R.O. and essentially shuts down the business while the

11    T.R.O. was in place, which is about five to six weeks.  They

12    do not allow the Sonnenberg companies to continue servicing

13    customers, who have this contractual right to receive

14    coaching services, and the receiver takes away access to the

15    business bank accounts, and also to the personal accounts of

16    the Sonnenbergs.  The result of that was devastating.

17         Let me give you a couple of examples.

18         THE COURT:  I don't need them.  I don't really

19    want them.  I am not a jury.

20         MR. HAFEN:  Then I am not going to give them to

21    you.

22         THE COURT:  I am not a jury.  I am trying to

23    decide if sovereign immunity has been waived, the

24    egregiousness of it notwithstanding.

25         MR. HAFEN:  That is where I started, Your Honor.

1    I want to make two points.

2           One of them is, and this is separate and I'm going

3    to give you something new, and that is that a claim for

4    wrongful injunction is a contract claim.  We have cited

5    authority to that effect, and that is the Marine

6    Construction case, which says that, quote, almost all states

7    classify a wrongful injunction action as an action in

8    contract, not tort.  If it is a contract action, the Federal

9    Tort Claims Act does not apply.  Immunity has been waived by

10   the government under the Tucker Act for contract claims.

11          Now, granted, for that type of contract claim we

12   may need to go to the Court of Claims.  If the Court is

13   saying that no matter how bad the conduct under Rule 65(c),

14   I have no jurisdiction to award you anything because I don't

15   believe sovereign immunity has been waived, then we would

16   request a couple of things.  One is to allow us the

17   opportunity to go and bring this contract based wrongful

18   injunction claim before the Court of Claims.  The other

19   thing we intend to do with respect to the tort claim is to

20   pursue that tort claim by making the claim that we didn't

21   make.  We said to the Court in candor we realize with our

22   intentional interference with the contract claim we needed

23   to file that claim and we have not done it yet.  We have

24   agreed that that can be dismissed without prejudice so that

25   we can go forward.

```
1           THE COURT:  You mean you needed to file it with
2    the agency?
3           MR. HAFEN:  Right.
4           THE COURT:  Okay.
5           MR. HAFEN:  With respect to those two aspects,
6    that is how we want to proceed.  Again, with respect to
7    65(c), all I can do is just ask the Court to read the
8    Adamson case and to look at 2412.
9           THE COURT:  Adamson dealt with Rule 11; is that
10   correct?
11          MR. HAFEN:  That is correct, but the principle is
12   the same.  Rule 65(c), just like Rule 11 and Rule 37, says
13   that in certain circumstances under the rules a party can be
14   required to pay fees.  That is all Rule 65(c) is.  You're
15   required to pay costs and damages which include fees, and so
16   we are simply saying to create the federal government here
17   like a private litigant, which is exactly what Congress
18   intended, based on the legislative history that is set forth
19   in the Adamson case.
20          THE COURT:  Again, the problem I guess I'm having
21   with that, and I have not looked at Rule 11, and I am right
22   now, but I would think that Rule 11 is as applicable to the
23   United States and its agencies lawyers as to everyone else.
24   There is nothing in Rule 11 that exempts lawyers
25   representing the F.T.C., for example, right?
```

1          MR. HAFEN:  Correct.

2          THE COURT:  Well, that would make an easier

3    argument, that Section 2412(b) waives sovereign immunity as

4    to Rule 11 sanctions.  United States agencies lawyers are as

5    subject to sanctions by violating Rule 11 as any other

6    attorney.

7          MR. HAFEN:  Right.

8          THE COURT:  Again, I'm repeating myself, but when

9    I go to 65(c), the very rule that you want to give you all

10   of this benefit, it specifically exempts the United States

11   and its agencies from giving the very security that is to

12   pay the costs and damages that you want them to pay.  You

13   don't have any case to support this, and --

14         MR. HAFEN:  Well, what we have got are the cases

15   that say that merely because based on your financial

16   position you're not required to post a bond does not mean

17   that you're not responsible for the fees and costs that are

18   awardable under 65(c).

19         THE COURT:  As to nongovernment parties.

20         MR. HAFEN:  Nongovernment parties, but then that

21   brings us back to Rule 2412, which says that the whole

22   purpose of that, with respect to waiver of immunity, is to

23   put the federal government on equal footing with respect to

24   all other litigants.  The only exception to that under Rule

25   65(c) is that they don't have to post a bond.  There is no

exception to Rule 65(c) that says that they are not
responsible for the damages that the wrongfully entered
injunction causes.

