IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:14-CV-00815-BCW |
| | ) | |
| BF LABS INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

This matter is before the Court on the Temporary Receiver Eric L. Johnson's First, Second, Final, and Supplemental Fee Applications (Docs. #173, #212, #231, and #303). He seeks an order authorizing payment of $1,094,861.89, which includes $1,074,155.77 for services rendered and $20,706.12 in actual and necessary out-of-pocket expenses. After reviewing the premises of the fee applications, the record, and the applicable law, the Court grants in part the applications and authorizes a total payment of **$926,214.96**.[1]

I.      **BACKGROUND**

A.  OVERVIEW OF RECEIVERSHIP

On September 15, 2014, Plaintiff filed this action and moved ex parte for a temporary restraining order, asset freeze, and appointment of a temporary receiver. On September 18, 2014, the Court granted the motion and appointed Eric L. Johnson as the Temporary Receiver for Defendant BF Labs, Inc. ("BFL") ("TRO Order"). Doc. #9. On October 2, 2014, the Court issued the parties' stipulated interim order ("Stipulated Interim Order") (Doc. #54), which continued the receivership until the November 24, 2014 preliminary injunction hearing.

---

[1]     Amounts previously paid should be deducted from the amounts authorized in this Order.

The Court held the scheduled preliminary injunction hearing and extended the receivership until it resolved the preliminary injunction motion. On December 12, 2014, the Court denied Plaintiff's motion for preliminary injunction, asset freeze, appointment of receiver, and other equitable relief. The December 12, 2014 order signaled the wind down of the receivership. On December 31, 2014, the Temporary Receiver completed transition of the receivership property back to BFL. He subsequently filed a motion for a final accounting, discharge of the receivership, and cancellation of bond.

### B. FEE APPLICATIONS

Before the Court are the Temporary Receiver's fee applications. In accordance with the TRO Order and Stipulated Interim Order, the Temporary Receiver filed periodic requests for payment. The Temporary Receiver filed his first fee application on November 21, 2014, for the period of September 18, 2014 through October 31, 2014 ("First Application") (Doc. #173). He filed his second fee application on December 18, 2014, for the period of November 1, 2014 through November 30, 2014 ("Second Application") (Doc. #212), and he filed his final fee application on January 9, 2015 for the period of December 1, 2014 through December 31, 2014 ("Final Application") (Doc. #231). Based on subsequent required work, the Temporary Receiver filed a supplemental fee application on May 6, 2015 for the time period of January 1, 2015 through January 31, 2015 ("Supplemental Application") (Doc. #303).

In these applications, the Temporary Receiver requests payment for work performed and expenses incurred pursuant to the TRO Order and the Stipulated Interim Order (collectively "the Orders"). Both of the Orders included a detailed list of the Temporary Receiver's duties including, but not limited to, assuming full control of BFL, taking custody of BFL's assets, completing an inventory of BFL's assets, securing the premises, reporting to the Court, and

2

conducting BFL's business. See generally Doc. #9 at 12–16; Doc. #54 at 11–15. The Orders

authorized the Temporary Receiver to employ professionals to assist him with these duties, and

he therefore retained the following professional firms:

> **Spencer Fane Britt & Browne LLP ("Spencer Fane").** The Temporary Receiver retained Spencer Fane to provide legal services in the areas of corporate, commercial, employment, and insurance law and litigation. Attorneys and employees of Spencer Fane provided legal counsel to the Temporary Receiver and assisted with maintaining the control and custody of BFL's information, securing BFL's assets, and supervising the operations conducted by BFL.

> **RubinBrown LLP ("RubinBrown").** The Temporary Receiver retained RubinBrown to provide forensic consulting services, advise on the financial stability of BFL, coordinate with BFL's accounting team, and provide review of BFL's assets, liabilities, and proposed business plan.

> **UnitedLex Corporation ("UnitedLex").** The Temporary Receiver retained UnitedLex to videotape BFL's business premises, to ensure the security of BFL's electronic information and servers, and to advise him on the bitcoin industry. UnitedLex also assisted with preparing the bitcoin transfer protocol and conducting the transfer of bitcoin from BFL's storage wallet to the Court-controlled bitcoin wallet.

> **BKD Forensics ("BKD").** The Temporary Receiver retained BKD to ensure the safe and secure transfer of bitcoins and to advise him on bitcoin mining operations.