     THE COURT:  Rule 65(c) does not say anything about
anything other than this security requirement.  It is not a
general section that says that everyone who obtains a
wrongfully obtained or wrongfully procured T.R.O. will be
subject to pay the costs and fees incurred by the party
against whom they obtained the order.  If it said that, that
would be something.  That would be a pronouncement of legal
entitlement.

     In fact, its heading is security.  It does not
have that kind of general pronouncement.  It just says a
judge may order a T.R.O. or a preliminary injunction only if
the party getting it gives security to pay this.  That is
all that it says.

     MR. HAFEN:  Well, I'm sorry, but I disagree.  That
is not all it says.  It says security --

     THE COURT:  To pay.

     MR. HAFEN:  -- to pay the costs and damages
sustained by any party.

     THE COURT:  That is all.

     MR. HAFEN:  That presumes, and this is what
happened in the Liz Marketer case, granted it was on the
state court side, and, unfortunately, we can find cases on

1    either side, the F.T.C. can't and we can't either, so we

2    don't know what has happened in Federal Court with respect

3    to this, and --

4         THE COURT:  Well, you talked Judge Quinn into

5    that, and it was in a state law system that is different

6    from this one, and, unfortunately, he is no longer with us.

7    I don't know what he was thinking.

8         MR. HAFEN:  That is sad that he is not around, and

9    that is sad, but as far as a case that is very similar to

10   this one, that is the best that we have as far as an actual

11   case.  All I can do is simply urge the Court to review the

12   other cases that we have provided in a number of settings

13   where a party who obtains a wrongfully entered injunction is

14   responsible for the damages that are caused by that

15   injunction.

16        THE COURT:  Where the United States obtains it,

17   not a party --

18        MR. HAFEN:  We don't have a case that relates to

19   the United States either way.  There is not one either way.

20   I am simply giving you what I believe is the correct view of

21   Rule 65(c) and the Equal Access To Justice Act, which says

22   that for purposes of awarding fees under the Rules of Civil

23   Procedure, they are just like a civil litigant, any other

24   civil litigant, private litigant, and if that is true, then

25   all of those cases where people moved forward and got

1  damages and fees as a result of a wrongfully entered

2  injunction would apply equally to the United States.

3         THE COURT:  But you agree that, as far as we know,

4  this would be the first time in history that the United

5  States has ever had to pay or had to be subject to a lawsuit

6  for the payment of fees and costs and damages that were

7  caused by the United States obtaining a preliminary

8  injunction or a T.R.O.?

9         MR. HAFEN:  That is correct, but it also applies

10  going the other way.  We have no precedent saying that it

11  can happen or can't happen.  We have no precedent analyzing

12  that aspect of Rule 65.  All I have got is that the

13  government needs to be treated like a private litigant under

14  the --

15         THE COURT:  Inasmuch as it is the government that

16  is only subject to liability after it's waived sovereign

17  immunity makes it quite an intriguing question.  The fact

18  that we have no instance of them ever having been required

19  to pay in these kinds of circumstances I think probably

20  speaks more loudly than that we don't have something going

21  the other direction.

22         MR. HAFEN:  Well, that is up to you to decide,

23  Your Honor.

24         THE COURT:  I am guessing that the United States

25  has obtained through various agencies, the S.E.C., the

F.T.C., pick an acronym, a lot of preliminary injunctions and T.R.O.s over the years, and we have never had one lawyer as clever as you to get the damages paid for by them and attorneys' fees.

MR. HAFEN: I have a different view on that. I have a different view, Your Honor. This is important. I believe the F.T.C. went over the edge on this T.R.O. I believe that one reason we don't have that authority is because the government generally is far more careful than they were here.

We are only aware of two cases in the country in which an injunction obtained by a federal agency, in which a receiver was appointed, has been dissolved and the receiver dismissed, two cases, and one of them was this case.

THE COURT: Was the other one an ex parte T.R.O.?

MR. HAFEN: I don't believe so.

We made some history in what happened in this case, and I see no problem in making some more history. I think that the F.T.C. needs to have financial consequences for going and doing what it did here.

THE COURT: Well, I'm not taking a position on that. I'm a judge. Even if I agreed with you, I would need some law to support it. That is the hard part here.