In the fee applications, the Temporary Receiver also seeks payment for the work performed and

expenses incurred by these professionals firms. Plaintiff does not object to the fee applications,[2]

but Defendants BFL, Sonny Vleisides, and Darla Drake ("Defendants") do.[3]

---

[2]     The Court considered Plaintiff's brief (Doc. #312), which responds to Defendants' arguments that this Court has the power to assess receivership costs and fees against Plaintiff.

[3]     Among other things, Defendants object because the Temporary Receiver provided detailed billing statements only for in camera review based on privilege concerns. The Court conducted a teleconference with the parties on March 24, 2015, to discuss this issue. Based on the discussion, the Court ordered the Temporary Receiver to submit proposed privilege redactions to the billing statements to the Court (Doc. #277). The Court reviewed the proposed redactions and ordered the Temporary Receiver to file under seal the approved redactions (Doc. #314). Defendants subsequently filed specific objections to the redacted billing statements (Doc. #328), and the Temporary Receiver replied (Doc. #339). Defendants continue to argue that they are entitled to unredacted billing statements. The Court disagrees and finds that the Temporary Receiver's redactions are privileged under the attorney-client privilege based on Defendants' threats of future litigation. See, e.g., Doc. #199 at 11–12 (providing examples). Regardless, the Court finds the fees requested in the redacted entries are reasonable.

3

## II.   LEGAL STANDARD

A court-appointed receiver and the professionals that assist him are entitled to reasonable compensation. Fed. Oil Mktg. Corp. v. Cravens, 46 F.2d 938, 943 (8th Cir. 1931). The amount of compensation, however, is within the court's discretion. Gaskill v. Gorden, 27 F.3d 248, 253 (7th Cir. 1994). In determining the amount, the court may consider all factors involved in a particular receivership. Id. Such factors may include (1) the time, labor, and skill required to properly perform the duties imposed by the court, (2) the fair value of such time, labor and skill, (3) the quality of the work performed and results obtained, and (4) the complexity of the tasks. See, e.g., Fed. Oil Mktg., 46 F.3d at 940 (outlining factors); FTC v. Consumer Health Benefits Ass'n, No. 10-CV-3551, 2011 WL 5513182, at *1 (E.D.N.Y. Nov. 10, 2011).

## III.   ANALYSIS

### A.  REASONABLE FEES AND EXPENSES

In support of the fee applications, the Temporary Receiver submitted documentation including supporting affidavits, daily time records, and invoices showing fees and expenses. In total, the requested fees and expenses by provider are as follows:

| Provider | Services | Expenses | Total |
|---|---|---|---|
| Temporary Receiver | $168,278.25 | $0.00 | $168,278.25 |
| Spencer Fane | $670,533.14 | $10,546.24 | $681,079.38 |
| RubinBrown | $152,640.78 | $7,959.22 | $160,600.00 |
| UnitedLex | $67,476.50 | $1,753.14 | $69,229.64 |
| BKD | $15,227.10 | $447.52 | $15,674.62 |
| **Total** | **$1,074,155.77** | **$20,706.12** | **$1,094,861.89** |

The Court carefully analyzed the record and supporting documentation in light of the above factors and Defendants' objections. The Court finds the Temporary Receiver and his professionals engaged in extensive and exhaustive work for the duration of the receivership.

4

Together they assumed control of BFL's assets, inventoried and conserved assets, secured BFL's premises, managed and administered BFL, prepared thorough reports for the Court, participated in other lawsuits, analyzed BFL's financial information and reporting systems, and participated in various meetings and hearings with the Court. The Temporary Receiver and his professionals accomplished all of these duties in a relatively short amount of time and despite the complex business of the receivership estate and the contentious nature of this lawsuit. The Court is pleased with their work and commends their performance.

Despite the high quality of work and the complex nature of duties performed, the Temporary Receiver and his professionals are only entitled to a reasonable fee that compensates them for the benefit conferred on the receivership estate and for the hours and expenses reasonably spent performing the ordered duties. Fed. Oil Mktg., 46 F.3d at 940. The Court therefore carefully analyzed the record and spent significant time reviewing (line-by-line) each billing statement. Based on this review, the Court approves the Temporary Receiver's incurred fees but finds the other requested fees should be reduced.

### 1.    Temporary Receiver

The Temporary Receiver provided detailed billing statements for all work performed. His entries delineate the accomplished tasks and indicate that his work was for authorized duties that were appropriately performed by him and not lower-level employees. The Court directly worked with the Temporary Receiver and observed him at meetings and hearings. The Court's observations, together with the material submitted, convinces the Court that the Temporary Receiver performed his duties reasonably and professionally, and that he made every effort, some extraordinary, to successfully manage BFL and cooperate with the parties. The Court additionally finds the Temporary Receiver's requested rate reasonable when considering his

experience, his skill, his voluntary 30% rate reduction,[4] and the usual hourly rate for similar work in the Kansas City area. The Court therefore authorizes full payment of his incurred fees.