MR. HAFEN: I still think the law is there under 2412. I think it is right there. You take 2412 and the

1    Adamson case and Rule 65 and I think it would hold up.

2          THE COURT:  Okay.  Thank you.

3          Let me ask you one more question.  Is your

4    counterclaim limited to attorneys' fees and costs?

5          MR. HAFEN:  No.

6          THE COURT:  Then how do you get that additional

7    claim for damages?  2412 does not talk to damages.

8          MR. HAFEN:  Well, that would be under D, which has

9    a broader definition of expenses, but I would concede that

10   with respect to the other damages under Rule 65, that we're

11   probably going to have to go to the Court of Claims on that,

12   because I don't see that under Rule 2412.  I don't see that

13   in B or D.

14         THE COURT:  What is your theory there?

15         MR. HAFEN:  It is contract based.  An injunction

16   is contract based and, therefore, for breaches of contract

17   the federal government has waived immunity.

18         THE COURT:  Where did that waiver occur?

19         MR. HAFEN:  The Tucker Act.

20         THE COURT:  Okay.  Thank you, Mr. Hafen.

21         MR. HAFEN:  I want to make sure that I am being

22   clear, because I get the sense that you may not be going

23   with me on 2412 as to being able to file a motion for fees

24   and costs under Rule 65(c).  I want to make sure that I am

25   being very clear, that if the Court is not with me on that,

that we want to have the opportunity to pursue our

administrative claim with the F.T.C. and also pursue our

contract based claim with the Court of Claims.

THE COURT:  Now, if I granted their motion here,

and that would be against you, setting aside for a moment

that they would be the prevailing party on that, but if I

did, and I am not saying that that is what I am going to do,

but how would that affect your ability to make that case

before the Court of Federal Claims?

MR. HAFEN:  They are asking you dismiss with

prejudice.

THE COURT:  Okay.  Thank you, Mr. Hafen.  Very

interesting.

Mr. McNulty.

MR. McNULTY:  Your Honor, let's start with Mr.

Hafen's position that it is not a tort claim, that the

wrongful injunction claim they have brought is not a tort

claim.  It is a tort claim.  They allege animus and they

allege intentional conduct.  That is not the type of

pleading you see in a contract claim.  I think it is

important to point out that this is a motion to dismiss.  We

look at the allegations in the complaint, not how those

allegations may want to be repled in briefing papers.  In

the complaint they allege tortious conduct.  If it is a

tort, and if it is a tort against the United States, which

1    it is, you go to the Federal Tort Claims Act and there is no

2    waiver of sovereign immunity.

3          THE COURT:  How did you style it in your

4    counterclaim?  That is one thing I have not done is looked

5    at the way you phrased it.  Did you style it as a contract

6    claim?

7          MR. HAFEN:  Here is the issue with that, Your

8    Honor.  It is very clear.  When we filed this to start with,

9    we said intentional interference with a contract, and then

10   we also had a wrongful injunction and, as I said, we have

11   now realized that we cannot proceed absent exhausting

12   administrative remedies with the tort claim, and what

13   counsel for the F.T.C. is doing is referring to the language

14   earlier in the counterclaim that went to our tort claim,

15   that we're saying we know has to go somewhere else.

16         THE COURT:  How did you plead --

17         MR. HAFEN:  Let me read to you what the wrongful

18   injunction claim says.  The first cause of action, wrongful

19   injunction, upon fundamentally flawed and incorrect

20   allegations, the F.T.C. sought and obtained, after giving no

21   notice to the Sonnenberg companies, a T.R.O. prohibiting, et

22   cetera.  At all relevant times the Sonnenberg companies had

23   the right to do these and other enjoined acts.

24         THE COURT:  Slow down just a little.

25         MR. HAFEN:  Sure.

1          THE COURT:  Ed is having a hard time.

2          MR. HAFEN:  Sorry, Ed.

3          THE COURT:  You talk fast anyway, and when you

4    read you --

5          MR. HAFEN:  He has warned me before.  I am just

6    trying to --

7          THE COURT:  So have I.

8          MR. HAFEN:  Thus, the T.R.O. urged on the Court by

9    the F.T.C. was wrongfully entered, and the F.T.C. never had

10   proper grounds for requesting and obtaining the T.R.O., and

11   wrongful entry of the T.R.O. damaged the Sonnenberg

12   companies.  There is nothing in there about it being a tort

13   or about animus or anything else.  We are simply saying that

14   it is a wrongful injunction.