### 2. Spencer Fane

The Court reviewed Spencer Fane's billing statements and other support as well as Defendants' objections. The statements include time entries by over 35 professionals within the firm. The Court is mindful that courts must not place insurmountable burdens on receivers and their legal professionals in documenting fees, but the Court must be able to review the time and determine that the requested fees are reasonable and not excessive or unjust. Spencer Fane's timesheets include some generalized entries that make it difficult for the Court to meaningfully evaluate whether each professional was efficiently performing authorized, non-duplicative work. The following are a few illustrative examples:

- **13.0 hours for "Work on issues for temporary receivership."** This entry is representative of several entries for the same professional that total over 130 hours. The Court does not doubt that the professional performed work, but the vagueness of the entry defies the Court's ability to meaningfully evaluate the reasonableness of the request.[5]

- **7.50 hours for "Continue to Secure Assets and Facility during Receivership."** This entry is another example of a vague entry that hampers the Court's ability to evaluate the reasonableness of the request.

- **Inventory Project.** Several professionals billed time for inventorying BFL's property. The Court recognizes that this project most likely required the assistance of multiple professionals and that it is not inherently unreasonable for several professionals to work on the same tasks. But the generalized entries prevent the Court from assessing whether each individual meaningfully assisted on the project, efficiently completed authorized work, and did not perform duplicative work. The Court is additionally concerned at the total amount of time spent on this project and the level of detail included in the inventory (e.g., inventorying such items as one Kleenex Box, ten

---

[4]  The Temporary Receiver's regular rate is $350/hr. He voluntarily reduced his rate to $245/hr.

[5]  The Court notes that the Temporary Receiver and attorney attempted to correct this deficiency in the reply by filing an affidavit and memorandum detailing the attorney's time. But the Court questions the appropriateness of evidence offered for the first time in the reply and also the accurateness of reconstructed—as opposed to contemporaneous—billing statements.

6

napkins, one Safety First rubber band, one razor blade, etc.) Some of these issues are also present for other multi-professional projects (e.g. work on bitcoin transfer, website, etc.).

Spencer Fane's timesheets also include some entries that cause the Court to question the distribution of work. The following are a few illustrative examples:

- **Disputed transaction, expense requests, trucking.** An attorney recorded 5.20 hours for "Contact BMO card representative regarding disputed credit card transactions; process expense requests; phone call with City Rent a Truck regarding returning truck to BFL." The Court questions whether this work justifies an attorney's full billing rate.

- **Supervise and monitor.** An attorney recorded 7.00 hours for "Supervise Employees of Butterfly Labs and monitor facility." Absent more information, the Court questions whether this entry justifies the attorney's full billing rate.

- **Opening/Closing Facility.** Typically attorneys or paralegals opened and closed BFL's facilities. The Court considers whether these tasks justify each professional's full billing rate.

The Court generally finds that the Temporary Receiver did a laudable job in coordinating and allocating his professionals, and the Court will not delve too far into the Temporary Receiver's tactics and distribution of work among his professionals. Indeed, the Temporary Receiver is competent and is in the best position to determine how the time of his professionals is optimally allocated. But the Court notes such entries and considers whether such tasks justify each professional's full billing rate and/or the full amount of requested time.

The Court also evaluates the requested rates for each Spencer Fane professional. The Court does not automatically accept each professional's stated rate; rather it looks to the ordinary fee for similar work in the community. Shakopee Mdewakanton Sioux Cmty. v. City of Prior Lake, Minn., 771 F.2d 1153, 1160 (8th Cir. 1985). The Court notes that Spencer Fane voluntarily discounted each professional's rate by 30%[6] and that the Temporary Receiver's affidavit states

---

6    Spencer Fane reduced one attorney's rate by more than 30%.

7

that Spencer Fane's rates were below prevailing rates in the Kansas City area for similar services. But the Court's ability to confirm this statement and make its own assessment of the rates is hampered by lack of detailed information concerning each professional's skill and experience level.

The Court considered all of these issues and finds that a 20% reduction to Spencer Fane's service fees (and no reduction to it expenses)[7] sufficiently addresses all of these concerns. This fee amount is reasonable when considering the extensive work performed, the high quality of the work, the complexity of the tasks, the time constraints, Spencer Fane's voluntary reduction, and the above issues. This amount—earned over the course of approximately four months—should adequately compensate Spencer Fane for its quality work but also accounts for the vagueness of some entries and the other identified issues. The Court therefore authorizes payment for 80% of Spencer Fane's service fees and 100% of its expenses.