15         MR. McNULTY:  Your Honor, that ignores the first

16   30 paragraphs of the counterclaim.

17         THE COURT:  Were those general allegations

18   paragraphs?

19         MR. McNULTY:  They are general allegations

20   paragraphs.  They don't say that they go to count one or

21   count two of the counterclaim.

22         THE COURT:  This count, the wrongfully obtaining

23   of an injunction, does it incorporate those earlier

24   paragraphs, I take it?

25         MR. HAFEN:  It does.

1          MR. McNULTY:  It does.  Yes, Your Honor.

2          THE COURT:  All right.

3          MR. McNULTY:  Beyond what is in the counterclaim,

4   which is pled as a tort, there is no such thing under Utah

5   law as a contract claim for wrongful injunction.  Gilbert

6   vs. Ence, the Utah Supreme Court, and it is a wrongful use

7   of civil proceedings, which is, of course, the civil side of

8   a malicious prosecution claim, the Utah Supreme Court states

9   that wrongful use of civil proceedings requires that suits

10  brought without probable case for the purpose of harassment

11  and annoyance and with malice, and these are the allegations

12  that the Sonnenbergs have leveled against the F.T.C.  Harris

13  vs. Zurich Holding Company, identifying the wrongful use of

14  civil proceedings and abuse of process as intentional torts,

15  not as contract claims.  Junction Irrigation Company vs.

16  Snow, the Utah Supreme Court, quote, in the absence of the

17  elements of an action for malicious prosecution, it is

18  established by the great weight of authority that no action

19  will lie by a defendant in an injunction suit independent of

20  a bond or undertaking for damages for the wrongful suing out

21  of the injunction.

22          Corporation of the President of the Church of

23  Jesus Christ of Latter-Day Saints vs. Wallace, the Utah

24  Supreme Court, it is the well established general rule that

25  there is no liability in tort for the damages caused by the

wrongful suing out of injunction unless the circumstances

give rise to a cause of action for malicious prosecution.

These rulings are echoed in Adolph Coors Company

vs. A & S Wholesalers Incorporated, Tenth Circuit, where you

cannot have a claim for wrongful injunction that is not a

tort.  There is no contract claim under Utah law for

wrongful injunction.  There is no Tucker Act claim here.

This is a tort.  It is pled as a tort and it does not

survive as a tort.

THE COURT:  Is that Tenth Circuit case in your

brief?

MR. McNULTY:  It is, Your Honor.

THE COURT:  Point me to the page, would you mind?

Is it in your reply brief or your opening brief?

MR. McNULTY:  That I would have to find, Your

Honor.  I don't remember offhand.

THE COURT:  Probably in your reply brief.

MR. McNULTY:  It is on page 4 of the reply brief.

THE COURT:  Which case are you referring to, the

Adolph Coors Company --

MR. McNULTY:  Adolph Coors Company vs. A & S

Wholesalers Incorporated.

THE COURT:  I thought I just heard you say that a

wrongful injunction allegation sounds in tort and not

contract?

1          MR. McNULTY:  That is correct, Your Honor.

2          THE COURT:  Can you give me a quote or something

3  from the case?  That would be nice to hear.

4          MR. McNULTY:  Sure.

5          THE COURT:  That would be on point.

6          MR. McNULTY:  This is from my notes, and I think

7  this is accurate, but I can't verify it 100 percent.  I will

8  give you the citation and that may help.  It is Adolph Coors

9  Company versus A & S Wholesalers Incorporated, 561 F2nd,

10  807, page 813, the Tenth Circuit, 1977.  The general rule is

11  that damages resulting from a wrongfully granted injunction

12  are limited to the amount of the bond unless it is

13  established that the injunction was obtained maliciously or

14  without probable cause.  So you either have a bond or you

15  have a malicious prosecution claim.  There is no bond here

16  and so the only avenue for a wrongful injunction claim under

17  Utah law is malicious prosecution, not contract.

18          Now, Mr. Hafen and the Sonnenbergs cite to the

19  Marine case to prove that this claim is a contract claim,

20  Marine Construction and Dredging.  That case, again,

21  supports the F.T.C.'s position.  It holds that wrongful

22  injunction claims that rest on allegations of malicious

23  prosecution sound in tort, not in contract.  That case was

24  also interpreting Washington state law where there was an

25  implied bond.  There is no implied bond under Rule 65.  The

1  United States is exempt from posting a bond.

2      One point we do agree with Mr. Hafen on is that

3  the E.A.J.A. is, indeed, a limited waiver of sovereign

4  immunity, but it is limited by its terms.  It is not a

5  limited waiver of sovereign immunity for damages.  Section B

6  is a limited waiver for reasonable fees and expenses of

7  attorneys.