### 3. RubinBrown

The Court analyzed RubinBrown's billing statements and other support as well as Defendants' objections. RubinBrown's billing statements include some generalized entries that prevent the Court from evaluating whether the professional efficiently performed authorized, non-duplicative work. Some illustrative examples include:

- **12.50 hours for "Fieldwork. Travel. Conferences with Receiver and Counsel."** This entry is vague and prevents the Court from meaningfully analyzing the performed work. The Court also has general concerns about authorizing payment at the full rate for travel time absent more information justifying the retention of out-of-town professionals.

- **On September 24, 2014, two professionals billed over 12 hours for "Fieldwork and analysis. Conferences with Receiver and counsel. Site interviews."** These entries are vague and do not allow meaningful review. These entries also prevent the Court from determining each professional's

---

[7] The Court finds Spencer Fane's expenses reasonable particularly given that they did not charge for legal research.

Case 4:14-cv-00815-BCW   Document 353   Filed 08/12/15   Page 8 of 13

contribution and whether the performed work was duplicative. The Court also notes that, on the same date, a third professional billed time for conferences with the Temporary Receiver and site interviews.

The Court also evaluates the requested rates. It is the Temporary Receiver's burden to demonstrate the requested rates are reasonable and consistent with the rates charged by other similarly-skilled professionals in the area. Here, the most significant issue is that there is very little information in the record that supports or justifies the requested rates. The Court recognizes that RubinBrown voluntarily reduced its rates by approximately 11%. Despite this reduction, however, the Court finds an additional reduction is necessary to account for any potentially high rates.

Finally, the Court considered RubinBrown's expenses. Although the Court would typically like more information supporting expenses, the Court finds the requested expenses reasonable. For all of these reasons, the Court reduces RubinBrown's fees by 15% (and no reduction to expenses). This reduction accounts for the issues discussed above but also results in a reasonable fee. The authorized amount recognizes the complexity of the receivership estate's financial information, RubinBrown's voluntary reduction, and the multiple tasks that needed to be handled expeditiously under difficult circumstances. The Court therefore authorizes payment for 85% of RubinBrown's fees and 100% of RubinBrown's expenses.

### 4. UnitedLex

The Court scrutinized UnitedLex's time entries, expenses, and supporting information as well as Defendants' objections. UnitedLex's time entries are generally sufficiently detailed and apprise the Court of the professional's performed work. But there are a few exceptions. See 9/25/2014 Entry (7.0 hours for "At the office at SF. At the meeting with BFL and the legal teams."). In addition, there are three other issues with UnitedLex's fees. First, UnitedLex and BKD both billed substantial amounts of time for consulting on the bitcoin-wallet-transfer

9

protocol. But the record does not clearly delineate the distinct contributions that each firm made to the project. The Court therefore is concerned that such efforts were, at times, duplicative. Second, the professionals seek compensation for travel time. The Court recognizes that the travel-time rates are approximately half the professional's consulting rate. But there is very little information in the record justifying the retention of an out-of-town professional for the performed work.[8] Third, the record lacks sufficient information explaining or justifying each professional's rate. Absent such information, the Court struggles to determine whether the requested rates are consistent with those charged by other similarly-skilled professionals in the area. For all of these reasons, the Court reduces UnitedLex's requested fees by 15% (and no reduction to expenses) and authorizes payment of 85% of its fees and 100% of its expenses.

### 5.   **BKD**

The Court reviewed BKD's billing statements and additional support as well as Defendants' objections. Based on this review, the Court has four observations. First, the Court is generally satisfied with the primary professional's billing entries but the justification for fees charged by other professionals is less clear (e.g., "Project Management"). Second, as discussed above, the Court is concerned that some of BKD's and UnitedLex's billings are duplicative. Third, BKD's billing sheets include an unexplained administrative fee. Fourth, the lack of information on each professional's skills and experience hampers the Court's ability to discern whether the requested rates are reasonable. For all of these reasons, the Court reduces BKD's requested fees by 10% (and no reduction to expenses) authorizes payment of 90% of its fees and 100% of its expenses. Accordingly, the Court authorizes payment in the following amounts:

---

[8]    The Court notes the Temporary Receiver's averment that, in some cases, out-of-town professionals were retained due to the time constraints.