8      Section 2412(d)(1)(a) is a limited waiver for fees

9  and other expenses.  The statute defines what fees and other

10  expenses are.  It states that they include the reasonable

11  expenses of expert witnesses, the reasonable costs of any

12  study, analysis, engineering report, test or project which

13  is found by the court to be necessary for the preparation of

14  the party's case in addition to reasonable attorneys' fees.

15  There is nothing in that definition that mentions damages.

16  There is nothing that remotely connects it to damages.

17      2412, the E.A.J.A. is, indeed, a limited waiver of

18  sovereign immunity, but not for damages.  Even if it were a

19  limited waiver for damages, the Sonnenberg defendants are

20  not prevailing parties in this case.  They have obtained no

21  relief on the merits.  They are subject to the same claims

22  they were subject to when the case was brought.  They have

23  no relief yet from those claims.  They are not prevailing

24  parties.

25      THE COURT:  Do you read the prevailing party in

1    any civil action to mean the party that prevails at the end

2    of the litigation?

3            MR. McNULTY:  I think it is possible, Your Honor.

4    In most cases, yes, the prevailing party would be the party

5    at the end of the litigation.  There are cases where the

6    prevailing party ends before there is a final -- where a

7    party obtains prevailing party status before there is an

8    actual final judgment.  The Sonnenbergs cite one of those

9    cases, the Maine school case.  In that case the school

10   district of Maine brought an injunction to keep a child, a

11   disabled child from attending mainstream classes.  The

12   child's parents challenged that complaint, challenged the

13   injunction and they won.

14           The State of Maine then dropped the case.  The

15   only relief that the school board in Maine sought was to

16   keep the child out of class.  The parents won that case and

17   they became prevailing parties because they defeated the

18   entire claim.  They defeated the only relief that the school

19   district had sought.  That is quite different from what we

20   have here.

21           THE COURT:  Well, you cite the Lorillard Tobacco

22   Company case from the Tenth Circuit in your brief, which I

23   think is similar.

24           MR. McNULTY:  It is, Your Honor.

25           THE COURT:  Okay.  Other than that circumstance,

prevailing party is anticipating somebody who prevails at
the end of the litigation.

MR. McNULTY:  I think in 99 percent of the cases
you're going to find that, Your Honor, yes.

I think there may be one more issue after this
that I want to address.

Rule 65, to the extent that the Sonnenbergs allege
that it is an independent waiver of sovereign immunity, or
that it is a waiver of sovereign immunity in conjunction
with Section 2412, is simply incorrect.  Rule 65 contains no
express, unequivocal waiver of sovereign immunity.  You
pointed out that there is no language in there that says
that the United States is liable for wrongful injunction
damages.  It is not there.  The waiver of sovereign immunity
must be expressly stated by Congress in a statute.  That is
not there in Rule 65.

There are two district court cases that have
addressed this issue.  In Shafer vs. Commissioner of the
I.R.S., and the citation is 515 FSup 748, page 751, from the
Eastern District of Louisiana, and it is from 1981, and
there the district court held that Rule 65 does not alter
federal jurisdiction, but rather provides for general
injunctive relief without contemplating a sovereign immunity
waiver.

There is also Fanoso vs. S.E.C., 2008 WesLaw

1  35221351 at page 4, note 4, holding that Rule 65 does not

2  provide a waiver of sovereign immunity.  To be clear, in the

3  Fanoso case the court wrote that opinion and it was

4  unopposed.  No one opposed the S.E.C.'s motion, and still

5  the court did issue that opinion.

6        There are district courts who have dealt with this

7  issue, at least two of them, and they have both found that

8  Rule 65 is not a waiver of sovereign immunity.

9        One last point.  The Sonnenbergs cite to Norco

10 Construction vs. Kane County as proof that a bond can be

11 implied.  That is simply not the case.  Norco Construction

12 was a Washington state case and it was based on Washington

13 state law.  It is not transferable to the federal system

14 where we have Rule 65 as written.