| Provider | Services | Expenses | Total |
|---|---|---|---|
| Temporary Receiver | $168,278.25 | $0.00 | $168,278.25 |
| Spencer Fane | $536,426.51 | $10,546.24 | $546,972.75 |
| RubinBrown | $129,744.66 | $7,959.22 | $137,703.88 |
| UnitedLex | $57,355.03 | $1,753.14 | $59,108.17 |
| BKD | $13,704.39 | $447.52 | $14,151.91 |
| **Total** | **$905,508.84** | **$20,706.12** | **$926,214.96** |

### B. OBJECTIONS

Defendants object to the Temporary Receiver's fee applications on two principal grounds. First, Defendants argue that "the FTC should pay for any receivership professional fees and expenses because its ex parte action was unnecessary and resulted in significant fees and expenses that could have otherwise been spent providing refunds to any consumers who want them." See Doc. #194 at 2. The Court disagrees. The TRO Order and the Stipulated Interim Order both provide that the Temporary Receiver and his professionals will be paid their reasonable fees from assets held by BFL. See Doc. #9 at 24; Doc. #54 at 24. Based on this language, which Defendants agreed to in the Stipulated Interim Order, the Court finds that BFL should pay the fees.

Second, Defendants contend that the fees and expenses are excessive and that discovery and a hearing are required. For the reasons identified, the Court agrees that the requested fees require reductions. The Court disagrees that a hearing is required. The Temporary Receiver submitted substantial documentation (e.g., billing statements, affidavits, etc.) that the Court carefully reviewed. Based on the record and materials submitted, the Court finds that it can assess fees and expenses without a hearing. Cf. K-Partners III, Ltd. v. WLM Hospitality Corp., 883 P.2d 604, 606 (Colo. Ct. App. 1994) (finding trial court abused discretion when it discharged

receiver over objection without having a hearing, without any representation that fees were reasonable and necessary, and without evidence that services were performed).

### C. REMAINING ISSUES

The Temporary Receiver's final motion includes various miscellaneous matters related to his discharge. The Court reviewed all of the information and, for the most part, grants each request. Accordingly, it is hereby

ORDERED the Temporary Receiver's First Application (Doc. #173) is GRANTED-IN-PART. It is further

ORDERED the Temporary Receiver's Second Application (Doc. #212) is GRANTED-IN-PART. It is further

ORDERED the Temporary Receiver's Motion to Approve Final Accounting, Final Approval of Fees and Expenses, Discharge of Receiver and Cancellation of Bond (Doc. #231) is GRANTED-IN-PART. It is further

ORDERED the Temporary Receiver's Supplemental Application (Doc. #303) is GRANTED-IN-PART. It is further

ORDERED the Temporary Receiver is authorized to pay from the Receiver's Reserve $926,214.96 distributed as follows to the extent these fees and expenses remain unpaid:

| Provider | Services | Expenses | Total |
|---|---|---|---|
| Temporary Receiver | $168,278.25 | $0.00 | $168,278.25 |
| Spencer Fane | $536,426.51 | $10,546.24 | $546,972.75 |
| RubinBrown | $129,744.66 | $7,959.22 | $137,703.88 |
| UnitedLex | $57,355.03 | $1,753.14 | $59,108.17 |
| BKD | $13,704.39 | $447.52 | $14,151.91 |
| **Total** | **$905,508.84** | **$20,706.12** | **$926,214.96** |

It is further

12

ORDERED the turnover to BFL of emails and voicemails that have come into the receivership email account established by the Temporary Receiver ("Receivership Email Account") through the entry of this Order is AUTHORIZED. It is further

ORDERED the Temporary Receiver and his professionals are under no further obligation to review, log, or otherwise organize such emails and voicemails that come into the Receivership Email Account. It is further

ORDERED, to the extent the parties request additional information or actions from the Temporary Receiver, that he be reasonably compensated, upon proper application to this Court, for any reasonable time or costs expended regarding such requests. It is further

ORDERED the Temporary Receiver's actions, and his professionals' and agents' actions, to date in this case are APPROVED and, that upon the filing of the Notice, the Temporary Receiver and his professionals and agents are thereby discharged from this case and they shall be relieved from all duties and responsibilities to this Court. It is further

ORDERED the Temporary Receiver is AUTHORIZED to cancel the Receiver's Bond once the Notice is filed with this Court.

IT IS SO ORDERED.


DATE:  August12, 2015          /s/Brian C. Wimes
                                JUDGE BRIAN C. WIMES
                                UNITED STATES DISTRICT JUDGE