15       The Sonnenbergs also cite the State of Kansas, and

16 Kansas in that case and a number of others went into federal

17 court and sought an injunction against Amtrak and lost as I

18 recall.  In doing so, Amtrak sought relief.  Kansas and the

19 other sovereigns were subordinate sovereigns.  They waived

20 their sovereign immunity upon entering federal court.  That

21 is quite different from the Federal Trade Commission in this

22 case.

23       Unless Your Honor has any other questions, I think

24 that is the end of our rebuttal.

25       THE COURT:  I don't.  Thank you, Mr. McNulty.

1          Mr. Hafen?

2          MR. HAFEN:  Can I be heard on a couple of things?

3          THE COURT:  Of course.  I would be happy to hear

4    anything you want to say.

5          MR. HAFEN:  I am not sure that is true.

6          One of these is from Sara and the other one is

7    from me.  Here is the one from Sara.  She wanted to make

8    sure that I emphasized to the Court that under 2412(d) no

9    statute is necessary, so the Rule 65(c) analysis does not

10   apply.  Under B it talks about a statute, and we are arguing

11   that Rule 65(c) is a statute, and under D no statute is

12   required.  The point that I'm making there, Your Honor, is

13   that we don't want anything that the Court does today to

14   somehow preclude our client from being able to move for

15   attorneys' fees at the end of this case under 2412(d).

16         The other thing that I wanted to do was just quote

17   from the Monroe Division case.  This case came out after the

18   Coors case, and it says that we pointed out that Rule 65(c)

19   creates a cause of action for costs and damages incurred by

20   an enjoined party by reason of a wrongful injunction.  The

21   rule controls and negates the concept that recovery may only

22   be based on malicious prosecution.

23         Continuing on, and that is contrary to what you

24   have just heard from the prior case --

25         THE COURT:  What court is speaking?

1          MR. HAFEN:   Tenth Circuit.

2          Continuing on, in Continental Oil Company vs.

3    Frontier Refining, we held that the security requirement of

4    Rule 65 gave the trial judge the discretion to dispense with

5    a security bond when the applicant for the injunction had

6    considerable assets and was able to respond in damages.

7    Monroe argues that without the posting of security there may

8    be no recovery of damages or restitution from the applicant

9    for the injunction, even though the preliminary injunction

10   was modified to make it less restrictive.

11         Implicit in our decision in Atomic Oil is

12   recognition that Rule 65 mandates security for the

13   protection of the person enjoined, and that protection is

14   not eliminated when the court relies on the financial

15   strength of the party seeking the injunction in place of the

16   security of a bond.  To hold otherwise would make a farce of

17   the rule and of our Continental Oil decision.

18         I think that that quote goes directly to the heart

19   of my position, which is that you have to look at Rule 65(c)

20   just like you would Rule 37 or Rule 11.  Rule 11 and Rule 37

21   don't expressly waive sovereign immunity either, but we have

22   a situation where at least under Rule 11, as we have noted,

23   the United States government has been found responsible

24   under 2412(b).

25         Think you.

1          MR. McNULTY:  May I?

2          THE COURT:  Yes, sir, please.

3          MR. McNULTY:  With regard to Rule 2412(d),

4    Mr. Hafen is right that it does not make reference to -- you

5    don't need reference to a statute or the common law,

6    nonetheless, Rule 2412(d) still has the prevailing party

7    provision, and 2412(d) applies only to tort claims.  As we

8    have discussed, this is a tort claim.  It is not a contract

9    action and Rule 2412(d) is inapplicable.

10         The Monroe Division case, whatever its

11   precedential value at the time it was decided, and it was

12   decided in 1977, subsequently in W.R. Grace vs. Local Union

13   759, the Supreme Court held that outside of a malicious

14   prosecution, you need a bond to get wrongful injunction

15   damages.  So without a bond there is no wrongful injunction

16   damages.

17         THE COURT:  Thank you.

18         MR. HAFEN:  There is one more thing, Your Honor --

19         THE COURT:  Yes.

20         MR. HAFEN:  -- I have just got to say, and that is

21   under 2412(d), you're looking at the action of the F.T.C. as

22   far as fees and expenses.  If we prevail in this case as to

23   the F.T.C.'s part of the case, then that does not sound in

24   tort and we are entitled to our fees under D.  That was the

25   point that I was trying to make.

```
 1              Does that make sense?
 2              THE COURT:  It does.
 3              MR. HAFEN:  Thank you.
 4              THE COURT:  Is there a dispute about whether you
 5    will be entitled to your reasonable fees and expenses of
 6    attorneys if you prevail if this thing, for example, went to
 7    trial?
 8              MR. HAFEN:  I hope not.
 9              THE COURT:  Well --
10              MR. HAFEN:  I just wanted to be sure.
11              THE COURT:  I have not heard that from the
12    government and that is not before me.
13              The motion is granted.  I find that there is no
14    express and unequivocal waiver of governmental immunity as
15    always has been required.  I don't find it through a
16    combination of Section 2412 in Title 28 or Rule 65(c) of the
17    Federal Rules of Civil Procedure or a combination, nor am I
18    persuaded that this was an action sounding in contract, a
19    wrongful injunction claim.
20              From my understanding of the basis upon which this
21    claim is brought, it is one sounding in tort and resembling
22    a malicious prosecution or wrongful use of civil proceedings
23    claim.  I am confident enough with that position that I will
24    announce the ruling from the bench and ask the F.T.C. to
25    prepare an order to that effect.
```

1          This is without prejudice.  I'll allow you to do

2    whatever you want to under the little Tucker Act or the big

3    Tucker Act or whatever it is and take it to the Court of

4    Federal Claims.

5          Ms. Priest, did you want to say anything on this

6    motion that I just heard?

7          MS. PRIEST:  No, Your Honor.

8          THE COURT:  While you are here, I have pending the

9    matter I mentioned earlier regarding the request for the

10   receiver to receive fees and expenses under their windup

11   motion.  Let me tell you where I am on that.

12         I am going to take it under advisement, but my

13   present inclination is to keep it under advisement for quite

14   some time.  I don't think it is ripe yet.  My present

15   inclinations are as follows, generally speaking, and I am

16   not ruling on it now, but I find from my review of the

17   briefing that has been presented that the fees are too high

18   for several reasons.

19         One, I think the prevailing rates are higher than

20   they needed to be for this proceeding in Utah.  Number two,

21   I find, and I am not making a final ruling, but that some of

22   the work was duplicative and some of it was, in addition to

23   being overcharged, I find that some of it was unnecessary

24   and unreasonable without getting into specifics.

25         Two of the areas where I'm troubled by the amount

of work that the receiver did is with regard to the

Sonnenberg defendants and the activities that, according to

the Sonnenberg defendants, and I think these allegations

appear to have some merit, that the receiver was responsible

for interfering with an awful lot of their work.  There were

contracts that were pending and required delivering services

relating to coaching services and the like to customers, and

that this was in my view preliminarily overreaching by the

receiver.

I'm also concerned that the F.T.C. was the reason

for the overreaching.  It strikes me that this receiver was

working far more for the F.T.C. than it was for the Court.

I look back at this T.R.O., and I will say again I regret

granting it, but I am not saying, however, and I want to be

clear here, that it was wrongfully obtained.  I have not

ever made that finding.  I find that when I heard all of the

facts, I found that injunctive relief was not proper.

Many of the allegations made by the F.T.C. may in

the course of this lawsuit, if it gets pressed to a trial,

will be found to have been true, the allegations of

misrepresentations made by certain of the defendants at

certain times, especially, as I recall, with some of the

photographs they used and the testimonials attached to them

in the efforts to obtain customers.

But overall I think there was unnecessary work and

1    overreaching.  I said with respect to the Sonnenberg

2    defendants that I find it to be in the area of interference

3    with the contracts they had with customers and especially in

4    the coaching services area.

5         With regard to the Essent Media defendants, I find

6    that the receiver went farther than I think was reasonable

7    and prudent, especially in the context of a T.R.O.  This was

8    not a preliminary injunction.  I know what the order I

9    signed said, but still I think the receiver went too far in

10   doing what the receiver is charged with having done, if not

11   directly, indirectly, that caused the cessation of the

12   health and wellness nutraceutical aspect of that business.

13        It was as if the receiver anticipated finding an

14   enterprise here which involved both the Sonnenberg

15   defendants and the Essent Media defendants and found it to

16   be a corrupt organization and it was going to shut it down.

17   They interviewed employees and they came in and took over

18   the account books and talked to a lot of people employed, as

19   I understand it, and pretty much did it in a way that

20   anticipated that this thing is fraught with fraud.

21        I have seen those kinds of enterprises and they

22   do, when faced with this kind of a T.R.O., often cut and

23   run, and you don't have anybody left to find and the money

24   is gone.  My biggest regret in granting this T.R.O. was that

25   one that I was persuaded by the Federal Trade Commission

that these defendants were of that nature, that if I didn't
do this ex parte that the money would be gone and the
culprits would be mostly gone.  They would have hidden their
tracks and for the most part the assets would not be
ascertainable, and from everything that I read in the
briefing that led up to the preliminary injunction and to
the information and arguments given at the preliminary
injunction hearing, I just found that I had improvidently
granted a T.R.O. and regret it.

I think receiverships should be used sparingly.
That is not the same as finding something on the order of
malicious prosecution, for whatever that is worth.  In light
of all of that, I'm inclined to diminish the receiver's
request for reasonable and appropriate fees by probably
something on the order of half, if not more.

To the extent my equitable powers allow, it seems
unfair to have the Sonnenberg defendants, especially because
they didn't agree to any preliminary injunction going
forward as the Essent Media defendants did, to have them
have to pay for a receiver to come in and swoop in and do
all of this to their business, even though, as I have ruled
today, I don't see a waiver of immunity to allow them to sue
the F.T.C. for damages, I don't, but I am not sure who will
win if this goes to trial.

By finding that there was not a sufficient basis

for injunctive relief does not mean that I think that the F.T.C. would lose at a trial. There was enough evidence to have a case. As we all know, the standard for a preliminary injunction is the likelihood of success on the merits. That is a pretty hard burden to meet often, and I didn't find that that was met.

Getting back to the request before me for the receiver's payment, for a 36-day receivership to incur fees and costs and attorneys' fees of close to a half a million dollars strikes me as imprudent and improvident in this situation. I won't rule on it until I know more. There are so many facts here to sift through, and I'm not in a position now where I feel comfortable in making a final ruling.

One last point, which the Federal Trade Commission will not enjoy hearing, and that is if I can find a way to require the Federal Trade Commission to pay these receivership fees, I will. I think they should pay them. They recommended the receiver. They persuaded me that this T.R.O. was proper. They should have to pay these fees if it is legally allowed. I have a case from Florida and I have a case from the Ninth Circuit that gives some indication that a federal agency, such as the F.T.C., may be held responsible for the payment of those fees where the Court makes a finding that there was no real benefit to the

1    receivership estate, which I can't find here, any benefit to

2    the ongoing businesses that they took over.

3        I will keep that legal issue under advisement

4    until a later point during a trial.  I am announcing it now

5    primarily for the purpose if there is any way that this case

6    comes to settlement talks or negotiations, that you might

7    factor this into it.

8        To summarize, I'm thinking that rather than 400 or

9    $500,000, the appropriate fee would be about half of that,

10   and I am inclined to impose it against the Federal Trade

11   Commission if I can.

12       Anything else today?  Did anyone want to ask a

13   clarifying question or anything about what I have just said,

14   because it is all an inclination.  There is no final ruling

15   on anything.

16       MR. HAFEN:  Not about that.

17       I have a clarifying question about the prior order

18   as far as to dismiss without prejudice, that applied to the

19   intentional interference claim as well as the contract

20   claim.

21       THE COURT:  Yes.

22       MR. McNULTY:  Your Honor, just on your inclination

23   with regard to the receivership fees, will we have an

24   opportunity to argue the legal issue before you make that

25   ruling?

```
 1              THE COURT:  Yes.  We have not had a hearing on it,
 2    and that is maybe why I thought I would bring it up today,
 3    but I don't want a hearing prematurely.  I thought a lot
 4    about it.  I have read it more than I have read most things
 5    lately.  It is a head scratcher for me.  I think equity says
 6    that the F.T.C. should pay it.
 7              MR. McNULTY:  I understand.  We would just like
 8    the opportunity to argue it if it ever comes up.
 9              THE COURT:  I think ex parte matters are fraught
10    with these kinds of risks.  We are all advocates and we
11    think we have maybe more than we have when we seek an ex
12    parte anything, but you'll have the chance to argue it
13    before I make a final decision on that.
14              Anything else before we adjourn?
15              MR. HAFEN:  No, Your Honor.
16              MR. McNULTY:  No.
17              THE COURT:  Any last words of wisdom, Ms. Priest?
18              MS. PRIEST:  No, Your Honor.
19              THE COURT:  We'll be in recess.
20              (Proceedings concluded.)
21
22
23
24
25
```